IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil case Number _____**

**JAMALE TOWNSELL,**

          Petitioner,

vs.

**GILBERT CALEY**, Warden, Limon Correctional Facility,
**MOSES "ANDRE" STANCIL**, Executive Director of Colorado Department
of Corrections; and **PHIL WEISER**, Colorado Attorney General,

          Respondents.

_____

**PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254 AND SUPPORTING ARGUMENT**
_____

JAMALE TOWNSELL, through his undersigned counsel, respectfully

petitions this Honorable Court pursuant to 28 U.S.C. § 2254, for a Writ of Habeas

Corpus ordering his release from confinement in <u>People v. Jamale Townsell</u>,

Arapahoe County, Colorado, District Court No. 2013 CR 2039.

*/s/Hollis A. Whitson*

Hollis A. Whitson
Samler & Whitson, P.C.
1600 Stout St., Ste 1400
Denver, CO 80202
303- 670-0575
Hollis@SamlerandWhitson.com

**TABLE OF CONTENTS**

I.      PARTIES…………………………………………………………………… 1

II.     NO PRIOR APPLICATIONS………………………………………….. 2

III.    CONVICTION UNDER ATTACK……………………………………. 2

IV.     DIRECT APPEAL…………………………………………………….. 3

V.      POSTCONVICTION PROCEEDINGS………………………………… 4

VI.     TIMELINESS………………………………………………………….. 9

VII.    BACKGROUND FACTS ………………………………………………..12

        Introduction……………………………………………………………11
        The bank robbery and police investigation………………………………13
        There was a viable alternate suspect:  Ms. Ruffin's brother………………………..15
        DNA evidence was key……………………………………………………. 16
        Defense counsel botches the DNA investigation……………………………….. 19
        The state courts reject Mr. Townsell's pro se claims……………………………… 23

VIII.   CLAIMS………………………………………………………………….. 27

        A.      TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE
                OF COUNSEL IN VIOLATION OF THE SIXTH AND
                FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION
                BY FAILING TO INVESTIGATE, FAILING TO RETAIN A DNA
                EXPERT, FAILING TO OBJECT TO TESTIMONIAL HEARSAY
                AS A CONFRONTATION CLAUSE VIOLATION, AND FAILING
                TO INVESTIGATE AND PRESENT AN ALTERNATE SUSPECT
                DEFENSE…………………………………………………..………… 28

                1.      EXHAUSTION…………………………………………………… 28

                2.      COUNSEL RENDERED INEFFECTIVE ASSISTANCE
                        OF COUNSEL IN HANDLING THE DNA ASPECTS OF
                        THE CASE……………………………………………………….. 31

                        (a)     Deficient performance…………………………………….. 32
                        (b)     Prejudice…………………………………………………... 38

3.    COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO ENDORSE AND RUN AN ALTERNATE SUSPECT DEFENSE …………………………. 50

(a)  Deficient performance…………………………………………… 44
(b)  Prejudice……………………………………………………. 45

4.    COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO OBJECT TO FAILING TO OBJECT TO TESTIMONIAL HEARSAY AS A CONFRONTATION CLAUSE ………………………………….. 52

(a)  Additional Facts………………………………………… 54
(b)  Deficient performance……………………………………57
(c)  Prejudice……………………………………………… 58

5.    THE CUMULATIVE PREJUDICIAL IMPACT OF MULTIPLE INSTANCES OF DEFICIENT PERFORMANCE WARRANT HABEAS RELIEF…………… 60

IX.    *DE NOVO* REVIEW, DISCOVERY, AND EVIDENTIARY HEARING……..61

X.    LEGAL REPRESENTATION………………………………………... 63

XI.    PRAYER FOR RELIEF…………………………………………… 64

## ATTACHMENTS TO PETITION

| | |
|---|---|
| Attachment 1 | State court judgement of conviction and sentence *People v. Jamale Townsell,* Arapahoe County, Colorado, District Court No. 2013 CR 2039 |
| Attachment 2 | Opening brief (direct appeal) |
| Attachment 3 | Colorado Court of Appeals ("CCOA") opinion (direct appeal): *People v. Townsell*, 14CA1225 ("*Townsell I*") (unpublished) |
| Attachment 4 | Petition for writ of certiorari (direct appeal) |
| Attachment 5 | Colorado Supreme Court ("CSC") order denying writ of certiorari (direct appeal) *People v. Townsell,* 2018SC415 (June 22, 2020). |
| Attachment 6 | Motion to Reduce Sentence (Rule 35(b) motion) |

Attachment 7 | District Court order denying Rule 35(b) motion

Attachment 8 | District Court pro se Motion for Postconviction Relief
Rule 35(c) motion (Form 4)

Attachment 9 | District Court order denying pro se Rule 35(c) motion
("*Townsell II*")

Attachment 10 | Opening brief CCOA (postconviction appeal)

Attachment 11 | *People v. Townsell*, No. 21CA2068 (unpublished) ("*Townsell III*")
(postconviction appeal)

Attachment 12 | Petition for writ of Certiorari to review *Townsell III*

Attachment 13 | CSC order granting petition for writ of certiorari (postconviction)

Attachment 14 | Opening brief CSC (postconviction appeal)

Attachment 15 | *Townsell v. People*, 23 SC 924, 2026 CO 11 (Feb. 17, 2026)
("*Townsell IV"*) (postconviction appeal)

Attachment 16 | Townsell's petition for rehearing

Attachment 17 | *Townsell IV* Modified Opinion (March 30, 2026)

Attachment 18 | Brief of Amicus Curiae Korey Wise Innocence Project
in Support of Petitioner Jamale D. Townsell,
filed in *Townsell IV* (Dec. 16, 2024)

JAMALE TOWNSELL, through his undersigned counsel, respectfully petitions this Honorable Court pursuant to 28 U.S.C. § 2254, for a Writ of Habeas Corpus ordering his release from confinement on the grounds that he is being denied his liberty in violation of the constitution of the United States. He asks this Court to vacate his Colorado state-court convictions for aggravated robbery, menacing, and theft due to violations of his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution, as detailed herein.

## I.  PARTIES

**PLAINTIFF JAMALE TOWNSELL** is a convicted and sentenced Colorado state prisoner confined by the State of Colorado Department of Corrections in the following location:  DOC #110291, Limon Correctional Facility, 49030 State Hwy 71 South, Limon, Colorado 80826.

**RESPONDENT GILBERT CALEY** is the Warden of the facility in which the Plaintiff is confined. Warden Caley's address is: Limon Correctional Facility, 49030 State Hwy 71 South, Limon, Colorado 80826.

**RESPONDENT MOSES "ANDRE" STANCIL** is the Executive Director of the Colorado Department of Corrections and the person responsible for the Limon Correctional Facility. Director Stancil's address is: 1250 Academy Park Loop, Colorado Springs, CO 80910.

1

**RESPONDENT PHIL WEISER** is the Colorado Attorney General, Office of the Attorney General, Colorado Department of Law, Ralph L. Carr Judicial Building, 1300 Broadway, 10th Floor, Denver, CO 80203.

## II.     NO PRIOR APPLICATIONS

Other than the instant action, Mr. Townsell has not filed any action in federal court challenging the conviction under attack in this Petition.

## III.     CONVICTION UNDER ATTACK

Jamale Townsell's conviction was entered by filing of a Judgment of Conviction and Sentence ("Mittimus") on May 12, 2014, in People v. Jamale Townsell, Arapahoe County, Colorado, District Court No. 2013 CR 2039. (Attachment 1 to this Petition) (SCF, p. 464).

Mr. Townsell was sentenced to:

| | | |
|---|---|---|
| Count 1 | Aggravated robbery (of K.K.) | 22 years |
| Count 2 | Aggravated robbery (of M.O.) | 10 years |
| Count 4 | Felony menacing (of K.K.) | 6 years |
| Count 5 | Felony menacing (of M.O.) | 2 years |
| Count 6 | Theft | 18 months |

The sentence on Count 2 was consecutive to the sentence on Count 1. The sentence on Count 4 was concurrent to the sentence on Count 1, and the sentence on Count

2

5 was concurrent with the sentence on Count 2. The sentence on Count 6 was concurrent to all other sentences, for a total term of incarceration of thirty-two years.

These convictions and sentences followed a jury trial. Jamale Townsell pleaded not guilty. He was convicted at a Jury Trial on March 18, 2014 and sentenced on May 12, 2014. See Attachment 1 (SCF, p. 464).

## IV.    <u>DIRECT APPEAL</u>

Mr. Townsell appealed his conviction to the Colorado Court of Appeals ("CCOA"). Among other issues, his direct appeal included: (1) a claim that the district court plainly erred in admitting DNA match evidence without requiring any testimony about statistical significance of a "match," (2) a claim the district court should have excluded the prosecution's DNA match evidence based on late disclosure of the expert's report, (3) a claim the district court should have granted Mr. Townsell's motion for mistrial after the prosecutor elicited evidence of Mr. Townsell's previous incarceration, (4) a state and federal constitutional claim that the trial court erred in admitting testimonial hearsay, (5) a claim the evidence was not sufficient to sustain the convictions for felony menacing and aggravated robbery as to one of the bank employees, (6) a request to vacate the convictions based on cumulative error, and (7) a claim that the sentences for the robbery

convictions must run concurrently under Colorado law. (Attachment 2 to this Petition).

On April 5, 2018, the CCOA affirmed the judgment on direct appeal. *People v. Townsell*, 14CA1225 (unpublished) ("*Townsell I*") (Attachment 3 to this Petition) (SCF, p. 574). Mr. Townsell sought Colorado Supreme Court Review on Issues 3, 5, and 7 listed above by filing a petition for a writ of certiorari. (Attachment 4 to this Petition).  The Colorado Supreme Court denied *certiorari* on June 22, 2020. *People v. Townsell*, 2018 SC 415. (Attachment 5 to this Petition) (SCF, p. 572).

## V.    POSTCONVICTION PROCEEDINGS

On November 2, 2020, through his appointed appellate counsel, Mr. Townsell filed a motion pursuant to Colo. Crim. P. Rule 35(b) (2020). ("Rule 35(b)"). (Attachment 6 to this Petition) (SCF, pp. 624-1228). That motion was denied on March 10, 2021. (Attachment 7 to this Petition) (SCF, p. 1245).

On September 16, 2021, Mr. Townsell filed a pro se motion pursuant to Colo. Crim. P. Rule 35(c) (2003)("Rule 35(c) motion"). (Attachment 8 to this Petition) (SCF, p. 1253). The location of the Court is: Arapahoe County District Court, 7325 South Potomac Street, Centennial, CO 80112 (phone: (303) 645-

4

6600). In this Petition, the Arapahoe County District Court will be referred to as "the district court," the "trial court," and/or the "postconviction court."

In his postconviction motion, among other claims, Mr. Townsell challenged his conviction on the grounds that "the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state." (Attachment 8 pp. 3, 5). He added five single-spaced, typewritten pages to the court-required Form 4—two devoted to ineffective assistance of counsel ("IAC"). Attachment 8 pp. 5-9; SCF 1260-61. He alleged his appointed trial attorney overlooked critical DNA "evidence and documentation," misread discovery reports regarding DNA, failed to conduct a reasonable DNA investigation, failed to adequately cross-examine about the DNA, and failed to develop evidence for use at trial. He explained that trial counsel mistakenly thought the State's DNA evidence was limited to one piece of evidence (pantyhose). Trial counsel "inexplicably failed to follow up with further investigation," did not "adequately investigate," and argued the State had committed a discovery violation even though "[t]he [e]vidence was in discovery all along," as "the court of appeals decision showed" and as "counsel admitted in a statement" on the record. *Id.*

Even though counsel was unprepared for trial, he failed to move for a continuance to investigate the overlooked evidence. Mr. Townsell alleged had counsel not "inexplicably failed to follow up with further investigation…he would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence" and had counsel hired an expert, he could have countered and more effectively cross-examined the people's expert: "[w]ith a continuance, counsel could have hired a DNA expert to counter the peoples expect and could have had more effective cross-examination of the people's expert."  (Attachment 8, p. 9) (SCF, p. 1261). Pursuant to a Colorado statute and state rule of criminal procedure that provides for appointed counsel Rule 35(c)(3)(IV), (V); § 21-1-104(b), C.R.S. (2018), Mr. Townsell requested appointment of counsel. (Attachment 8, p. 2) (SCF, p. 1254).

Calling the assertions "conclusory," the trial court summarily denied his petition without appointing counsel. (Attachment 9 to this Petition) ("*Townsell II*"). (SCF, p. 1274, 1278-79). The court found that Townsell's pro se motion was insufficient to find *Strickland*[1] prejudice. (Attachment 9, p. 6) (SCF 1279):

> Even if trial counsel's performance was deficient for failing to move to continue the trial date and investigate the prosecution's late-disclosed DNA report, Defendant's Petition states neither legal nor factual grounds to suggest that such deficient performance caused prejudice. Defendant's

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

petition merely asserts that had trial counsel conducted a further investigation, trial counsel "would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence against [Defendant]." Defendant's Petition, p. 9. Defendant's Petition does not identify any facts to explain what that "substantial evidence" would have been. Nor does Defendant's Petition explain how that substantial evidence would have overcome the substantial DNA evidence the prosecution offered at trial. Such a conclusory assertion is insufficient to raise a meritorious ineffective assistance of counsel claim. *See People v. Fulton*, 754 P.2d 398 (Colo. App. 1987) (rejecting ineffective assistance of counsel claim for failure to establish prejudice without addressing first prong of test).

*Townsell II,* p. 6 (Attachment 9, p. 6).

On appeal, this time back with the same appointed counsel who had represented him on his direct appeal, Mr. Townsell litigated his claim that the convictions violated the Sixth and Fourteenth Amendments because his trial counsel rendered ineffective assistance of counsel in failing to conduct an adequate investigation into the DNA aspects of the case and in failing to hire a DNA expert to review the prosecution's reports and recommend additional DNA testing. He also litigated his claim that counsel should have been appointed to represent him in his postconviction litigation. (Attachment 10 to this petition).

On November 16, 2023, a split panel of the CCOA affirmed in a divided 2-1 decision. *People v. Townsell*, No. 21CA2068 (unpublished) ("*Townsell III*") (Attachment 11 to this Petition). The two-judge majority believed that Townsell

7

failed to allege facts sufficient to establish *Strickland*'s prejudice prong, because the petition didn't state:

- whether a defense DNA expert "would even have been available and willing to testify," *id.*, ¶ 20;

- what a defense expert would have opined about the "evidence the jury heard about a mixed DNA profile on the mask," *id.*, ¶ 17;

- whether a defense DNA expert would testify that "other items recovered by the police" would not have contained Mr. Townsell's DNA, *id.*, ¶ 20; and

- how testing of the other items "would have overcome the inculpatory DNA evidence," *id.*, ¶ 19.

The majority ruled that without these particulars, the claim was "conclusory." *Id.*, ¶ 20.

The dissenting judge disagreed, contending the majority's prejudice pleading requirements "place a near insurmountable burden" on the pro se petitioner in a DNA case by demanding that an incarcerated, pro se defendant produce the very evidence "he claims counsel failed to procure in the first instance." *Id.*, ¶¶ 40, 41. He agreed the pro se petition didn't detail what exculpatory evidence a defense expert could have provided. *Townsell II*, ¶ 24 (Schutz, J., dissenting). But that did not end the discussion. Counsel should have been appointed to investigate, assist "in developing and pursuing his petition," and file the supplemental briefing "contemplated by Crim. P. 35(c)." *Id.*, ¶¶ 24, 46.

8

On February 17, 2026, the Colorado Supreme Court ("CSC") accepted review. *See* Attachments 12 and 13 (Townsell's Petition for a Writ of Certiorari and CSC order granting review). In the CSC, Mr. Townsell argued that there was sufficient *Strickland* prejudice to warrant reversal of the *Townsell II* Court's summary dismissal. Attachment 14 to this Petition (Townsell's Opening Brief in the CSC). On February 17, 2026, the CSC affirmed the CCOA. *Townsell v. People*, 23 SC 924, 2026 CO 11 ("*Townsell IV*"). (Attachment 15 to this Petition). Mr. Townsell filed a petition for rehearing (Attachment 16 to this Petition) and on March 30, the CSC modified its opinion on rehearing. (Attachment 17 to this Petition).

## VI.   TIMELINESS

AEDPA imposes a one-year deadline for filing a federal habeas petition. 28 U.S.C. § 2244(d)(1). Mr. Townsell's Petition is timely because of statutory tolling due to state-court postconviction proceedings.

The timeliness of a federal habeas petition depends on the beginning of the one-year clock and the extent of any applicable statutory or equitable tolling.

The one-year clock typically begins, and in this case did begin, on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The

9

CSC denied Mr. Townsell's direct appeal petition for certiorari on June 22, 2020. (Attachment 5).

Mr. Townsell then had 90 days following that date within which to file a petition for certiorari with the U.S. Supreme Court. Supreme Court R. 13.1. Therefore, the one-year AEDPA clock initially began to run in Mr. Townsell's case 90 days after June 22, 2020 -- that is, on September 20, 2020. One year from that date was September 20, 2021.

The one-year period has not yet run, however, due to statutory tolling. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). Mr. Townsell's first motion for state post-conviction relief – a motion to reduce sentence filed pursuant to Colo. Crim. P. Rule 35(b) -- was properly filed on November 2, 2020, which stopped the one-year AEDPA clock after 43 days. (Attachment 6). The district court denied that motion on March 10, 2021. (Attachment 7). Mr. Townsend had 49 days in which to file an appeal under C.A.R. 4 (a)(1), extending tolling until April 28, 2021. On September 16, 2021, he filed his motion to vacate the convictions filed pursuant to Crim. P. Rule 35(c). (Attachment 8), stopping the AEDPA clock after 141 days had passed. Thus, at the

10

time he filed his Rule 35(c) postconviction motion, 184 days had passed and Mr. Townsell had 181 days remaining in the one-year statute of limitations. Statutory tolling did not cease until the CSC issued its modified opinion on rehearing on March 30, 2026. (Attachment 17).

Thus, Mr. Townsell's federal habeas petition is timely if filed within 184 days of March 30, 2026 – i.e., on or before September 20, 2026.

Therefore, this Petition is timely for purposes of 28 U.S.C. § 2244(d).

## VII.   BACKGROUND FACTS

### Introduction

This is a "who-done-it" about a masked bank robber. Police believed the robber was Jamale Townsell. This belief was based on limited DNA findings from items found near the stolen money and a car driven by his estranged wife (Ebony Ruffin), and circumstantial phone data evidence. Ms. Ruffin was involved—she was caught leaving the area with the money. The question was: who was the co-perpetrator?

Mr. Townsell and Ms. Ruffin co-parented a child at the time of the bank robbery. They shared a car and it was not unusual for them to communicate to coordinate child care as they did on the day of the bank robbery, particularly

11

leading up to the weekend which was both Father's Day and Mr. Townsell's birthday. It was common for both of them to leave items in the car they shared.

Evidence showed Ms. Ruffin and Mr. Townsell called each other multiple times the morning of the robbery and that their phones were in the same sector near the bank.[2] But Ms. Ruffin called other unknown numbers that morning,[3] the robber used a TracFone,[4] and Mr. Townsell was using his debit card to buy fuel at the time of the robbery.[5] Thus, the evidence they were in communication wasn't dispositive.

Mr. Townsell does not match the robber's description. The robber was left-handed,[6] but Mr. Townsell is right-handed.[7] The robber was 5'7" to 5'9",[8] but Mr. Townsell is 6'2".[9] The police had been alerted to investigate Ms. Ruffin's brother (Marcus Simpson), who is 5'7" or 5'9".[10] All this made the DNA issues critical. DNA was the central theme of the prosecutor's closing rebuttal.[11]

---

[2] TR 3/14/14, pp 76:17-77:7, 80-86, 42-158; EX 111.

[3] EX 103 (PDF, pp 15-37).

[4] TracFones are prepaid phones with no identifying information. TR 3/14/14, pp 96:21-97:11.

[5] TR 3/17/14, pp 209-11; EXs A, 111(j) (PDF, pp 1-7, 94).

[6] EX 1; TR 3/12/14, pp. 84:11-85:3; 110:15-20.

[7] TR 3/17/14, pp 65:11-14, 207:16-208:7.

[8] One eyewitness thought the robber was 5'9". Other bank witnesses, a police officer, and the height chart at the bank door all indicated a height of 5'7" to 5'8". TR 3/12/14, pp 56:11-13, 85:22-86:2, 102:10-19, 176:11-177:14.

[9] TR 3/17/14, p 42:12-16.

[10] *Id.*, pp 173:21-174:4, 212:7-13, EX C.

[11] TR 3/18/14, pp 51:7-18 ("[T]he defendant's DNA did not commit this crime

12

## The bank robbery and police investigation

On June 15, 2013, an armed and masked man sprinted into the Bank of the West in Aurora and demanded money from the bank teller, K.K. The man hurdled the counter, opened the teller drawer, and took $1,104. (EX 1 (video); TR 3/12/14, pp 92-93; p 139:21-24). He ran back out the front door, got into a stolen car, and drove away. (TR 3/12/14, p 96:18-21). The robbery took twenty-eight seconds. (EX 1 (video)). The robber drove away in a stolen getaway car (a Mazda) was discarded in a parking lot several blocks from the bank. (TR 3/13/14, p 5-9; 22-23).

Two bank employees were inside the bank lobby that morning: K.K. and M.O. M.O. described the robber as 5'8" tall. (TR 3/12/14, p 102:18-19). An eyewitness across the street from the bank testified that the robber was 5'9" tall. (*Id.* at p 56: 11-13). A patrol officer determined that the robber was 5'7" by observing the robber near the height chart on the bank's front door frame. (*Id.* at pp 176-77). The physical description of the robber, given by every eyewitness, was of a man 5'7" to 5'9" tall.  None of the prosecution witnesses testified that the robber was taller than 5'9". The only other physical description provided by witnesses was that the robber was left-handed. (*Id.* at p 84:9-20; 110:14-20). Mr. Townsell is 6'2"

---

without him."), 52:9-10 (insisting DNA evidence was proof beyond a reasonable doubt).

and right-handed. (TR 3/17/14, p 42:12-16; 65:11-14). At 6'2", Mr. Townsell does not come close to matching the physical description. Thus, the cross-examination of the closest eyewitness was crucial.

K.K. told the officer that the robber wore jeans. (*Id.* at p. 162:24). This is important because the pants recovered and admitted at trial were sweatpants, not jeans, and K.K.'s description of jeans corroborates the testimony of the man who witnessed the robber leaving the bank. (*Id.* at p. 54:2-5; TR 3/13/14, p. 120:15; Ex. 42). The size of the sweatpants in exhibit 42 was 2XL. (TR 3/13/14, p. 120:21-24). In their closing argument, the People stressed the size of the sweatpants to support their position that the robber was tall. The prosecutor argued, "The XXL clothing, the sweatshirt and the pants, and you can see them in the video as this man moves athletically and especially through this crime scene. He's not some little 5'7" guy that's completely lost in a man's XXL." (TR 3/18/14, p. 52:4-7).

The robber displayed such left-hand dominance that he ran into the bank with the gun in his left hand, switched hands so that he could utilize his left hand for opening the teller drawer, removing the money, and placing the money into his bag, and then returned the gun to his left hand as he exited the bank. (EX 1; TR 3/12/14, p 84:11-13; 110:15-20; TR 3/17/14, p 65:11-14). Testimony established thatMr. Townsell is right-handed. (TR 3/17/14, pp 207-08).

14

A GPS tracking device was hidden inside the money. (TR 3/12/14, p 67:23-24). Officers tracked the GPS device and located the money in a bag discarded on the street. (TR 3/13/14, pp 84-85). The bag also contained a sweatshirt, cell phone with tape, shoe, and red bandana. (*Id.* at p 85:8-13). Around the corner, officers found Mr. Townsell's former wife, Ebony Ruffin, in her car. (TR 3/12/14, p 211-212). In the trunk of her car, the officers found a gun and another shoe. (*Id.*).

**There was a viable alternate suspect:  Ms. Ruffin's brother**

Ms. Ruffin's brother, Marcus Simpson, matched the description given by the eyewitnesses. Mr. Simpson was 5'7," which was close to the consensus that the robber was 5'8" (not 6'2" as is Mr. Townsell). Simpson's sister Danielle Ester (who is also Ms. Ruffin's sister) lived close to the location where the GPS tracked the money shortly before Ms. Ruffin was arrested, and where the money was found discarded. (TR 3/17/14, pp. 42:7-11, 178, 216-217, 223-224; EX D). There is a reasonable inference that Ms. Ruffin (or Marcus Simpson) was headed to Danielle Ester's house when Ms. Ruffin was apprehended. The defense investigator testified that the car used in the robbery was stolen from a location that was also near Mr. Simpson's home. (TR 3/17/14, pp. 216-217).

Mr. Simpson had access to items owned by Mr. Townsell and appears to have used some of those items in the robbery. Mr. Townsell's workout bag was in the trunk of Ms. Ruffin's car.  It would not be surprising to find Mr. Townsell's DNA on items in the car, including his knit cap. Thus, what was important was not whether Mr. Townsell's DNA was on his own items from the car – but whether Mr. Simpson's DNA was on them. That made DNA testing of the items closest to the robber's body critical.

Colorado conditions presentation of "alternate suspect" evidence on compliance with criminal procedure rules that require the defense to give pretrial notice.

**DNA evidence was key.**

DNA was the only evidence used to identify Mr. Townsell as the robber. Mr. Townsell did not match the description given by any eyewitness. Nor did he match the characteristics viewable on the surveillance video. The difference between the robber's height (5'7" to 5'9") and Mr. Townsell's (6'2") is significant.

A DNA expert testified that Mr. Townsell's DNA profile matched items in the bag: the shoes, pantyhose, and bandana. (TR 3/17/14, pp 116-117). The expert testified that Mr. Townsell's DNA was part of a mixture found on a knit cap they

16

believed was used as a mask.[12] (TR 3/17/14, p. 107:11-15, p. 117:18-25, p. 149:8-10). The knit cap contained a mixture of DNA, which means more than one person's profile was present.

The clothing items that would have been closest to the robber's skin were not tested for DNA. For example, in the bag with the money, the police found a "t-shirt that had a wire cell phone ear piece duct taped to the inside of a t-shirt." (TR 3/12/14, p 246:8-11; Env 1, EX 69-70). The prosecution did not check for DNA or fingerprints on the t-shirt, phone, or tape. (TR 3/17/14, pp 64-65, p 131:10-15). The DNA expert did not test the gloves or any of the other recovered items. (*Id.* at p 129:9-18).

The People's expert did not test items that would have been closest to the robber's skin. Neither the shirt "worn by the assailant"[13] nor the earbuds attached to it were tested. Both would be a rich source of DNA:[14]

---

[12] The item was described on the laboratory report as a "dark blue knit cap w/ 2 eye holes cut out." (EX 49, p 159; CF 551).

[13] TR 3/17/14, p. 131:10-16.

[14] TR 3/13/14, pp 163-164.



EX 69, p 186. A phone taped to the assailant's shirt was not tested:[15]



EX 68, p 185.

Mr. Townsell asserted in his pro se motion that trial counsel should have hired a

DNA expert. (SCF, p 1261). A DNA expert was critical in this case because the

---

[15] TR 3/17/14, pp. 131-132.

People's expert did not test many items that would have been closest to the robber's skin. The DNA expert would have shown that items closer to the robber did not contain Mr. Townsell's DNA. For example, the shirt "worn by the assailant" was submitted to the People's DNA expert but was not tested. (TR 3/17/14, p. 131:10-16). A phone that was "taped to the shirt" of the assailant was submitted to the People's DNA expert but was not tested. (TR 3/17/14, p 131:20-25). Likewise, earbuds that were "presumably worn by the assailant during the robbery" were submitted to the People's DNA expert but not tested. (TR 3/17/14, p 132:1-6). The mask contained a mixture of DNA, which means that more than one person's profile was present on the mask. (TR 3/17/14, p 107:11-13; p 149:8-10).

The DNA's location had an innocuous explanation because it was found in the trunk of the car that Mr. Townsell shared with Ms. Ruffin. Although the couple's relationship was ending, they shared a child and continued communication. The child was in the car when Ms. Ruffin was arrested. (TR 3/12/14, p. 238:9-16).

**<u>Defense counsel botches the DNA investigation.</u>**

In August 2013, a DNA analysis reported a match between Mr. Townsell's profile and a sample taken from the pantyhose. SCF, pp. 547-52. Defense counsel

apparently overlooked that the report also matched DNA found on the pantyhose to DNA found on the shoes, bandana, and knit cap/mask. SCF p. 551.

In February 2014, the prosecution provided the defense with an updated DNA expert report. (TR 3/14/14, p 6:15-21; Supp. CF, p 41). In the February 2014 report, the expert opined "[t]o a reasonable degree of scientific certainty and in the absence of an identical sibling, Townsell is the source of the DNA profiles developed from" the pantyhose, red bandana, and right shoe." (Supp. CF, p. 41). The expert also stated that Mr. Townsell is the source of the DNA profile developed from the left shoe, and the source of the major component developed from the knit cap.

After reading the updated report, defense counsel erroneously concluded that this was a new revelation. He didn't realize he'd already had this information from the August 2013 report.  At pretrial hearing, defense counsel stated:

> I knew that there was a DNA match on a pair of pantyhose and I think I told the Court that, and that report did come to me more than 30 days in advance and, frankly, DNA from pantyhose which nobody has identified as being used in a robbery and a husband's DNA being on his wife's pantyhose is something that argument with the jury or presentation with the jury I can deal with, but the laboratory report now saying the same items that were tested now are also involving other items that were seized, if you will, from Ebony Ruffin's general possession from the Pontiac and the bag that was left outside, that was not released until within the last two weeks of trial. So there's another disclosure issue and, frankly, I think Rule 16 is pretty clear that this type of stuff needs to be before 30 days.

20

(TR 3/14/14, pp 7-8).

The district court determined that the information had been disclosed in the August 2013 report and was thus available to trial counsel well in advance of trial. In *Townsell I*, the CCOA summarized how the district court arrived at its findings:

> On March 13, 2014, while objecting to other evidence not challenged on appeal, defense counsel mentioned the allegedly late disclosure of the February 2014 expert report. The trial court, however, made no ruling concerning the February 2014 report. The next day, defense counsel repeated his objection to the February 2014 report and related DNA match evidence concerning the shoes, bandana, and mask. The trial court stated that it was "not able to make a ruling" concerning the February 2014 report and the challenged DNA match evidence, so it deferred ruling. Following a recess, defense counsel failed to seek a ruling concerning the alleged discovery violation involving the February 2014 expert report, and defense counsel did not contemporaneously object to the challenged DNA match evidence when it was offered. In spite of defense counsel's failure to obtain a final ruling on the matter, the trial court did not err in allowing the challenged DNA match evidence because this evidence was timely disclosed in the January 2014 expert report.

*Townsell I,* ¶ 20 (Attachment 3, pdf pp. 11-12). The CCOA found:

> Here, the record supports the trial court's finding that the timely disclosed January 2014 expert report demonstrated that Townsell's DNA profile matched profiles from the pantyhose and other items. A portion of the January 2014 report (dated August 22, 2013) states that
>
> • DNA profiles "indicative of the same unknown male

21

> donor" were developed from the pantyhose, bandana, and right shoe;
>
> • the partial DNA profile developed from the left shoe "is indicative of the same unknown male donor from" the pantyhose, bandana, and right shoe; and
>
> • the major contributor's DNA profile from the mask "is indicative of the same unknown male donor from" the shoes, pantyhose, and bandana.

*Townsell I,* ¶ 23 (Attachment 3, pdf pp. 13-14). The CCOA set forth a portion of the January 2014 expert report (dated August 26, 2013), stating:

> • the DNA profile from the pantyhose matched Townsell's DNA profile from the Convicted Offender Index (COI);
>
> and
>
> • the DNA profile from the left shoe matched the DNA profile from the pantyhose and Townsell's COI DNA profile.

*Id.,* ¶ 24 (Attachment 3, pdf p. 14).  Thus, the CCOA concluded: "The January 2014 report states that (1) a single male's DNA profile matched the profile from the shoes, bandana, mask, and pantyhose; (2) only one person's DNA was found on the pantyhose; and (3) Townsell's COI DNA profile matched the profile from the pantyhose and left shoe. *Ibid.* Thus, "the prosecution timely, albeit convolutedly, disclosed the expert's determination that Townsell's DNA profile matched DNA

22

found on the pantyhose, bandana, mask, and shoes." *Townsell I,* ¶ 24 (Attachment 3, pdf pp. 14-15).

Trial counsel was oblivious. He didn't know what he had, when he had it, or what it meant.

Even after trial counsel learned the scope of the DNA evidence that would be used at trial, he marched on without further investigation. Specifically, after learning that multiple items contained Mr. Townsell's DNA — items that were likely used in the robbery, including the mask — counsel did not ask for a continuance or otherwise investigate this information.

**The state courts reject Mr. Townsell's pro se claims**

Mr. Townsell asserted in his pro se postconviction motion that trial counsel should have hired a DNA expert.  (Attachment 8, pdf pp. 8-9) (SCF, pdf pp. 1260-61). Mr. Townsell's claims were rejected, but not because counsel's performance was not deficient. Two divisions of the CCOA and the postconviction court agree that Mr. Townsell's trial attorney botched the DNA issue. In *Townsell I,* the CCOA determined "defense counsel failed to seek a ruling concerning the alleged discovery violation," "did not contemporaneously object to the challenged DNA evidence when it was offered," and misread the timely disclosed DNA report. *Townsell I*, ¶¶ 20-24 (Attachment 3, pdf pp. 11-15); *see* SCF 1279 (assuming

23

counsel performed deficiently). In dissent in *Townsell III*, the dissent explained,

"The postconviction court and the majority also assume that the evidence supports

the conclusion that Townsell presented facts that, if proved, support a finding that

his counsel's failure to retain a DNA expert was below an objective standard of

reasonableness and therefore deficient. I agree with that conclusion." *Townsell III*,

*Dissent*, ¶ 37 (Attachment 11, pdf p. 18).

Mr. Townsell lost in state court not because of the deficient performance

prong, but because of the prejudice prong. The state courts ruled that Mr. Townsell

did not sufficiently allege facts that would satisfy *Strickland*'s prejudice prong.

The state district court ruled:

> Defendant's Petition states neither legal nor factual grounds to suggest
> that such deficient performance caused prejudice. Defendant's petition
> merely asserts that had trial counsel conducted a further investigation,
> trial counsel 'would have discovered substantial evidence of
> defendant's exclusion despite the new DNA evidence against
> [Defendant].' Defendant's Petition, p. 9. Defendant's Petition does not
> identify any facts to explain what that "substantial evidence" would
> have been. Nor does Defendant's Petition explain how that substantial
> evidence would have overcome the substantial DNA evidence the
> prosecution offered at trial. Such a conclusory assertion is insufficient
> to raise a meritorious ineffective assistance of counsel claim. *See
> People v. Fulton*, 754 P.2d 398 (Colo. App. 1987) rejecting
> ineffective assistance of counsel claim for failure to establish
> prejudice without addressing first prong of test).

*Townsell II* (District Court Order denying postconviction relief), p. 6 (Attachment

9, p. 6).

24

The CCOA followed suit:

> ¶ 16 We, like the postconviction court, conclude that Townsell failed to allege facts sufficient to establish *Strickland*'s prejudice prong.

> ¶ 17 On appeal, Townsell contends that '[t]he failure of counsel to properly investigate the DNA evidence in this case likely affected the outcome of the trial' because '[t]he DNA evidence here was the reason [he] was convicted.' He continues that '[i]f defense counsel had read the discovery correctly and realized that both [Townsell]'s DNA and another person's DNA was found on the mask,' counsel could have called a DNA expert to further analyze the mask. But the jury heard evidence about a mixed DNA profile on the mask, and Townsell does not explain how a defense expert's testimony on this point would have overcome the other evidence admitted showing that Townsell's DNA — and only Townsell's DNA — was found on the shoes, pantyhose, and bandana. Many of these items were seen on still shots from the surveillance video of the robbery. *See People v. Washington*, 2014 COA 41, ¶ 35 (counsel did not provide ineffective assistance by failing to call a witness whose testimony would have been cumulative of that of other witnesses).

> ¶ 18 Townsell further argues that because 'there was an alternate suspect in this case,' the DNA expert also 'would have been used to show that items closer to the robber [that were not tested for DNA by the police] did not contain [Townsell]'s DNA,' such as the robber's shirt, a phone that was taped to the shirt, and earbuds that were 'presumably worn by the [robber].' We reject this argument for two reasons. First, Townsell overstates the evidence of an alternate suspect at trial. During closing argument, when defense counsel tried to state there was an alternate suspect, the parties had a bench conference. The court acknowledged that there was no testimony to support the alternate suspect theory. Instead, defense counsel was only allowed to argue that the police had 'notice' that there might be an alternate suspect

> given the disparity between the witnesses' descriptions of the robber's height and Townsell's height.
>
> ¶ 19 Second, similar to Townsell's mask argument, he does not explain here how DNA testing of these items would have overcome the inculpatory DNA evidence that the prosecution had already offered at trial. Indeed, he only speculates that the aforementioned items might have contained exculpatory material. …
>
> ¶ 20 Townsell also does not specify how further investigation by defense counsel of the DNA evidence would have changed 'the result of the proceeding,' or allege that a DNA expert would even have been available and willing to testify consistent with his allegations that his DNA may not have been on the other items recovered by the police. Therefore, we agree with the postconviction court that Townsell's claim is conclusory. …

*Townsell III* (CCOA opinion on postconviction), ¶¶ 16-20 (Attachment 11, pdf pp. 7-9).

The Colorado Supreme Court ("CSC") issued a writ of certiorari to decide standards for appointment of postconviction counsel under Colo. Crim. P. 35(c)(3)(IV) and (V). (See Attachment 13).The CSC determined that Colo. Crim. P. 35(c)(3)(IV) imposes a *Strickland* prejudice pleading requirement and thus, to secure appointment of counsel to assist in framing and investigating claims of ineffective assistance of trial counsel, the pro se defendant must first articulate prejudice in a non-conclusory fashion. *Townsell IV*, ¶ 29 (Attachment 15, p. 15). Two justices believed Townsell alleged prejudice sufficiently to warrant

26

appointment of counsel, but four justices did not. In the majority's view, "Townsell failed, however, to explain what additional DNA testing might reveal and specifically how it might have exculpated him. … Townsell only asserted that further DNA testing would prove his *exclusion* but never the *inclusion* of another suspect. Townsell never alleged that there was an alternate suspect." *Townsell IV*, ¶¶ 34-36 (Attachment 15, pdf pp. 18-20).

## VIII.  CLAIMS

When a state court has adjudicated a federal constitutional claim on the merits, the Antiterrorism and Effective Death Penalty Act,  Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") establishes that the writ of habeas corpus may issue in two instances: (1) if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) if the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  Because the state court did not hold a hearing on Mr. Townsell's postconviction motion, this Court need not defer to any determination of facts.

27

Because the CSC rejected the constitutional claim on the merits, Mr. Townsell needs to show that the CSC acted unreasonably in determining the facts or in applying a Supreme Court holding. § 2254(d)(1).

**A. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION BY FAILING TO INVESTIGATE, FAILING TO RETAIN A DNA EXPERT, FAILING TO OBJECT TO TESTIMONIAL HEARSAY AS A CONFRONTATION CLAUSE VIOLATION, AND FAILING TO INVESTIGATE AND PRESENT AN ALTERNATE SUSPECT DEFENSE.**

**1. EXHAUSTION**

To exhaust his state remedies, Mr. Townsell need not file a petition for a writ of certiorari with the Colorado Supreme Court. *See Ellis v. Raemisch*, 856 F.3d 766, 777 (10th Cir. 2017) (C.A.R. 51.1 permits a Colorado state prisoner to exhaust all available state remedies without seeking discretionary relief from the Colorado Supreme Court). Colorado Appellate Rule 51.1 provides that Colorado Supreme Court review is not necessary to preserve the issues. *Ibid*.

Nevertheless, even though it was not necessary to exhaust remedies, Mr. Townsell did obtain review in the Colorado Supreme Court over the question of whether the lower court should have appointed counsel to assist him in investigating and presenting his claim of ineffective assistance of counsel. The Colorado Supreme Court ("CSC") ruled that he failed to sufficiently allege

prejudice in his pro se petition and affirmed the summary denial of his petition. *People v. Townsell,* 23 SC 924, 2026 CO 11 (filed February 17, 2026, as modified on March 30, 2026) ("*Townsell III*"). The CSC's initial Opinion and modified opinion are Attachments 15 and 17 to this Petition.

Mr. Townsell raised the confrontation clause issue on direct appeal in the CCOA. Opening Brief of Appellant, filed in *Townsell I*, pdf pp. 34-41 (Attachment 2 to this Petition).[16]  In *Townsell I*, the CCOA agreed the constitutional claim as unpreserved, and the CCOA agreed. *Townsell I,* ¶ 44 (Attachment 3 to this Petition, pdf p. 28). Reviewing under the "plain error" standard, the CCOA rejected the claim.

In his pro se petition for postconviction relief, Mr. Townsell did not raise a claim that his attorney failed to object to admission of evidence in violation of the Sixth Amendment's Confrontation Clause. Nevertheless, this Court should consider the claim because his failure to raise the claim was the result of the absence of state postconviction counsel.

---

[16] "The United States and Colorado Constitutions guarantee persons accused of crimes the right to confront the witnesses against them. *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Crawford v. Washington,* 541 U.S. 36, 49 (2004); *People v. Fry*, 92 P.3d 970, 974 (Colo. 2004).  Under the Confrontation Clause, testimonial hearsay statements must be excluded when (1) the declarant is unavailable to testify, and (2) the defendant had no previous opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 49; *People in Interest of R.A.S.*, 111 P.3d 487, 489 (Colo. App. 2004)." Both *Fry, supra* and *R.A.S., supra*, were decided on federal constitutional grounds and rested on *Crawford, supra*.

29

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of postconviction counsel may serve as cause to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991), the Court had held that the absence or ineffective assistance of state post-conviction counsel could not establish cause to excuse a procedural default because there is no constitutional right to counsel in state post-conviction proceedings. See *Coleman*, 501 U.S. at 752-54. In *Martinez*, however, the Supreme Court established an equitable exception to that rule, holding that the absence or ineffective assistance of counsel at an initial-review collateral proceeding may establish cause to excuse a petitioner's procedural default of substantial claims of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9. Thus, absence of counsel in an initial state postconviction proceeding such as the proceeding that Jamale Townsell has been engaged in, may function as cause, to overcome a procedural default of a claim of ineffective assistance of trial counsel. *Martinez*, 566 U.S. at 18.

2.    **COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN HANDLING THE DNA ASPECTS OF THE CASE.**

The Sixth Amendment, applicable to the State of Colorado through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance *Strickland v. Washington,* 466 U.S. 668, 686 (1984).

A claim of ineffective assistance of counsel is established if Mr. Townsell can show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000); *Strickland*, 466 U.S. at 687–88.

Under the *Strickland* prejudice standard, courts must evaluate "the collective trial evidence together with the collective evidence that a reasonable investigation of the State's forensic evidence would have uncovered." *Elmore v. Ozmint*, 661 F.3d 783, 868 (4th Cir. 2012). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, at 695–96.

31

A defendant need not prove prejudice by a preponderance of the evidence. *Strickland v. Washington*, *supra,* 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").

### (a)    Deficient performance

As noted above, the state courts both found and presumed that counsel performed deficiently under the Sixth Amendment. This ruling was an accurate application of *Strickland*.

To render adequate performance under *Strickland's* first prong, "[c]ounsel has a constitutional, independent duty to investigate and prepare a defense strategy prior to trial." *Williams v. Allen*, 598 F.3d 778 (11th Cir. 2010); *Porter v. McCollum*, 558 U.S. 30, 38 (2009).  Counsel has a duty to make reasonable investigations, and choices based upon an inadequate investigation are not reasonable. *Strickland,* 466 U.S. at 691. In evaluating the reasonableness of an investigation, a court "must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003)(courts cannot use "strategic decision" as a *post hoc* rationalization to

32

explain counsel's investigation shortfalls and inattention to mitigation investigation). In *Wiggins*, because defense counsel "abandon[ed] their investigation at an unreasonable juncture," *id*., at 527-28, it was not possible for defense counsel to make strategic decisions about the case, because strategic decisions must be based upon a reasonable investigation.

Failure to consult appropriate experts constitutes deficient performance and has resulted in grants of relief from a wide range of courts, including the U.S. Supreme Court, *e.g., Hinton v. Alabam*a, 571 U.S. 263, 273 (2014). See also *e.g. Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance). Indeed, " '[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence.' " *Hinton*, 571 U.S. at 273 (*quoting Harrington v. Richter*, 562 U.S. 86, 106 (2011). The relevant question is whether counsel made a reasonable decision that rendered consultation with an expert unnecessary. *Harrington*, at 106; *Wiggins v. Smith*, 539 U.S. at 523. That is because, while courts defer to trial counsel's judgements, that does not apply if counsel's "reasonable professional judgments" did not "support [counsel's] limitations on

33

investigation." *Id., quoting McMann v. Richardson,* 397 U.S. 759, 771 (1970). *See Strickland*, 466 U.S. at 690-91 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (finding deficient performance where counsel's failure to investigate "was not based on 'strategy,' but on counsel's mistaken belie[f] that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense.").

Defense counsel's failure to understand scientific reports or hire an expert when needed violates the most fundamental of constitutional requirements for minimally adequate representation—the constitutional command that defense strategy must be based on reasonable investigation. *Kimmelman v. Morrison*, 477 U.S. 365 (1986). Trial counsel "has a duty to make reasonable investigations," *Strickland,* 466 U.S. at 691 (emphasis added), and to familiarize themselves with discovery, *Kimmelman*, at 384-86. Defense counsel's choices are reasonable only if based on a reasonable investigation. *See Hinton v. Alabama*, 571 U.S. 263 (2014).

These same types of omissions have been found to cause constitutionally ineffective assistance of counsel requiring vacation of the conviction. Numerous convictions have been vacated when the defense failed to retain and consult an

34

expert. *Caro v. Calderon*, 165 F.3d 1223, 1226-27 (9th Cir. 1999) (although counsel consulted four experts, including a medical doctor, a psychologist, and a psychiatrist, counsel failed to consult a neurologist or toxicologist who could have explained neurological effects of defendant's extensive exposure to pesticides); *United States v. Mooney*, 497 F.3d 397, 404 (4th Cir. 2007)("Counsel in criminal cases are charged with the responsibility of conducting 'appropriate investigations, both factual and legal, to determine if matters of defense can be developed.'") (quoting *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.1968) and citing *Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations")); *Elmore v. Ozmint*, 661 F.3d 783 (4th Cir. 2012) (granting habeas relief because defense counsel rendered ineffective assistance by failing to consult with experts); *Williams v. Thaler*, 684 F.3d 597, 604 (5th Cir.2012), *cert. denied*, 568 U.S. 1100 (2013) (holding that defense counsel's performance fell below an objective standard of reasonableness when counsel failed to "obtain any independent ballistics or forensics experts, and was therefore unable to offer any meaningful challenge to the findings and conclusions of the state's experts, many of which proved to be incorrect").

This case is not unlike that of *Elmore v. Ozmint, supra*, in which "[t]he case was a real 'who-done-it' in which Elmore was asserting his innocence [and] the

State's case against him largely hinged on the forensic evidence." 661 F.3d at 861. Yet Elmore's lawyers -- like Mr. Townsell's -- conducted no more examination of the forensic evidence than to look at the exhibits that the State intended to introduce. "The lawyers did not look behind the State's proposed exhibits, did not investigate the other (possibly exculpatory) evidence that the State was bypassing, and did not conduct an independent analysis of a single item of forensic evidence in the State's arsenal." *Id.*, at 861-862. The Fourth Circuit paraphrased *Rompilla v. Beard*, *supra*, explaining: "To paraphrase *Rompilla*, '[i]t flouts prudence to deny that a defense lawyer should try to look at [forensic evidence] he knows the prosecution will cull for [inculpatory] evidence, let alone when the [forensic evidence] is sitting in the [prosecutor's office], open for the asking.'" *Id.*, at 862, *citing Rompilla v. Beard, supra*, 545 U.S. at 389.

The Fourth Circuit's ruling applies equally to this case: "Simply put, the gross failure of Elmore's 1984 trial lawyers to investigate the State's forensic evidence—including the medical examiner's time-of-death opinion, the pubic hairs allegedly recovered from Mrs. Edwards's bed, the nature of the "Item T" materials removed from Mrs. Edwards's bloody abdomen, and the fingerprint lifted from the blood-smeared toilet in Mrs. Edwards's en suite bathroom—had a palpably adverse effect on the defense." *Elmore v. Ozmint*, *supra,* 661 F.3d at 851. Observing "[t]he defense

team conducted no independent analyses of the State's forensic evidence," *id*., at 853, the Court granted habeas relief.

The deficient performance prong here is satisfied by counsel's admission on the record that he misread discovery. He was not prepared for trial. In *Townsell I*, the CCOA held that the DNA report was in discovery all along and that the updated report merely repeated information that was already available. Defense counsel failed to challenge the prosecution's DNA evidence, failed to retain a defense DNA expert, and otherwise ineffectively handled the DNA aspects of the case.  Under these circumstances, the record establishes not only that deficient performance was alleged but that it was established.

Also critical is the fact that there was an alternate suspect in this case. And the mask contained a mixture of DNA, which means that more than one person's profile was present on the mask. (TR 3/17/14, p 107:11-13; p 149:8-10). If trial counsel had read the discovery correctly and realized that both Mr. Townsell's DNA and another person's DNA were found on the mask, that mask could have been further analyzed by a defense expert. This was critical because an innocuous explanation for the presence of Mr. Townsell's DNA on the mask was that he could have actually worn it as a cap at some point, before Simpson cut holes to fashion it into a mask, thus accounting for two DNA profiles on the mask. After

all, the items used in the robbery were found near or in Mr. Townsell's Ms. Ruffin's car, a place where Mr. Townsell kept some of his personal items.

**(b)    Prejudice**

The state court's opinions that, in his pro se motion, Mr. Townsell insufficiently alleged prejudice are not merely wrong – they are unreasonable. The record before the court demonstrated the prejudice from counsel's indisputably deficient performance. The state courts' conclusion that Mr. Townsell's postconviction motion failed to plead how he was prejudiced was contrary to, and an unreasonable application of clearly established Supreme Court precedent. The dissenting justices stated as much:

> ¶56    As noted above, in a detailed petition, Townsell alleged that his counsel had 'missed' the DNA report that he had been given and therefore did not conduct an appropriate investigation as to such evidence. To the contrary, according to Townsell, counsel believed that the only DNA evidence at issue in the case had been found on pantyhose that were not even involved in the robbery. Accordingly, counsel did not believe that DNA evidence would pose a problem at trial. And then, when counsel learned about what he believed to be new DNA evidence, he did not seek an opportunity to investigate that evidence. Instead, he proceeded to "rush the trial" without conducting a thorough investigation and, in Townsell's view, uninformed as to the evidence that was to be presented by the prosecution. This, in turn, rendered counsel unable to make reasoned strategic decisions as to potentially available mitigating DNA evidence.

¶57    Based on the foregoing, Townsell expressly asserted that he was prejudiced by counsel's deficient conduct. Specifically, … Townsell alleged, 'Had [counsel] done so [i.e., investigate further the DNA evidence], he would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence against Mr. Townsell.' And Townsell further contended, 'With a continuance, counsel could have hired a DNA expert to counter the peoples expect [sic] and could have had more effective cross-examination of the people's expert.'

¶58    The sum and substance of Townsell's pro se allegations were that (1) counsel's performance in missing the DNA report and then not conducting a proper investigation concerning the DNA evidence in the case was deficient conduct under Strickland; and (2) but for counsel's unprofessional conduct, the result of the trial would probably have been different (i.e., Townsell was prejudiced under Strickland's second prong) because had counsel performed properly, he would have discovered substantial evidence that tended to show that Townsell was not the robber (and that someone else was).

¶59    I believe that these are specific (and not conclusory) factual allegations as to both prongs of Strickland, and they were sufficient to establish a basis for referring the matter to the OPD.

*Townsell IV*, ¶¶57-59 (dissenting opinion of Gabriel, J., joined by Márquez, C.J.),

(Attachment 15, pdf p. 27).

The CSC's unreasonable interpretation of *Strickland* prejudice eviscerates a prisoner's ability to litigate his federal constitutional claims in state court. Indigent pro se petitioners with arguably meritorious IAC claims for failure to investigate DNA evidence are faced with an "insurmountable burden" in obtaining postconviction counsel and, in turn, pursuing such claims. *Townsell III*, ¶¶ 40-41

39

(Attachment 11, pdf pp. 20-21 (Schutz, J., dissenting) ("The net effect of [the majority's] reasoning is to deprive a defendant of an evidentiary hearing because of the failure to present the evidence he claims trial counsel failed to procure in the first instance.").

The devastating effect of this tortured interpretation places indigent pro se petitioners, like Townsell, in an untenable Catch-22. To win a hearing and appointment of postconviction counsel on an IAC claim for failure to investigate DNA evidence, petitioners must specify how untested DNA evidence would undermine confidence in the conviction, requiring indigent pro se petitioners to first obtain DNA testing results while incarcerated. These circumstances are untenable. *See, e.g., Jones v. Hendrix*, 599 U.S. 465, 517 (2023) (Jackson, J., dissenting); *see also* Seth F. Kreimer & David Rudovsky, *Double Helix, Double Bind: Factual Innocence and Postconviction DNA Testing*, 151 Univ. Pa. L. Rev. 547, 564 (2002) ("[I]t is not uncommon for convicted individuals to find themselves in a 'Catch-22,' where the only road to a showing of innocence leads through DNA evidence in the possession of the prosecutor, and the prosecutor refuses to allow access to the evidence in the absence of proof of innocence."). This unreasonable "mechanical rule" undermines the Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 696 ("Most important, in adjudicating a claim of

40

actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules."). "The federal judiciary should avoid using Catch-22[ ]" to deny relief. See *Davis v. Humphreys*, 747 F.3d 497, 498 (7th Cir. 2014).

The Colorado courts failed to provide "full and fair" review of Townsell's claim by imposing too high a bar for a showing of prejudice under *Strickland.* In denying Townsell's claim, the CSC ruled that he had to show, in his pro se petition:

> how further investigation would have excluded him from the robbery given the strength of the evidence used to convict him—namely, his cell phone records and cell location, as well as the fact that his DNA was found on the shoes, pantyhose, bandana, and mask, all of which were found in or near the discarded bag.

*Townsell IV*, ¶ 35 (Attachment 15, pdf p. 19), as modified (see Attachment 17, pdf p. 5). For the CSC, it wasn't good enough that Mr. Townsell alleged that "further testing would exclude him" – a fact Mr. Townsell would know because he knew he wasn't the robber – but instead, Mr. Townsell had to state who he believed a DNA test would have inculpated. *Townsell IV*, ¶ 36 (Attachment 15, pdf p. 20),  That is an unreasonable application of *Strickland*.

*Strickland* provides that to establish prejudice, "[t]he defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694 (emphasis

41

added). The Court specifically rejected the notion that a defendant must "show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Thus, in effectively requiring Townsell to show that had counsel conducted an adequate DNA investigation and hired an expert, it would have changed the result in his case, the CSC imposed a standard even more rigorous than that rejected in *Strickland.* See *Williams,* 529 U.S. at 405-06 ("If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a reasonable probability that ... the result of the proceeding would have been different.'"). *See also Davis v. Lambert,* 388 F.3d 1052, 1067 (7th Cir. 2004) (finding the state court unreasonably applied *Strickland* in imposing too-rigorous *Strickland* prejudice pleading requirements).

In addition to imposing a pleading standard that *Strickland* rejected even as an ultimate-decision standard, the Colorado courts unreasonably departed from Supreme Court precedent in other ways.

42

First, the Colorado courts unreasonably failed to consider the prejudicial effect of trial counsel's deficient performance based on the totality of available evidence, as established Supreme Court precedent clearly requires. *E.g. Wiggins,* 539 U.S. at 534. See *Daniel v. Comm'r, Alabama Dep't of Corr.*, 822 F.3d 1248, 1277–78 (11th Cir. 2016).

Second, the Colorado courts unreasonably applied Supreme Court precedent by failing to consider the evidence that Mr. Townsell pleaded should have been investigated and presented. The CCOA essentially ruled that there was no prejudice from counsel's deficient DNA investigation because during trial, the court forbade defense counsel from asserting in closing argument that there was an alternate suspect.  *Townsell III*, ¶ 18 (Attachment 11, pdf p. 8).  *But that's the point*. Counsel failed to endorse an alternate suspect defense or present any evidence about Mr. Simpson's links to the case and his access to Mr. Townsell's belongings that were in the car Townsell shared with Ruffin.  Counsel's deficiencies must be considered in context, through the totality of evidence, and the prejudice from those deficiencies must be evaluated cumulatively.

When evaluating an attorney's decision not to pursue a defense or present evidence, the essential question is not whether counsel should have presented the evidence, but "whether the investigation supporting the decision not to introduce ...

43

evidence *was itself reasonable.*" *Wiggins*, 539 U.S. at 522-23. The fact that defense counsel made a decision to assert alternate suspect but could not do so because he failed to investigate, present, and give notice of his defense shows his failure to investigate was unreasonable. The Supreme Court has made clear that counsel's failure to investigate potential defenses may constitute deficient performance under the first prong of *Strickland.* In *Strickland* itself, the Court stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691; see *Williams,* 529 U.S. at 395. The CSC, CCOA, and district court completely missed this standard, failed to apply it, and by definition unreasonably applied Supreme Court precedent by ignoring the standard for pleading ineffective assistance of counsel for failing to properly investigate a case.

This Court will find ample evidence of prejudice in the record of the case.

The prejudice was manifest from the jurors' questions and the prosecutor's closing argument. Colorado permits a trial judge to allow questions from jurors to the witnesses. The jurors asked many questions in this case trying to understand the relevance of the DNA evidence. (TR 3/17/14, pp 144-148). In closing, the prosecutor emphasized the importance of the DNA evidence: "The clothes and the shoes and the mask and the things he wore inside the bank were collected within

about an hour or less, and those were tested to confirm a DNA profile that matched. He was the profile match for those items." (TR 3/18/14, p 22:6-9). He went on to highlight the DNA evidence:

> You heard about the testimony from - or about the analysis that [the DNA expert] did. She told you about the methods that she uses in the lab to collect DNA profiles from items and how she compared that to the sample that she received from Mr. Townsell. Jamale Townsell was a match to those items tested. She explained that the number of items that were sent for her review and analysis at the lab and that she had collected full DNA profiles from items like the glove, the shoes, the bandana, the mask and the pantyhose. She talked about comparing those to the known sample, and she testified that he was the source of that DNA, and that she was able to get full DNA profiles from those samples.

(*Id.* at p 29:8-20). The prosecutor focused on the DNA evidence to discount the fact that Mr. Townsell did not match the robber's physical description, telling jurors they should discount the physical description evidence and rely on the DNA from the knit cap, which "matched Mr. Townsell's DNA." (*Id.* at pp 29-30). The DNA evidence could have been – but wasn't – challenged at trial.

"DNA [evidence] has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty." *Dist. Att'ys Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 55 (2009). Colorado jurors place "mythic infallibility" on DNA evidence, *People v. Marks*, 2015 COA 173, ¶ 41, 374 P.3d 518. If the petitioner's requested testing was not done in the first place, establishing prejudice

45

is impossible without the aid of counsel. *See Martinez v. Ryan*, 566 U.S. , 12 (2012) ("While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record."). *Cf. Massaro v. United States*, 538 U.S. 500, 506 (2003) (recognizing that expansion of the trial record through appointment of counsel and an evidentiary hearing is vital to establishing IAC claims). When (as here), a case turns on DNA but the trial attorney doesn't retain an expert, and as a result, doesn't understand what is in discovery, and mounts no defense, no reasonable fair minded jurist could disagree that the defendant was prejudiced by his attorney's failures.

In the Colorado Supreme Court, the Korey Wise Innocence Project submitted an Amicus Brief detailing the special concerns that have arisen in DNA cases and why Mr. Townsell's *Strickland* prejudice allegations were more than sufficient in this case to trigger an evidentiary hearing and appointment of counsel:

> Given the unique and powerful nature of DNA evidence to prove innocence at trial or to later exonerate the wrongfully convicted, indigent pro se petitioners should not be required to speculate on the intricacies of DNA evidence and how it might free them from injustice. … To hold otherwise would inhibit access to justice and erode criminal defendants' Sixth Amendment right to effective assistance of counsel.

*Brief of Amicus Curiae Korey Wise Innocence Project in Support of Petitioner Jamale D. Townsell*, filed in *Townsell IV* (Dec. 16, 2024), at 9 (Attachment 18 to

46

this Petition, pdf p. 17). The Korey Wise Innocence Project cited the work of the National Registry of Exonerations, which reported that DNA testing has contributed to at least 608 exonerations. *Id*., at 7 (pdf p. 15), citing *Search Exonerations*, The Nat'l Registry of Exonerations.[17]   Colorado in particular has been rocked by a DNA testing scandal impacting hundreds of cases over decades, including the time period of Mr. Townsell's case.[18] The scandal spawned passage of the 2025 Colorado Forensic Science Integrity Act.  CO LEGIS 352 (2025), 2025 Colo. Legis. Serv. Ch. 352 (H.B. 25-1275), codified at § 16-12-306, C.R.S. (2025). The reason such steps were taken is that everyone realizes DNA evidence is exceptionally persuasive to juries.  When an attorney mishandles the DNA aspects of a case and does not hire an expert to assist in reviewing and understanding the state's evidence – in a case where identity of the perpetrator is *the* central issue – the prejudice is undeniable.

---

[17] https://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx. (filtering for DNA exonerations).

[18] *Former Colorado analyst pleads guilty in DNA testing scandal that forced a review of hundreds of cases,* CNN News Online (Jun 23, 2026), accessed 8/7/2026 at https://www.cnn.com/2026/06/23/us/missy-woods-colorado-dna-analyst-guilty-plea. Ms. Woods, an analyst at the Colorado Bureau of Investigation for 29 years, was originally charged with 102 felonies in 2025.

The CSC's ruling that Mr. Townsell's pro se petition insufficiently alleged *Strickland* prejudice was unreasonable. Under the majority's interpretation of Rule 35(c), indigent incarcerated petitioners must obtain DNA testing in order to establish their trial counsel's failure to do so prejudiced their case. This insurmountable burden is not contemplated by *Strickland* and presents intolerable barriers to relief, as explained by the dissenters in both the CSC and CCOA.

The analysis offered by the Korey Wise Innocence Project in its Amicus Brief in *Townsell IV*, explaining why the CCOA's majority view was unreasonable, is equally illustrative of why the CSC majority's application of Strickland was also unreasonable. "First and foremost, it is universally difficult for indigent incarcerated petitioners to pursue DNA testing without the assistance of counsel." *Brief of Amicus Curiae Korey Wise Innocence Project in Support of Petitioner Jamale D. Townsell*, filed in *Townsell IV* (Dec. 16, 2024), at 18 (Attachment 18, pdf p. 26). To gain access to such testing, a litigant must somehow – from his prison cell – investigate the evidence draft and litigate a testing motion, negotiate and oversee the lab testing, understand the results, and articulate them in a written postconviction motion. "Even the first step in the process presents a nearly impossible feat for indigent petitioners to achieve from the confines of prison." *Ibid*.  And, the Korey Wise Innocence Project explained, for such

prisoners, presenting a sophisticated *Strickland* prejudice argument in the first instance is an unrealistic expectation:

> Here, even assuming these hurdles could be cleared, petitioners would then have to explain how the DNA test results undermine the confidence in their conviction, including how such evidence would overcome other evidence presented at trial. Given the complexities of DNA, indigent pro se petitioners would be hard pressed to meet that burden. Indeed, 'courts have struggled in their effort to determine how [DNA evidence] should be weighed against other forms of evidence presented.'
>
> …
>
> What is more, requiring indigent pro se petitioners to retain a DNA expert while incarcerated—without the requisite financial means or connections—underscores why the majority's interpretation of Rule 35(c) is untenable. These are just a few examples of issues confronting indigent pro se petitioners in specifying how exculpatory DNA evidence would have caused reasonable doubt in the minds of jurors.

*Id.,* at 18, 21 (Attachment 18, pdf p. 26, 29), *quoting* Jason Borenstein, *DNA in the Legal System: The Benefits Are Clear, The Problems Aren't Always*, 3 Cardozo Pub. L., Pol'y & Ethics J. 847, 849, 852-54 (2015).

Mr. Townsell knows he wasn't the bank robber. He knows the robber apparently used items that Mr. Townsell had left in the car that he shared with his former wife. And he knows that if his attorney had hired a DNA expert and had the evidence tested, his attorney "would have discovered substantial evidence of defendant's exclusion." Townsell's pro se postconviction motion, Attachment 8,

49

pdf p. 9.  It is entirely unreasonable to expect indigent pro se petitioners to explain more or, as the CSC required, to say *whose* DNA would have been discovered. In many DNA exoneration cases an unknown perpetrator's DNA is found on multiple tested items.  That alone is exculpatory and can change a result at trial. If a consistent DNA profile were found on the earbud headphones, the phone, and other items next to the robber's skin, and that DNA did not match Mr. Townsell's profile, there would be a substantial probability of a different result at trial, even if the contributor of that unknown DNA could not be identified.

**3.    COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING INVESTIGATE AND RUN AN ALTERNATE SUSPECT DEFENSE.**

Counsel's failure to endorse and fully litigate the defense of alternate suspect was deficient performance that greatly restricted his arguments and theory of defense at trial.At trial, when defense counsel began to argue that Ms. Ruffin's brother was likely the person who aided and abetted her, the court sustained the prosecution's objection because the defense hadn't been able to connect its evidence. See *Townsell III,* Attachment 11, pdf p. 8.  The following exchange occurred in the defense closing argument:

> the prosecution was told to take a look at Ebony Ruffin's brother –
>
> – [prosecutor objects and parties approach the bench]

50

> [prosecutor]: Your Honor, I'm going to object based on the limiting instruction that the Court provided in conjunction with evidence and the fact that the Defense never adequately connected up its foundation as an alternative suspect. So I think it's inappropriate to argue it at this time.
>
> [defense counsel]: Your Honor, Trooper Williams admitted that they knew about this, and I think it's a fair statement on what they investigated and didn't investigate.

TR 3/18/14, pp. 37-38. The court overruled the prosecution's objection, and the defense continued: "So, ladies and gentlemen, the prosecution was given notice of an alternate suspect." *Id*., p. 38. This is not a robust argument.

As the CCOA explained in *Townsell III*, the attorney had failed to present a bona fide alternate suspect defense:

> Townsell overstates the evidence of an alternate suspect at trial. During closing argument, when defense counsel tried to state there was an alternate suspect, the parties had a bench conference. The court acknowledged that there was no testimony to support the alternate suspect theory. Instead, defense counsel was only allowed to argue that the police had "notice" that there might be an alternate suspect given the disparity between the witnesses' descriptions of the robber's height and Townsell's height.

*Townsell III,* ¶ 18 (Attachment 11, pdf p. 8).

There was substantial evidence available that the defense did not present. The getaway car was a Mazda that had been reported stolen by Jane Hall. The Mazda was recovered a short distance from the bank. Before the bank robbery, the car keys to that stolen car (the getaway car) were last seen at the home of Hall's

51

friend Shamyra Davis, who is Mr. Simpson's girlfriend. A fulsome investigation would have drawn a significant nexus between the alternate suspect (Simpson) and the bank robbery. *See also Background Facts, above*.

This issue dovetails with the failure to obtain DNA testing. Mr. Townsell alleged that a DNA test of the material closest to the robber's skin would have exonerated him. Had this been performed, the evidence could well have pointed not to Mr. Townsell, but to Mr. Simpson as the robber.

### 4. FAILURE TO OBJECT TO CONFRONTATION CLAUSE VIOLATIONS AT TRIAL.

At trial, Mr. Townsell's counsel objected on hearsay grounds but did not make a confrontation clause objection. Mr. Townsell raised the confrontation clause issue on direct appeal in the CCOA. Opening Brief of Appellant, filed in *Townsell I*, pp. 26-27 (Attachment 2 to this Petition, pdf pp. 35-36).[19] In *Townsell I*, the CCOA noted the constitutional claim was unpreserved. *Townsell I*, ¶ 44

---

[19] "The United States and Colorado Constitutions guarantee persons accused of crimes the right to confront the witnesses against them. *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Crawford v. Washington,* 541 U.S. 36, 49 (2004); *People v. Fry*, 92 P.3d 970, 974 (Colo. 2004). Under the Confrontation Clause, testimonial hearsay statements must be excluded when (1) the declarant is unavailable to testify, and (2) the defendant had no previous opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 49; *People in Interest of R.A.S.*, 111 P.3d 487, 489 (Colo. App. 2004)." Both *Fry, supra* and *R.A.S., supra*, were decided on federal constitutional grounds and rested on *Crawford, supra*.

(Attachment 3, pdf p. 28). Reviewing under the "plain error" standard, the CCOA rejected the claim.

In his pro se petition for postconviction relief, Mr. Townsell did not raise a claim that his attorney failed to object to admission of evidence in violation of the Sixth Amendment's Confrontation Clause. Nevertheless, this Court should consider the claim because his failure to raise the claim was the result of the absence of state postconviction counsel. See discussion re *Martinez v. Ryan*, *supra*.

The government may assert this claim is procedurally barred, but it is not. True, if a state court has explicitly relied on a procedural bar (here, failure to object on constitutional grounds), a state prisoner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice that is attributable to the default. *See Coleman v. Thompson,* 501 U.S. 722 (1991). But because Mr. Townsell alleges that counsel rendered ineffective assistance by failing to object on constitutional grounds, he can establish "cause" for the default. As argued below, Mr. Townsell can establish prejudice because the error had a substantial and injurious effect or influence in determining the jury's verdict. See *Brecht v. Abrahamson,* 507 U.S. 619 (1993).

53

### (a)  Additional Facts

At a pretrial hearing, the prosecutor stated that K.K. – one of the two bank tellers robbed -- would be unavailable to testify at trial, scheduled to begin in March 2014. On the second day of trial, a police officer testified about his interview with K.K. shortly after the robbery. The officer described K.K. as "very upset," "petrified," and having trouble breathing and speaking. Defense counsel objected, arguing that any more testimony about K.K.'s emotional "state" immediately following the robbery would be cumulative and unduly prejudicial. The prosecutor responded that he was "laying a foundation for an excited utterance." Defense counsel then argued that the officer's testimony concerning K.K.'s statements made during the police interview at issue were not excited utterances because too much time had passed between the robbery and the interview. The court overruled the objection.

The officer continued to testify about K.K.'s state following the robbery. The prosecutor then asked the officer about K.K.'s statements to the officer describing the robbery. Before the officer could answer, defense counsel objected on hearsay grounds. The trial court overruled the objection, determining that the subject statements were "not too distant in time" and that a sufficient foundation had been laid to show that the statements were excited utterances.

The officer then testified that K.K. told him the following:

- The robber was a masked male wearing a long-sleeved shirt, jeans, and a dark hooded sweatshirt.

- The robber had a gun, which he pointed at K.K.'s face, scaring her.

- The robber jumped over the teller counter and said, "Give me the money, bitch."

- At some point, the robber pointed the gun at M.O.

- The gun was a small, silver semiautomatic pistol.

- The robber's mask looked homemade with eye holes and "maybe a mouth hole" cut out.

- The robber then opened K.K.'s teller drawer, removed money, checked the other teller drawers, and left the bank.

The prosecutor then asked, "Would it refresh your recollection to view your report whether [K.K.] described eye holes and a mouth hole or only eye holes?" Without objection from defense counsel, the officer reviewed his report and the following exchange occurred:

> Q[.:] [D]oes that refresh your recollection as to what she described as a homemade looking mask?
>
> A[.:] Yes.

55

> Q[.:] What did she say about that?
>
> A[.:] Just that it had holes cut into it.

The officer next testified that he had asked K.K. to prepare a written statement.
After the officer reviewed K.K.'s statement — without objection from defense
counsel — the following exchange occurred:

> Q[,:] [D]oes that refresh your recollection as to the description [K.K.]
> provided of the homemade-looking mask?
>
> A[.:] It does.
>
> Q[.:] And what did she indicate about the holes?
>
> A[.:] Just eye holes were  cut out.

The officer then stated that K.K. said that the robber wore gloves and she was
unable to indicate the robber's skin color.

### (b) Counsel's failure to object on confrontation clause grounds was deficient performance.

*Crawford* held that, at a minimum, statements are testimonial if the declarant
made them during a police interrogation. *Crawford v. Washington*, 541 U.S. 36, 52
(2004). These statements were testimonial. The interview's purpose was to elicit
statements that established  past events, to be potentially relevant to a later criminal
prosecution. K.K. was not describing events as they were happening – she was
describing the robber, his clothing, the gun, and what happened. The statements

were not a call for help made during an emergency. There was no longer an ongoing emergency inside the bank. K.K. gave specifics about the mask, the eyeholes, the color of the gun, and the robber's statements. She also formalized her observations into a written statement. Statements like these are "an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." *Davis v. Washington*, 547 U.S. 813, 831 (2006).

Defense counsel should have known that, when the officer was relaying K.K.'s out-of-court statements, he was providing testimonial hearsay. Cross-examination plays a central role in our universe of criminal justice. *Crawford v. Washington*, *supra*; *Davis v. Alaska*, 415 U.S. 308 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id*., at 316. The confrontation clause ensures the defendant the opportunity to engage in effective cross-examination of witnesses against him. *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987).

Counsel's failure to recognize the testimonial hearsay and object was profoundly deficient. It was the most basic type of testimonial hearsay: an eyewitness's account of what happened at the crime scene and recited for the

57

responding officer. *See Crawford*, 541 U.S. at 53 (primary objective of the Confrontation Clause is testimonial hearsay, and statements to "officers fall squarely within that class").

### (c) Counsel's failure to object on confrontation clause grounds resulted in *Strickland* prejudice.

The prejudice from the failure to object is manifest. If defense counsel had objected on confrontation grounds, the court would have excluded her out of court statements. K.K. was the closest witness and her statements about the robber's build and appearance were vital to the robber's identity. K.K. was the only witness to describe the "homemade looking mask" and the "eyeholes cut out." (TR 3/12/14, p 165:9-13). This fact was important to the jury because the jury previously asked M.O. questions about whether the mask was homemade and M.O. was unable to answer the questions. (*Id.* at p 112:6-15).

Additionally, K.K. was the only witness to state that the robber pointed the gun at M.O. (TR 3/12/14, p. 163:14). M.O. testified that the gun was not aimed at him and M.O. is not visible on the surveillance video until after the robber leaves. (*Id.* at p. 95:3-8; Ex. 1). Had K.K.'s statements been excluded from trial, the counts related to M.O. (Counts 2 and 5) would not have been proven.

If the district court had erroneously denied the motion to exclude K.K.'s out of court statements on confrontation clause grounds, Mr. Townsell would have

faced a much better chance of success on appeal.  Instead of being doomed to the "plain error" standard of review, the CCOA would have assessed the claim under the much more favorable constitutional harmless error standard under which the State would have to show that the error was harmless beyond a reasonable doubt. *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Reversal is required if "there is a reasonable possibility that the [error] might have contributed to the conviction." *Ibid.* There is a reasonable possibility that on appeal, with a better standard of review, Mr. Townsell would have prevailed. E.g., *People v. Cohen*, 2019 COA 38, 440 P.3d 1256 (Colo. App. 2019). For the same reasons articulated above, the error would not have been deemed harmless beyond a reasonable doubt.

The evidence against Mr. Townsell was not overwhelming.  The description of the robber was wildly different from his appearance, he was pumping gas elsewhere at the time, and all indicators pointed to his former wife and her brother as the perpetrators.

**5.    THE CUMULATIVE PREJUDICIAL IMPACT OF MULTIPLE INSTANCES OF DEFICIENT PERFORMANCE WARRANT HABEAS RELIEF.**

Under *Strickland*, prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 688, 694 (1984). In *Strickland,* the Supreme Court repeatedly described the prejudice inquiry in aggregate terms of assessing the reasonable probability that counsel's *errors* affected the outcome. *Id*., at 694-96. See also *Fisher v. Gibson,* 282 F.3d 1283, 1307-11 (10th Cir.2002) (assessing prejudice from counsel's "numerous shortcomings [and] omissions," and holding "these errors" had a "devastating impact on the defense"). See also *Cargle v. Mullin*, 317 F.3d 1196, 1212 (10th Cir. 2003) (("[A] decision to grant relief on ineffective assistance grounds is a function of the prejudice flowing from *all* of counsel's deficient performance...." (emphasis added)).

Counsel's errors compounded to render the trial unfair by any standards.

## IX.   *DE NOVO* REVIEW, DISCOVERY, AND EVIDENTIARY HEARING

This court should conclude that the Colorado Supreme Court's adjudication of the merits of Mr. Townsell's ineffective assistance of counsel claims was unreasonable and contrary to clearly-established Supreme Court precedent (including *Strickland v. Washington, supra, Kimmelman v. Morrison, supra, Hinton v. Alabama, supra*, and other cases cited above), review his claims *de novo,* and grant an evidentiary hearing on his claims.

A petitioner must satisfy the strict requirements of AEDPA to attain an evidentiary hearing if he "has failed to develop the factual basis of [his] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). However, if he has been diligent in attempting to litigate the facts in state court, this bar does not apply and his request for an evidentiary hearing is evaluated under the "less-rigorous  pre-AEDPA standards." *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013).

Mr. Townsell requested, but was never granted, an evidentiary hearing in state and federal court. As a result, Mr. Townsell "has never been afforded an opportunity to develop [his claimed] factual basis in the crucible of an evidentiary hearing—nor, just as importantly, has the State had the opportunity to challenge them in an adversarial hearing." *Pope,* 680 F.3d at 1294. The Supreme Court has held that "a failure to develop the factual basis of a claim is not established unless

61

there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams,* 529 U.S. at 432. "Diligence … depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend ... upon whether those efforts could have been successful." *Id.* at 435.

Mr. Townsell did all that he could. He is not responsible for failing "to develop the factual basis of his claim in State court" under § 2254(e)(2). He made appropriate efforts to locate and present his evidence to the state courts, and continues to do so. See *Williams,* 529 U.S. at 435. It would not be reasonable to characterize Townsell's efforts as less than diligent. Mr. Townsell did not "fail" to develop the factual basis of his claims in state court through any omission, fault, or negligence that can fairly be attributed to him. *See Williams,* 529 U.S. at 432.  To the contrary, he sought, but was denied, the opportunity to present evidence.

Because Mr. Townsell was diligent in attempting to develop the factual bases for his claims, he "is entitled to an evidentiary hearing ... so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." *Littlejohn v. Trammell*, 704 F.3d at 857–58.  He is entitled to an evidentiary hearing on his ineffective assistance of counsel claims because he has alleged sufficient facts that, if true, would entitle him to habeas corpus relief.

62

*See Schriro v. Landrigan,* 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

An evidentiary hearing should be provided because Mr. Townsell alleges facts which, if proved, would entitle him to relief and the Colorado state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing.

## IX.   LEGAL REPRESENTATION

Trial counsel:

Counsel for Mr. Townsell's direct appeal (*Townsell I*), on appeal in the CCOA from the denial of his postconviction motion (*Townsell II*), and in the CSC (*Townsell III*):

> Krista Schelhaas
> Schelhaas Law LLC
> PO Box 621355
> Littleton, CO 80162

Additional counsel of record for Mr. Townsell in the CSC (*Townsell III*):

> Hollis A. Whitson
> Samler and Whitson, PC
> 1600 Stout Street, Suite 1400
> Denver, CO 80202
> 303-670-0575

63

All counsel in all proceedings were appointed counsel contracted by the Colorado Office of Alternate Defense Counsel.  Mr. Townsell remains incarcerated and indigent and undersigned counsel is filing this petition in a *pro bono* capacity.

## X.    PRAYER FOR RELIEF

WHEREFORE, Petitioner Jamale Townsell respectfully petitions this Court to grant a writ of habeas corpus, enter an order vacating his conviction in <u>People v. Jamale Townsell</u>, Arapahoe County, Colorado, District Court No. 2013 CR 2039, and commanding his immediate release from unconstitutional confinement.

Dated:        Denver, Colorado
              August 7, 2026

Respectfully submitted,

*/s/Hollis A. Whitson*
Hollis A. Whitson
Samler and Whitson, PC
1600 Stout Street, Suite 1400
Denver, CO 80202
303-670-0575

*Attorney for Petitioner Jamale Townsell*

# CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, I mailed a copy of the foregoing PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 via first-class mail, postage prepaid, to the following:

Moses Stancil, Executive Director
Colorado Department of Corrections
2862 S. Circle Dr.
Colorado Springs, CO 80906

Gilbert Calley, Warden,
Limon Correctional Facility
49030 State Hwy 71 South
Limon, CO 80826

Phil Weiser, Attorney General, State of Colorado
c/o Office of the Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203

*/s/ Hollis A. Whitson*
Hollis A. Whitson
Samler and Whitson, PC