| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br><br>Court Address:<br>7325 South Potomac Street<br>Centennial, CO 80112 | DATE FILED: November 02, 2020 1:06 PM |
| Plaintiff:<br>THE PEOPLE OF THE STATE OF COLORADO,<br><br>v.<br><br>Defendant:<br>JAMALE D. TOWNSELL, | ▲ COURT USE ONLY ▲ |
| Attorney for Defendant-Appellant<br>Krista A. Schelhaas (Alternate Defense Counsel)<br>Schelhaas Law LLC<br>PO Box 621355<br>Littleton, CO 80162<br>(303) 803-4750<br>kschelhaas@comcast.net<br>Attorney Reg. No. 36616 | Case No.: 2013CR2039<br><br>Div: 204 |
| CRIM. P. 35(b) MOTION FOR REDUCTION OF SENTENCE | |

Jamale Townsell, by and through court-appointed counsel, respectfully requests that this Court reconsider his sentence pursuant to Crim. P. 35(b). The reasons for this motion include: (1) trial evidence established that Mr. Townsell does not match the physical description of the man who robbed the bank in this case; (2) Mr. Townsell received consecutive sentencing for two aggravated robbery charges but a change in the law now permits concurrent sentencing for aggravated robberies; (3) Mr. Townsell did not present mitigation at the initial sentencing; and (4) Mr. Townsell expresses great remorse for prior acts and recognizes that, even though he was not the man in the bank that day, he has made very poor choices in his past.

### A. BACKGROUND AND JURISDICTION

1.    Jamale Townsell stands 6'2" tall and is six inches taller than the man who robbed the Bank of the West on June 15, 2013.  (TR 3/17/14, p 42:12-16).  Every witness testified that the robber was between 5'7" and 5'9".  (TR 3/12/14, p 56:11-13; p 86:1-2; p 102:18-19; p 175:12-15; p 176:17-20; p 177: 12-16).  Video surveillance corroborates that witness testimony.  Both the senior corporate security officer and the detective who viewed the videotaped surveillance and used stationary items in the bank to determine height and distances, concluded that the robber was 5'7" or 5'8" tall.  (TR 3/12/14, p 86:1-2; p 176:11-20).[1]

2.    The vast height discrepancy is not the only descriptive evidence that points away from Mr. Townsell.  The record establishes that Mr. Townsell is right handed.  (TR 3/17/14, p 65:11-14).  But the robber displayed such left hand dominance that he ran into the bank with the gun in his left hand, switched hands so that he could utilize his left hand for opening the teller drawer, removing the money, and placing the money into his bag, and then returned the gun to his left hand as he exited the bank.  (TR 3/12/14, p 84:11-13; p 110:15-20; TR 3/17/14, p 65:11-14).

3.    Evidence of an alternate suspect was introduced at trial.  The alternate suspect was Mr. Townsell's estranged wife's brother – a man who, at 5'8", matched the robber's physical description and lived close to the home of the getaway car owner.  (TR 3/17/14, p 42:7-11; p 216:19 – p 217:16).  Significantly, the stolen money was recovered from the

---

[1] Judge Kurt Horton presided over Mr. Townsell's 2014 trial.  Therefore, complete transcripts of two trial dates are attached to this motion to help provide necessary background information.  (*See* Index of Attachments following this motion).

estranged wife shortly after the robbery with the aid of a GPS tracker, in a neighborhood near her sister's home. (*Id.* at p 223:11 – p 224:16).

4. The prosecution relied heavily on DNA evidence to convict Mr. Townsell. The DNA was found on items near the recovered money, including shoes, pantyhose, a bandana, and a mask (the mask contained a mixture of DNA). (TR 3/17/14, p 116:2-4; p 117:3-4; p 117:25 – p 118:2). However, there was an innocuous explanation for the presence of Mr. Townsell's DNA because the items were found in the trunk of the car that Mr. Townsell shared with his estranged wife. Although the couple's relationship was ending, they shared a child and continued communication. The child was in the car when the wife was arrested. (TR 3/12/14, p 238:9-16).

5. Additionally, in the bag with the money, the police found a "t-shirt that had a wire cell phone ear piece duct taped to the inside of a t-shirt." (TR 3/12/14, p 246:8-11). The prosecution did not check for DNA or fingerprints on the t-shirt, phone, or tape — items that would have been closest to the robber's skin. (TR 3/17/14, p 64:22 – p 65:1; p 131:10-15). Nor did the DNA expert test any other recovered item. (*Id.* at p 129: 9-18).

6. The People also focused on phone calls from Mr. Townsell to his estranged wife just before and after the robbery. (TR 3/14/14, p 80:7 – p 81:13). The People used an expert to argue that Mr. Townsell's phone was within a few miles of the bank.

7. Two employees were inside the bank lobby that morning: Kelly Kennedy and Matthew Owen. Ms. Kennedy, the bank teller, was unquestionably terrified. The bank robber, wielding a gun, jumped the counter at her station and stole money from her drawer. She was found medically unavailable for trial and did not testify, but her statements to police detailed her fear. (TR 3/12/14, pp 162-166). The second employee, Mr. Owen, was

several feet away at his desk.  It does not appear that the bank robber noticed him.  Mr. Owen stated that he was not concerned about the gun and was not afraid.  (TR 3/12/14, p 95:14-18).  After the robber left, Mr. Owen calmly walked away from his desk, locked the bank doors, and called 911.  (*Id.* at p 97:7-11).  Mr. Owen was so calm that the 911 call did not qualify as an excited utterance even though the call occurred only seconds after the incident.  (*Id.* at p 144:17-21).

8.   Following a jury trial, Mr. Townsell was convicted of two counts of aggravated robbery, two counts of felony menacing, and theft.  He was sentenced to twenty-two years for the aggravated robbery count involving Ms. Kennedy and ten consecutive years for the aggravated robbery count involving Mr. Owen.  (TR. 5/12/14, p 51:1-11).  He also received concurrent sentences of six years for felony menacing involving Ms. Kennedy, two years for felony menacing involving Mr. Owen, and eighteen months for theft.  (*Id.* at p 51:12 – p 52:7).

9.   This Court has jurisdiction to consider this motion for reconsideration.  Pursuant to Crim. P. 35(b)(2), a district court has jurisdiction to reduce a sentence if a motion is filed within 126 days after the mandate.  Mr. Townsell's direct appeal concluded when the mandate issued on June 29, 2020.  Mr. Townsell's 126-day-deadline is today, November 2, 2020.

**B.  REDUCTION OF SENTENCE UNDER THE CRIME OF VIOLENCE STATUTE**

10.  Because Mr. Townsell was convicted of a crime of violence, Rule 35(b) also provides the vehicle for reduction of his sentence below the statutory minimum.  *People v. Williams*, 908 P.2d 1157, 1163 (Colo. App. 1995) ("Absent timely action by the sentencing court on its own motion after receipt of the report referred to in the statute, a defendant

convicted of a crime of violence may file a Crim. P. 35(b) request, and the court will have jurisdiction to rule upon the request within the limitations of that rule.").

11.    Pursuant to the crime of violence statute:

> Any person convicted of a crime of violence shall be sentenced pursuant to the provisions of section 18-1.3-401(8) to the department of corrections for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range provided for such offense in section 18-1.3-401(1)(a), as modified for an extraordinary risk crime pursuant to section 18-1.3-401(10), without suspension; *except that, within ninety-one days after he or she has been placed in the custody of the department of corrections, the department shall transmit to the sentencing court a report on the evaluation and diagnosis of the violent offender, and the court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence*, effective not earlier than one hundred nineteen days after his or her placement in the custody of the department.  Such modification may include probation if the person is otherwise eligible therefor.

§ 18-1.3-406(1)(a), C.R.S. (emphasis added).

12.    Under this statute, the trial court may either reduce the sentence on its own initiative following the receipt of information from the Department of Corrections or it may do so based on a defendant's motion pursuant to Rule 35(b).  *Williams*, 908 P.2d at 1162.  Mr. Townsell requests that this Court reconsider his sentence.

## C.  THIS COURT CAN CONSIDER LEGISLATIVE AMENDMENTS TO THE CRIME OF VIOLENCE SENTENCING STATUTE

13.    At the time of the original sentencing, the crime of violence statute required the sentencing court to impose consecutive sentences for "two or more separate crimes of violence arising out of the same incident." § 18-1.3-406(1)(a), C.R.S. (2013).  Our legislature amended the crime of violence statute, applicable to offenses committed on or after July 1, 2016, to allow sentencing courts the discretion to impose concurrent sentences in cases involving aggravated robbery.  Ch. 85, sec. 1, § 18-1.3-406, 2016

Colo. Sess. Laws 241.  Now, a sentencing "court may require a defendant to serve his or her sentences concurrently rather than consecutively if the defendant is convicted of two or more separate crimes of violence arising out of the same incident and one of such crimes is: (I) Aggravated robbery . . . ." § 18-1.3-406(1)(c), C.R.S. (2019).

14.    Had Mr. Townsell been subject to the current version of section 18-1.3-406, Judge Horton could have ordered his aggravated robbery convictions to run concurrently. Doing so would have reduced his aggregate sentence to 22 years.  And there is evidence in the record that Judge Horton would have considered a concurrent sentence at that time if the option was available.  First, Mr. Owen, the second bank employee, was not near the robber, did not have the gun pointed towards him, and consequently, was not afraid during the incident.  Although Judge Horton concluded that evidence was sufficient to submit to the jury, he referenced the distance of Mr. Owen from the robber and the fact that the gun was not pointed at Mr. Owen as challenges to the People's case.  (TR 3/17/14, pp 160-62).  Second, Judge Horton ordered the statutory minimum sentence for the charge involving Mr. Owen.

15.    Although this amendment does not apply retroactively, it is appropriate for a trial court to consider favorable changes in the applicable sentencing laws when determining whether a sentence modification under Crim. P. 35(b) is warranted.  *See People v. Bridges*, 662 P.2d 161, 165 (Colo. 1983) ("To require that a court be oblivious to the great reductions in authorized sentences under the presumptive sentencing law would not be consistent with the salutary goal of Crim.P. 35(b) to 'contribute to the imposition of more consistently uniform sentences for those convicted of like crimes.'" (quoting *People v. Smith*, 189 Colo. 50, 52, 536 P.2d 820, 822 (1975)).  Mr. Townsell respectfully requests

that this Court consider the statutory amendment in reconsidering his sentence.

### D.  THIS COURT CAN CONSIDER MR. TOWNSELL'S TRAUMATIC PAST

16.  A district court's discretionary review of a sentence "focuses on the fairness of the sentence in light of the purposes of the sentencing laws." *People v. Dunlap*, 36 P.3d 778, 780 (Colo. 2001).  "Sentencing by its nature is a discretionary decision that requires the trial court to weigh various factors and to strike a fair accommodation between a defendant's need for rehabilitation or corrective treatment, and society's interest in safety and deterrence." *People v. Reed*, 43 P.3d 644, 647 (Colo. App. 2001).  "Rehabilitation is an important consideration during sentencing." *People v. Dobler*, 2015 COA 25, ¶ 26, 369 P.3d 686, 691 (citing § 18-1-102.5, C.R.S.).

17.  In ruling on a motion for sentence reconsideration, the trial court must "consider all relevant and material factors which may affect the decision on whether to reduce the original sentence." *Mikkleson v. People*, 618 P.2d 1101, 1102 (Colo. 1980).  This includes new evidence as well as facts known at the time the original sentence was pronounced. *Bridges*, 662 P.2d at 166.

18.  Mr. Townsell suffered an incredibly traumatic childhood.  The letters from his family help piece together some of his background.  Mr. Townsell's aunt, Janette Townsell, explains that "Jamale never had a real chance."  Mr. Townsell was removed from his mother's home when he was twelve.  Aunt Janette explains that "Things got so bad that all of the kids got taken out of the home and went to foster care.  When his mother got all of the kids back, Jamale started acting out and getting in trouble and very upset and mad at his mother for being taken out of the home and away from family and now he started going to jail and soon after prison."  [Attachment D].

19.     Mr. Townsell's mother, Pamela, describes her battle with substance abuse, the removal of her children from her home, and the effect on Jamale:

> I started to meet other young women from the neighborhood and that is when I was introduced to crack cocaine. I became pregnant with twins while doing drugs, that is when my dear son Jamale slipped through the loopholes. I went into labor two months early, which is when i had one of my twins on the living room floor who then passed away 5 hours later at children's hospital. They found drugs in my system and removed all my children from my care. Jamale and two of his siblings were then placed with their father, and all the younger children including the surviving twin were placed in foster care. After about a year I began to walk the walk and started getting all my children back one by one. I'm not quite sure what all Jamale went through while staying with his father throughout that year all I know is he became a more troubled child than he was before he had left my home.

[Attachment D].

20.     Mr. Townsell began a downward spiral and as a young teen, was in an environment that normalized guns and violence.  In his letter to this Court, he describes a time when he witnessed his father shoot his uncle.  [Attachment F].

21.     The effects of violence on children and adolescents have been widely studied.  Exposure to violence in adolescence negatively affects an adolescent's development.  Researchers have found that when young people are exposed to violence there is an increase in their aggression and use of violence.  *See* Carrie A. Moylan, et al, *The Effects of Child Abuse and Exposure to Domestic Violence on Adolescent Internalizing and Externalizing Behavior Problems*, J. Fam Violence (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2872483/

22.     In considering Mr. Townsell's past, it is important to understand the chronology of his past offenses and the age at which they began.  His first "adult" felony initiated as a juvenile charge because Mr. Townsell was only 16-years-old.  After three successful

years at YOS, he violated parole and his sentence was revoked.  TR 5/12/14, p 43:1-11.

23. Mr. Townsell is focused on growth and moving beyond his past.  Mr. Townsell's brother, Kevin Terrall, speaks about Mr. Townsell's positive work in prison.  Mr. Terrall was adopted as an infant and first met Mr. Townsell at the age of 20.  Mr. Terrall explains that Mr. Townsell immediately embraced him and, since Mr. Townsell's incarceration, has made positive strides.  For example, Mr. Terrall describes a vision board that Mr. Townsell created where he took accountability for his past actions and vowed to continue personal growth.  [Attachment D].

24. While in DOC, Mr. Townsell has utilized classes to continue his personal growth.  He completed an Anger Management class and *Why Try I* in 2018, and *Why Try II* in 2019. The pandemic has limited his programming options this year but he is currently enrolled in *I Live*.  [Attachment E].  Mr. Townsell also writes poetry and uses art to chronical his pain and remorse.

25. Mr. Townsell has also stayed productive through his employment as a recreation equipment worker, pod porter, and a member of the captain's plumbing crew.  He is a certified plumber, machinist, and forklift driver and plans to use those skills upon his eventual release.

26. Mr. Townsell also has a seven-year-old daughter, Jhanelle, and he hopes one day to play an active role in her life and to support her financially. *See* § 18-1.3-203(2)(k), C.R.S. (courts can consider hardship to dependents when making sentencing decisions).  In their letters to this Court, Mr. Townsell's family has expressed continued love and support for him and also continued nurturing of his relationship with his daughter.  [Attachment D].

27. Finally, and significantly, Mr. Townsell expresses great remorse for those he has harmed

in the past.  He has consistently maintained his innocence in this case and the record

evidence supports that assertion.  However, Mr. Townsell recognizes that his past actions

have created harm and he took Judge Horton's sentencing concern about prior possession

of weapons to heart.  He states, "my whole view and perception on guns and violence has

changed dramatically.  In a way that it makes me sick to my stomach knowing the past

trauma I've inflicted on my victims.  I'm no longer that person and am truly sorry."

[Attachment F].

28.     This case illustrates the exceptional, unusual, and extenuating circumstances that section

18-1.3-406(1)(a) was  meant to address.  Mr. Townsell respectfully asks this Court to

consider this information and reduce his prison sentence.

Respectfully submitted this 2nd day of November 2020.


                                               s/ Krista A. Schelhaas
                                                Krista A. Schelhaas, #36616




**CERTIFICATE OF SERVICE**

I certify that on the 2nd day of November 2020, a copy of the foregoing CRIM. P. 35(b)

MOTION FOR REDUCTION OF SENTENCE was filed through the Colorado Courts E-Filing

System, with a copy checked to be sent to the Arapahoe County District Attorney.


                                               s/ Krista A. Schelhaas
                                               Krista A. Schelhaas

Index of Attachments:

Attachment A – March 12, 2014, Transcript

Attachment B – March 17, 2014, Transcript

Attachment C – May 12, 2014, Sentencing Transcript

Attachment D – Family Letters: Janette Townsell, Pamela Townsell, Kevin Terrall

Attachment E – Certificates and Programming

Attachment F – Mr. Townsell's Letter to this Court