| | |
|---|---|
| Court of Appeals, State of Colorado<br>2 East 14th Ave., Denver, CO 80203<br><br>Postconviction Appeal; Arapahoe County District Court; Honorable Shay K. Whitaker; Case Number 13CR2039 | DATE FILED<br>June 22, 2022 8:04 PM<br>FILING ID: AC81A20DF5071<br>CASE NUMBER: 2021CA2068 |
| THE PEOPLE OF THE STATE OF COLORADO,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>JAMALE D. TOWNSELL,<br><br>Defendant-Appellant. | |
| Attorney for Defendant-Appellant<br>Krista A. Schelhaas (Alternate Defense Counsel)<br>Schelhaas Law LLC<br>PO Box 621355<br>Littleton, CO 80162<br>(303) 803-4750<br>kschelhaas@comcast.net<br>Attorney Reg. No. 36616 | Case No. 21CA2068 |
| OPENING BRIEF | |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of C.A.R. 28 and C.A.R. 32, including all formatting requirements set forth in these rules. Specifically, the undersigned certifies that:

1.  The brief complies with the applicable word limits set forth in C.A.R. 28(g).  It contains 2,929 words.

2.  The brief complies with the standard of review requirements set forth in C.A.R. 28(a)(7)(A).  For each issue raised by the appellant, the brief contains under a separate heading before the discussion of the issue, a concise statement:  (1) of the applicable standard of appellate review with citation to authority; and (2) whether the issue was preserved, and, if preserved, the precise location in the record where the issue was raised and where the court ruled, not to an entire document.

I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of C.A.R. 28 and C.A.R. 32.

s/ Krista A. Schelhaas
Krista A. Schelhaas

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................v

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE AND FACTS .......................................................1

SUMMARY OF THE ARGUMENTS ..................................................................3

ARGUMENTS.......................................................................................................4

**Mr. Townsell is Entitled to a Hearing Because He Asserted Meritorious Claims that Ineffective Assistance of Counsel Undermined Confidence in the Outcome of the Trial**...............................................................................4

    A.     Standard of Review ...................................................................4

    B.     Preservation .............................................................................4

    C.     Crim. P. 35(c) Standards .........................................................4

    D.     Standards Governing Ineffective Assistance of Counsel.....................5

    E.     Additional Facts Concerning DNA Evidence .......................................6

          1.     Mr. Townsell sufficiently alleged that trial counsel was ineffective for failing to properly investigate the DNA evidence ...............................................................................8

          2.     Mr. Townsell sufficiently alleged that trial counsel was ineffective for failing to consult with a DNA expert..................9

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Cuyler v. Sullivan*, 446 U.S. 335 (1980)......................................................................5

*Davis v. People*, 871 P.2d 769 (Colo. 1994)...............................................................9

*Jones v. Williams*, 2019 CO 61, 443 P.3d 56...............................................................9

*Kazadi v. People*, 2012 CO 73, 291 P.3d 16 ...........................................................11

*People v. Chalchi-Sevilla*, 2019 COA 75, 454 P.3d 359 .....................................5, 11

*People v. Danley*, 758 P.2d 686 (Colo. App. 1988) ....................................................9

*People v. Lopez*, 2015 COA 45, 399 P.3d 129 ............................................................5

*People v. Marks*, 2015 COA 173, 374 P.3d 518...........................................................8

*People v. McGlaughlin*, 2018 COA 114, 428 P.3d 691 .......................................4, 11

*People v. Melnick*, 2019 COA 28, 440 P.3d 1228......................................................5

*People v. Phipps*, 2016 COA 190M, 411 P.3d 1157 ................................................12

*People v. Thomas*, 867 P.2d 880 (Colo. 1994) ...........................................................5

*People v. Townsell*, 14CA1225, Apr. 5, 2018 (not published pursuant to C.A.R. 35(e))..................................................................................................................3, 8

*Silva v. People*, 156 P.3d 1164 (Colo. 2007)..............................................................4

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................................... 5-6

*White v. Denver Dist. Court*, 766 P.2d 632 (Colo. 1988)...................................... 4-5

# TABLE OF AUTHORITIES

**Constitutional Provisions**

Colo. Const. art. II, § 16.................................................................................5

U.S. Const. amend. VI ...................................................................................5

U.S. Const. amend. XIV ................................................................................5

**Statutes and Rules**

Crim. P. 35(c)...........................................................................................5, 13

## STATEMENT OF THE ISSUES

Whether the district court erred in denying Mr. Townsell counsel and a hearing when he sufficiently alleged ineffective assistance of counsel for errors that were documented in the record.

## STATEMENT OF THE CASE AND FACTS

On June 15, 2013, an armed and masked man sprinted into the Bank of the West in Aurora and demanded money from the bank teller. The man hurdled the counter, opened the teller drawer, and took $1,104. (EX 1; TR 3/12/14, pp 92:23–93:3; p 93:15-18; p 139:21-24). He ran back out the front door, got into a car, and drove away. (TR 3/12/14, p 96:18-21). The robbery took twenty-eight seconds. (EX 1). The stolen getaway car was discarded in a parking lot several blocks from the bank. (TR 3/13/14, p 11:5-9; pp 22:20–23:5).

Jamale Townsell stands 6'2" tall and is six inches taller than the man who robbed the Bank of the West. (TR 3/17/14, p 42:12-16). Every witness testified that the robber was between 5'7" and 5'9". (TR 3/12/14, p 56:11-13; p 86:1-2; p 102:18-19; p 175:12-15; p 176:17-20; p 177: 12-16). Video surveillance corroborates that witness testimony. (EX 1). Both the senior corporate security officer and the detective who viewed the videotaped surveillance concluded that the robber was 5'7" or 5'8" tall. (TR 3/12/14, p 86:1-2; p 176:11-20).

1

The vast height discrepancy is not the only dubious evidence.  The record establishes that Mr. Townsell is right-handed.  (TR 3/17/14, p 65:11-14).  But the robber displayed such left-hand dominance that he ran into the bank with the gun in his left hand, switched hands so that he could utilize his left hand for opening the teller drawer, removing the money, and placing the money into his bag, and then returned the gun to his left hand as he exited the bank.  (EX 1; TR 3/12/14, p 84:11-13; p 110:15-20; TR 3/17/14, p 65:11-14).

Evidence of an alternate suspect was introduced at trial.  The alternate suspect was Mr. Townsell's former wife's brother – a man who, at 5'8", matched the robber's physical description and lived close to the home of the getaway car owner.  (TR 3/17/14, p 42:7-11; p 216:19 – p 217:16; EX D).  Significantly, the stolen money was recovered from the former wife shortly after the robbery with the aid of a GPS tracker, in a neighborhood near her sister's home.  (TR 3/17/14, pp 223:11–224:16).

Because this considerable evidence demonstrated that Mr. Townsell was not the robber, the prosecution relied primarily on DNA evidence to convict him.  The DNA was found on items near the recovered money.  The DNA's location had an innocuous explanation because it was found in the trunk of the car that Mr. Townsell shared with his former wife.  Although the couple's relationship was

2

ending, they shared a child and continued communication.  The child was in the car when the former wife was arrested.  (TR 3/12/14, p 238:9-16).

Mr. Townsell was convicted of aggravated robbery of the bank teller, aggravated robbery of another bank employee, two counts of menacing, and theft. His aggravated robbery sentences were imposed consecutively, resulting in a 32-year prison sentence.  His conviction was affirmed on direct appeal.  *See People v. Townsell*, 14CA1225, Apr. 5, 2018 (not published pursuant to C.A.R. 35(f)).

Mr. Townsell filed a timely pro se petition for postconviction relief pursuant to Crim. P. 35(c).  (CF, p 1253).  The district court denied the motion without appointing postconviction counsel.  (CF, p 1274).  This appeal follows.

## SUMMARY OF THE ARGUMENTS

To obtain a hearing on a postconviction motion, the petitioner need only assert facts that, if true, would entitle him or her to relief.  Mr. Townsell has done that.  He alleged that his trial counsel was unprepared for trial and failed to properly investigate based on his misreading of discovery documents.  The discovery documents showed that the People would present significant DNA evidence against Mr. Townsell.  Trial counsel was not prepared for that fact and did not further investigate or consult a DNA expert to counter the evidence. Because the other evidence against Mr. Townsell was slim, trial counsel's failure

3

to investigate prejudiced Mr. Townsell.

## ARGUMENTS

**Mr. Townsell is Entitled to a Hearing Because He Asserted Meritorious Claims that Ineffective Assistance of Counsel Undermined Confidence in the Outcome of the Trial**

### A.  Standard of Review

A trial court's decision to deny a Crim. P. 35(c) motion without a hearing is reviewed de novo.  *People v. McGlaughlin*, 2018 COA 114, ¶ 25, 428 P.3d 691, 697.

### B.  Preservation

This issue is preserved in Mr. Townsell's pro se Crim. P. 35(c) motion.  (CF, pp 1253, 1260-61).

### C.  Crim. P. 35(c) Standards

A district court must grant a hearing on a Crim. P. 35(c) motion if the motion contains specific facts that present a cognizable claim.  *White v. Denver Dist. Court*, 766 P.2d 632, 634 (Colo. 1988); *see Silva v. People*, 156 P.3d 1164, 1169 (Colo. 2007) (postconviction court is "required to hold further proceedings if the defendant's Crim. P. 35(c) motion has merit").  A postconviction motion need not provide evidentiary support for the allegations, but need only assert facts that if

4

true would provide a basis for relief. *White*, 766 P.3d at 635; *People v. Melnick*, 2019 COA 28, ¶ 12, 440 P.3d 1228, 1230.

Crim. P. 35(c) *presumes* that a postconviction court will hold a hearing on allegations of ineffective assistance of counsel. *People v. Lopez*, 2015 COA 45, ¶ 71, 399 P.3d 129, 139-40. "This presumption is only overcome if the motion, files, and record clearly show that defendant's claims lack merit." *Id.*

Therefore, a court may only deny a Crim. P. 35(c) motion without a hearing when "the motion and the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief." Crim. P. 35(c)(3)(IV); *see People v. Thomas*, 867 P.2d 880, 890-91 (Colo. 1994). A postconviction court can rely on the record to deny a claim without a hearing *only if* the record refutes the asserted claim. *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 15, 454 P.3d 359, 362 (emphasis added).

D. Standards Governing Ineffective Assistance of Counsel

An accused has a constitutional right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Defense counsel can deprive a defendant of the right to effective assistance of counsel "by failing to render 'adequate legal assistance.'" *Strickland*, 466 U.S. at 686 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)).

5

The standard recognizes the "critical" role attorneys play in ensuring that the adversarial system produces "just results." *Id.* at 685.

A defendant receives ineffective assistance of counsel if (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 687-88; and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where a reasonable probability is one "sufficient to undermine confidence in the outcome," *id.* at 694.

### E.  Additional Facts Concerning DNA Evidence

The robber in this case was alleged to have worn, among other things, a homemade mask, a red bandana, and black tennis shoes.  Approximately two weeks before trial, the People provided defense counsel with an updated DNA report.  (TR 3/14/14, p 6:15-19).  In the report, the expert concluded "[t]o a reasonable degree of scientific certainty and in the absence of an identical sibling, Townsell is the source of the DNA profiles developed from" the pantyhose, red bandana, and right shoe.  (CF, p 551).  The report also stated that "Townsell is the source of the DNA profile developed from" the left shoe, and "Townsell is the source of the major component of the DNA profile developed from" the hat.  (CF, p 551).  In other words, the People's trial evidence would include that Mr. Townsell's DNA was found on a red bandana, two shoes, and a hat.

6

These items were alleged to have been used by the robber and the People drew comparisons using the items worn by the robber in the pictures.  (TR 3/17/14, p 53:17-19; p 140:10-13; p 141:5-11).  The "hat" on the report was actually a "dark blue knit cap w/ 2 eye holes cut out" to form a mask.  (EX 49, p 159).  Thus, evidence that Mr. Townsell's DNA might have been found on the mask used in the robbery was particularly critical.

Yet counsel based his trial strategy on his erroneous belief that the *only* DNA match was a pair of pantyhose in the former wife's car:

> I knew that there was a DNA match on a pair of pantyhose and I think I told the Court that, and that report did come to me more than 30 days in advance and, frankly, DNA from pantyhose which nobody has identified as being used in a robbery and a husband's DNA being on his wife's pantyhose is something that argument with the jury or presentation with the jury I can deal with, but the laboratory report now saying the same items that were tested now are also involving other items that were seized, if you will, from [the wife's] general possession from the Pontiac and the bag that was left outside[.]

(TR 3/14/14, pp 7:16-8:5).  Defense counsel also mistakenly believed that the DNA information was a late disclosure: "that was not released until within the last two weeks of trial.  So there's another disclosure issue and, frankly, I think Rule 16 is pretty clear that this type of stuff needs to be before 30 days."  (TR 3/14/14, pp 7:16-8:5)

Another division of this Court held that defense counsel was wrong; the

7

information was in discovery all along. *See Townsell*, ¶¶ 23-24. But even after

trial counsel learned that this DNA evidence would be used at trial, he continued to

trial without further investigation. Specifically, after learning that multiple items

contained Mr. Townsell's DNA — items that were likely used in the robbery,

including the mask — counsel did not ask for a continuance or otherwise

investigate this information.

> 1.  Mr. Townsell sufficiently alleged that trial counsel was ineffective
> for failing to properly investigate the DNA evidence.

The deficient performance prong here is met here by counsel's admission on

the record that he misread discovery. He was not prepared for trial. Another

division of this Court held that the DNA report was in discovery all along and that

the updated report merely repeated information that was already available. Under

these circumstances, the record establishes not only that deficient performance was

alleged but that it was met.

As to the prejudice prong, DNA was the primary evidence used against Mr.

Townsell at trial. "[J]urors place great emphasis on DNA evidence—so much so

that the evidence has long enjoyed a status of 'mythic infallibility' for juries."

*People v. Marks*, 2015 COA 173, ¶ 41, 374 P.3d 518, 526. The DNA evidence

here was the reason Mr. Townsell was convicted. Mr. Townsell did not match the

robber's description; in fact, the difference between the robber's height (5'8") and

Mr. Townsell (6'2") is significant. The failure of counsel to properly investigate the DNA evidence in this case likely affected the outcome of the trial.

At this stage in the proceeding, Mr. Townsell was only required to allege facts that would entitle him to relief. He has done so. Mr. Townsell's pro se assertion was sufficient to entitle him to the appointment of counsel to investigate his claim. *See Jones v. Williams*, 2019 CO 61, ¶ 5, 443 P.3d 56, 58 ("Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer.").

2. Mr. Townsell sufficiently alleged that trial counsel was ineffective for failing to consult with a DNA expert.

"A defendant is entitled to pretrial investigation sufficient to reveal potential defenses" and facts. *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994). A defendant may be entitled to postconviction relief if his or her attorney failed to consult with an expert witness, and that failure prejudiced the defense. *See, e.g.*, *People v. Danley*, 758 P.2d 686, 688 (Colo. App. 1988) ("Counsel's failure to investigate the availability of expert testimony, combined with his failure to discuss with defendant the vital necessity for obtaining the same, constitutes, in our view, ineffective assistance of counsel").

Mr. Townsell asserted in his pro se motion that trial counsel should have

9

hired a DNA expert.  (CF, p 1261).  A DNA expert was critical in this case because the People's expert did not test many items that would have been closest to the robber's skin.  The DNA expert would have been used to show that items closer to the robber did not contain Mr. Townsell's DNA.  For example, the shirt "worn by the assailant" was submitted to the People's DNA expert but was not tested.  (TR 3/17/14, p 131:10-16).  A phone that was "taped to the shirt" of the assailant was submitted to the People's DNA expert but was not tested.  (TR 3/17/14, p 131:20-25).  Likewise, earbuds that were "presumably worn by the assailant during the robbery" were submitted to the People's DNA expert but not tested.  (TR 3/17/14, p 132:1-6).

Also critical is the fact that there was an alternate suspect in this case.  And the mask contained a mixture of DNA, which means that more than one person's profile was present on the mask.  (TR 3/17/14, p 107:11-13; p 149:8-10).  If defense counsel had read the discovery correctly and realized that both Mr. Townsell's DNA and another person's DNA was found on the mask, that mask could have been further analyzed by a defense expert.  This was critical because an innocuous explanation for the presence of Mr. Townsell's DNA on the mask was that he could have actually worn it as a stocking cap at some point and the real robber took the used cap and made it into a mask, thus accounting for two DNA

10

profiles on the mask.  After all, the items used in the robbery were found near or in Mr. Townsell's former wife's car, a place where Mr. Townsell kept some of his personal items.

The DNA evidence was the only evidence used to identify Mr. Townsell as the robber.  Mr. Townsell did not match the description given by any eye-witness. Nor did he match the characteristics viewable on the surveillance video.

Importantly, this claim was denied by the postconviction court without a hearing.  As stated above, Mr. Townsell is only required to assert facts which, if taken as true, would prove that trial counsel's performance was deficient and that this deficient performance was prejudicial.  For the district court to properly deny a claim at this stage, the claim must have been baseless or refuted by the record.  *See McGlaughlin*, ¶ 24, 428 P.3d at 697 ("The supreme court has repeatedly held that a postconviction court must hold an evidentiary hearing on a Crim. P. 35(c) motion "*unless* the motion, the files, and the record *clearly establish* that the allegations in the motion lack merit and do not entitle the defendant to relief." (quoting *Kazadi v. People*, 2012 CO 73, ¶ 17, 291 P.3d 16)); *see also Chalchi-Sevilla*, ¶¶ 15, 20 n.1, 454 P.3d 359, 363 (stressing the importance of an evidentiary hearing for fact-dependent claims).

The district court summarily denied relief fand stated that the claim was bare

and conclusory.  (CF, p 1279).  But this is not a bare and conclusory claim.  Mr.

Townsell made a specific claim — that his counsel misread the discovery and

failed to adequately investigate the DNA evidence.  The fact that counsel erred can

be found in the record.  Counsel's thought process — that he believed the

pantyhose contained the *only* DNA evidence — is stated clearly in the record.  (TR

3/14/14, p 7:16-22).  In that way, this case stands in stark contrast to others that

were denied as bare and conclusory.  *See, e.g.*, *People v. Phipps*, 2016 COA 190M,

¶ 36, 411 P.3d 1157, 1164.

Additionally, Mr. Townsell filed his motion pro se.  Mr. Townsell has

consistently maintained that he is not the robber.  The physical description of the

robber does not match him.  His claim that his DNA would be excluded with

further investigation is based on his personal knowledge that his DNA would not

be on the items closer to the robber's body (such as the earbuds and t-shirt).  In

other words, his claim is that his DNA will not be found on the items that were

never his, for example, the earbuds, because he personally knows that he did not

wear them.  These allegations are sufficient to entitle him to appointment of

counsel and a hearing.

Mr. Townsell made an allegation that, if true, entitles him to relief.  Under

Crim. P. 35(c), the appropriate remedy is to reverse the district court's order and

12

remand for further proceedings as required by Rule 35.  In this case, because Mr. Townsell requested postconviction counsel, that includes: "the court shall cause a complete copy of said motion to be served on the Public Defender.  Within 49 days, the Public Defender shall respond as to whether the Public Defender's Office intends to enter on behalf of the defendant."  Crim. P. 35(c)(3)(V).  "In such response, the Public Defender shall identify whether any conflict exists, request any additional time needed to investigate, and add any claims the Public Defender finds to have arguable merit."  *Id.*

## CONCLUSION

Mr. Townsell requests that this Court reverse the postconviction court's order, appoint postconviction counsel, remand for an evidentiary hearing, and grant such other relief as this Court deems necessary.

Respectfully submitted,

s/ Krista A. Schelhaas
Krista A. Schelhaas, #36616

13

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of June 2022, a copy of the foregoing

OPENING BRIEF was filed through the Colorado Courts E-Filing System, with a

copy checked to be sent to the Office of the Attorney General, Criminal Division.

s/ Krista A. Schelhaas
Krista A. Schelhaas

14