21CA2068 Peo v Townsell 11-16-2023

COLORADO COURT OF APPEALS

DATE FILED
November 16, 2023
CASE NUMBER: 2021CA2068

Court of Appeals No. 21CA2068
Arapahoe County District Court No. 13CR2039
Honorable Shay K. Whitaker, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jamale D. Townsell,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE JOHNSON
J. Jones, J., concurs
Schutz, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 16, 2023

Philip J. Weiser, Attorney General, Christine Brady, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Krista A. Schelhaas, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Jamale D. Townsell (Townsell), appeals the postconviction court's order denying his Crim. P. 35(c) motion without a hearing.  We affirm.

## I.    Background

¶ 2     We largely recite the facts from a division of this court's opinion affirming Townsell's judgment of conviction and sentence in *People v. Townsell,* (Colo. App. No. 14CA1225, Apr. 5, 2018) (not published pursuant to C.A.R. 35(e)).

¶ 3     One morning, an armed and masked man ran into the Bank of the West in Aurora, where two bank tellers were present.  The man, later identified during a police investigation as Townsell, jumped over the counter, pointed a gun at one of the tellers, and demanded money.  He ultimately placed $1,000 in cash from the teller's drawer into a bag that contained a concealed Global Positioning Device (GPS).  He left the bank, got into a stolen car parked in the bank's parking lot, and drove to a nearby apartment complex, where he abandoned the car.

¶ 4     Meanwhile, police officers tracking the GPS device contacted E.R., Townsell's estranged wife.  In the trunk of her car, officers found a gun and one shoe.  In the middle of a nearby street, they

1

also found a bag containing — among other things — a sweatshirt, a bandana, the other shoe, money, the GPS device, a mask, pantyhose, and gloves.  The police took E.R.'s cell phone and obtained phone records showing that Townsell's phone called E.R.'s phone shortly before and after the robbery while the two phones were close to the bank and to each other.

¶ 5        Police arrested Townsell.  At trial, Townsell denied participating in the robbery and attempted to offer evidence of an alternate suspect, E.R.'s brother, who he claimed more closely matched the physical description of the robber based on the bank tellers' statements.  The prosecution offered evidence showing that Townsell's DNA matched DNA found on the shoes, pantyhose, bandana, and mask seized by police.

¶ 6        The jury found Townsell guilty of the theft and two counts each of aggravated robbery and menacing.  The court sentenced Townsell to thirty-two years in the custody of the Department of Corrections.

¶ 7        Following his direct appeal, Townsell filed a Crim. P. 35(b) motion for reduction of sentence and a supplement to his motion, both of which the court denied.

¶ 8    Subsequently, Townsell filed a timely pro se petition for postconviction relief pursuant to Crim. P. 35(c), raising ineffective assistance of trial counsel claims.  In summarily denying the motion, the court found that even if trial counsel's performance was deficient for failing to move to continue the trial date and investigate the prosecution's late-disclosed DNA report, Townsell's Crim. P. 35(c) motion stated neither legal nor factual grounds to suggest that such deficient performance caused prejudice.  Rather, the motion merely asserted that had trial counsel conducted a further investigation, trial counsel "would have discovered substantial evidence of [Townsell]'s exclusion despite the new DNA evidence against [Townsell]."  Because Townsell's motion did not identify any facts to explain what that "substantial evidence" would have been, nor did it explain how that substantial evidence would have overcome the significant DNA evidence the prosecution offered at trial, the court found the motion insufficient to require a hearing or appointment of counsel.

¶ 9    On appeal, Townsell contends that the postconviction court erroneously denied his Crim. P. 35(c) motion because trial counsel deficiently failed to (1) properly investigate the DNA evidence and (2)

3

consult with a DNA expert.  Although Townsell argues these two points separately, we read his DNA expert argument to be a component of his failure-to-investigate argument.  Thus, we address these two arguments as one.  Townsell also contends that the postconviction court erroneously denied his request for postconviction counsel.  We address and reject both contentions.

## II.    Failure to Investigate

¶ 10    Townsell contends that trial counsel was ineffective for failing to properly investigate the DNA evidence in his case.

### A.    Standard of Review and Applicable Law

¶ 11    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing.  *People v. McGlaughlin*, 2018 COA 114, ¶ 25.

¶ 12    To obtain relief on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) the defendant was prejudiced by counsel's deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).

¶ 13    To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of

4

reasonableness." *Strickland*, 466 U.S. at 688. "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.

¶ 14    To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 15    The burden is on the defendant in a Crim. P. 35(c) proceeding to prove both prongs of *Strickland* by a preponderance of the evidence. *People v. McDowell*, 219 P.3d 332, 339 (Colo. App. 2009). Thus, a court may deny without a hearing a defendant's claim for ineffective assistance of counsel if the defendant's allegations are bare and conclusory; the allegations, even if proved true, would not warrant postconviction relief; or the record directly refutes the defendant's claims. *See* Crim. P. 35(c)(3)(IV); *People v. Duran*, 2015 COA 141, ¶ 9; *Ardolino*, 69 P.3d at 77 (A motion asserting

5

ineffective assistance of counsel may be denied without a hearing if

"the existing record establishes that the defendant's allegations,

even if proven true, would fail to establish one or the other prong of

the *Strickland* test.").

## B.    Analysis

¶ 16    We, like the postconviction court, conclude that Townsell

failed to allege facts sufficient to establish *Strickland*'s prejudice

prong.

¶ 17    On appeal, Townsell contends that "[t]he failure of counsel to

properly investigate the DNA evidence in this case likely affected the

outcome of the trial" because "[t]he DNA evidence here was the

reason [he] was convicted."  He continues that "[i]f defense counsel

had read the discovery correctly and realized that both [Townsell]'s

DNA and another person's DNA was found on the mask," counsel

could have called a DNA expert to further analyze the mask.  But

the jury heard evidence about a mixed DNA profile on the mask,

and Townsell does not explain how a defense expert's testimony on

this point would have overcome the other evidence admitted

showing that Townsell's DNA — and only Townsell's DNA — was

found on the shoes, pantyhose, and bandana.  Many of these items

were seen on still shots from the surveillance video of the robbery. *See People v. Washington*, 2014 COA 41, ¶ 35 (counsel did not provide ineffective assistance by failing to call a witness whose testimony would have been cumulative of that of other witnesses).

¶ 18    Townsell further argues that because "there was an alternate suspect in this case," the DNA expert also "would have been used to show that items closer to the robber [that were not tested for DNA by the police] did not contain [Townsell]'s DNA," such as the robber's shirt, a phone that was taped to the shirt, and earbuds that were "presumably worn by the [robber]." We reject this argument for two reasons. First, Townsell overstates the evidence of an alternate suspect at trial. During closing argument, when defense counsel tried to state there was an alternate suspect, the parties had a bench conference. The court acknowledged that there was no testimony to support the alternate suspect theory. Instead, defense counsel was only allowed to argue that the police had "notice" that there might be an alternate suspect given the disparity between the witnesses' descriptions of the robber's height and Townsell's height.

¶ 19    Second, similar to Townsell's mask argument, he does not explain here how DNA testing of these items would have overcome the inculpatory DNA evidence that the prosecution had already offered at trial.  Indeed, he only speculates that the aforementioned items might have contained exculpatory material.  *People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) ("Unless such investigation would have discovered substantial evidence which, if introduced, might reasonably have led to a different result, counsel's deficiency . . . was not prejudicial.").

¶ 20    Townsell also does not specify how further investigation by defense counsel of the DNA evidence would have changed "the result of the proceeding," or allege that a DNA expert would even have been available and willing to testify consistent with his allegations that his DNA may not have been on the other items recovered by the police.  Therefore, we agree with the postconviction court that Townsell's claim is conclusory.  *See People v. Aguilar*, 2012 COA 181, ¶ 12 (the defendant's speculative assertion that a DNA expert was necessary for his defense at trial did not entitle him to a hearing on that claim).

¶ 21    Thus, we discern no error with the court's denial of Townsell's motion without a hearing.  *See Duran*, ¶ 9; *Ardolino*, 69 P.3d at 77.

### III.    Failure to Appoint Postconviction Counsel

¶ 22    Because the postconviction court properly summarily denied Townsell's motion as a matter of law, his request for appointment of postconviction counsel fails.  *See Silva v. People*, 156 P.3d 1164, 1167-68 (Colo. 2007) (a defendant only has a right to postconviction counsel when his claims are "not wholly unfounded" or have "arguable merit"); *People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (when a postconviction court properly denies a defendant's motion as a matter of law, it is not required to appoint counsel to represent the defendant).

### IV.    Conclusion

¶ 23    The order is affirmed.

JUDGE J. JONES concurs.

JUDGE SCHUTZ dissents.

JUDGE SCHUTZ, dissenting.

¶ 24     My colleagues in the majority affirm the postconviction court's denial, without a hearing, of Jamale Townsell's first Crim. P. 35(c) petition.  I share my colleagues' conclusion that Townsell did not state the specific exculpatory evidence that would have been available to his defense team if his counsel had retained a DNA expert.  But given Townsell's pro se incarcerated status and the importance of the DNA issues in this case, I do not believe the absence of such a specific allegation is fatal to the merits of his petition.  Instead, I conclude that Townsell alleged sufficient facts to justify the appointment of counsel to assist him in developing and pursuing his petition.  I write separately to explain the basis for my conclusion.

I.     The Reality and Requirements of Crim. P. 35(c) Petitions

¶ 25     Unlike a criminal trial and the resulting direct appeal, a criminal defendant has only a limited right to counsel in post-conviction proceedings.  *Silva v. People*, 156 P.3d 1164, 1168 (Colo. 2007) ("[T]here exists a limited statutory right to post-conviction counsel for meritorious Crim. P. 35(c) motions.").  Before a defendant is entitled to court-appointed counsel, they must first

10

demonstrate that their petition appears to be meritorious.  As a result, most Crim. P. 35(c) petitions that come before Colorado courts are initially filed by incarcerated defendants who do not have the benefit of an attorney.  Typically, given pro se defendants' limited resources and lack of legal education, these petitions are not the model of clarity.

¶ 26    Crim. P. 35(c) was drafted with these realities in mind.  As the majority correctly notes, the rule permits the postconviction court to summarily deny a petition if "it fails to state adequate factual or legal grounds for relief, . . . states legal grounds for relief that are not meritorious, . . . states factual grounds that, even if true, do not entitle the party to relief, [or] . . . states factual grounds that, if true, entitle the party to relief, but the files and records of the case show to the satisfaction of the court that the factual allegations are untrue."  Crim. P. 35(c)(3)(IV).

¶ 27    Unless one of these exclusionary criteria is met, the rule specifies a different direction:

> If the court does not deny the motion under (IV) above, the court shall cause a complete copy of said motion to be served on the prosecuting attorney if one has not yet been served by counsel for the defendant.  If the

11

> defendant has requested counsel be appointed in the motion, the court shall cause a complete copy of said motion to be served on the Public Defender.  Within 49 days, the Public Defender shall respond as to whether the Public Defender's Office intends to enter on behalf of the defendant pursuant to § 21-1-104(1)(b), [C.R.S. 2023].  In such response, the Public Defender shall identify whether any conflict exists, request any additional time needed to investigate, and add any claims the Public Defender finds to have arguable merit.  Upon receipt of the response of the Public Defender, or immediately if no counsel was requested by the defendant or if the defendant already has counsel, the court shall direct the prosecution to respond to the defendant's claims or request additional time to respond within 35 days and the defendant to reply to the prosecution's response within 21 days . . . .  Thereafter, the court shall grant a prompt hearing on the motion unless, based on the pleadings, the court finds that it is appropriate to enter a ruling containing written findings of fact and conclusions of law.  At the hearing, the court shall take whatever evidence is necessary for the disposition of the motion.

Crim. P. 35(c)(3)(V).

¶ 28    The supreme court has reminded postconviction courts that they must liberally construe pro se parties' Crim. P. 35 petitions. *See Jones v. Williams*, 2019 CO 61, ¶ 5 ("Pleadings by pro se litigants must be broadly construed to ensure that they are not

denied review of important issues because of their inability to articulate their argument like a lawyer.").

¶ 29    In sum, the rule allows a postconviction court to summarily deny a Crim. P. 35(c) petition if, on its face, it clearly lacks merit. But unless that determination can be made from the face of the petition, the rule requires the postconviction court to appoint counsel for the defendant and provide that attorney an opportunity to "request any additional time needed to investigate, and add any claims the [attorney] finds to have arguable merit."  Crim. P. 35(c)(3)(V).  In this way, the rule recognizes that a pro se incarcerated defendant may not be in a position to fully develop the factual and legal basis for their petition.  Thus, the defendant must only allege viable facts that, if established at a hearing, would entitle them to relief.

¶ 30    The direct and indirect impact of the summary denial of a postconviction petition is also evident from the rule.  If a postconviction petition is summarily denied, it precludes the defendant from the opportunity to be heard on the merits of the contention without ever having the opportunity to present evidence in support of the issue raised.  But significantly, in the context of

an initial Crim. P. 35(c) petition such as Townsell's, the summary denial will also typically preclude a defendant from pursuing any other relief that was brought or could have been brought in that initial petition. *See* Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought except" in limited circumstances addressed by the rule.).

¶ 31    For these reasons, a defendant is not required to offer specific evidence at the time they initially file a Crim. P. 35(c) petition. Instead, they must simply allege facts that may be later proved at an evidentiary hearing, provided the allegations are sufficient to establish that the alleged facts, if proved, would afford the defendant relief. As a division of this court explained, "Crim. P. 35(c) presumes that a postconviction court will hold hearings if the defendant raised allegations of ineffective assistance of counsel." *People v. Lopez*, 2015 COA 45, ¶ 71. "This presumption is only overcome if the motion, files, and record clearly show that defendant's claims lack merit." *Id.*

¶ 32    With these standards in mind, I turn to the specifics of Townsell's pro se petition. Before doing so, however, it is important

14

to address a few additional facts related to the charges against

Townsell and his alternate suspect defense that are supported by

the record.

## II.    Additional Facts

¶ 33    As the majority notes, Townsell was convicted of theft,

aggravated robbery, and menacing.  While investigating the crime,

law enforcement located a gun and a single shoe in the trunk of a

car owned by Townsell's wife, E.R., from whom Townsell was

separated.  On a nearby street, law enforcement also found a

sweatshirt, bandana, money, GPS tracking device, pantyhose,

earbuds, phone, gloves, a stocking cap in which eyeholes had been

cut out (mask), and the other shoe.

¶ 34    The prosecution procured a DNA expert to analyze at least

four of these items.  At trial, the prosecution introduced evidence

that Townsell's DNA was consistent with DNA found on the shoes,

pantyhose, bandana, and mask.  The prosecution's DNA expert

apparently did not test the "shirt of the assailant," the phone, which

had been taped to that shirt, or the earbuds, all items that were in

close contact with the robber's body.  The mask contained DNA

from at least two people.  The prosecution did not introduce

15

evidence identifying the person who was the second source of DNA
on the mask.

¶ 35    Townsell asserted that the crime was committed by a different
person.  Specifically, Townsell identified E.R.'s brother as an
alternate suspect.  The robber had the mask pulled completely
down over his face at the time of the robbery.  Thus no eyewitness
could identify the person.  But the trial produced evidence by which
a reasonable juror could conclude that Townsell was six feet two
inches tall.  In contrast, all the eyewitnesses to the crime stated
that the robber was between five feet seven inches and five feet nine
inches tall.  Similarly, both the security officer and detective who
viewed the videotaped surveillance concluded that the robber was
five feet seven inches or five feet eight inches tall.  E.R.'s brother is
five feet eight inches tall.  The video also suggested that the robber
was left-handed.  Townsell is right-handed.

¶ 36    About four weeks before trial, the prosecution disclosed that it
would be relying on DNA evidence taken from the mask, pantyhose,
shoes, and gloves.  Prior to that time, the prosecution had only
disclosed that it would be introducing DNA evidence from the
pantyhose.  Though he received this new DNA information only four

16

weeks before trial, Townsell's counsel did not request a continuance

that would have allowed him to retain an expert witness to review

the DNA evidence in the case. Townsell's counsel proceeded to trial

without consulting a DNA expert, and thus he offered no evidence

concerning the source of the other DNA found on the mask, or

whether there was any DNA on any of the other items of seized

personal property.

### III. Analysis

¶ 37    Like the majority and the postconviction court, I agree that

Townsell's petition, though setting forth two arguments, is best

viewed as presenting a single proposition: Townsell's trial counsel

was ineffective because he failed to adequately investigate the DNA

evidence in this case. The postconviction court and the majority

also assume that the evidence supports the conclusion that

Townsell presented sufficient facts that, if proved, support a finding

that his counsel's failure to retain a DNA expert was below an

objective standard of reasonableness and therefore deficient. *Supra*

¶ 16; *see Dunlap v. People,* 173 P.3d 1054, 1062 (Colo. 2007) (citing

*Strickland v. Washington,* 466 U.S. 668, 688 (1984)). I agree with

that conclusion.

17

¶ 38    But the majority affirms the summary denial of Townsell's
petition based on its conclusion that Townsell failed to allege
sufficient facts that, if true, would support a finding that but for
trial counsel's deficient performance, the result would have been
different.  *Supra* ¶ 16; *see Dunlap*, 173 P.3d at 1062 (citing
*Strickland*, 466 U.S. at 694).  It is here where I part company with
the majority.

¶ 39    Townsell's petition contained the following statements:

> Had defense counsel requested a continuance
> after learning of additional DNA evidence
> [then] a proper defense could have changed the
> outcome of this case . . . .  Long standing law
> states: For counsel to make a professionally
> reasonable decision whether to present certain
> mitigation evidence in this case, any mitigating
> evidence that counsel must be informed of all
> available options.  Thus, case law rejects the
> notion that a strategic decision can be
> reasonable, when this attorney has failed to
> investigate his options and make reasonable
> possible mitigating evidence regarding
> additional DNA evidence documentation, but
> [Townsell's counsel] inexplicably failed to
> follow up with further investigation.  Had he
> done so, he would have discovered substantial
> evidence of defendant's exclusion despite the
> new DNA evidence against Mr. Townsell. . . .
> The failure of counsel to adequately investigate
> this case necessitate[s] an evidentiary hearing.
> The fact that he missed the DNA report is clear
> evidence he failed to properly investigate . . . .

18

> With a continuance, counsel could have hired a DNA expert to counter the peoples expe[r]t and could have had more effective cross-examination of the people's expert.

A fair reading of these allegations is that if Townsell's counsel had retained a DNA expert, that expert could have tested the same pieces of physical evidence analyzed by the prosecution's expert, as well as the other evidence that the prosecutor's expert apparently did not test, and that DNA evidence would have exonerated Townsell. Given the facts disclosed at the trial, coupled with Townsell's alternate suspect theory, I think it is also a fair interpretation of the petition that Townsell was asserting that the DNA evidence would have supported his alternate suspect theory.

¶ 40    It is true, as the majority notes, that Townsell "only speculates that the aforementioned items might have contained exculpatory material" and did not "allege that a DNA expert would even have been available and willing to testify consistent with his allegations that his DNA may not have been on the other items recovered by the police." *Supra* ¶¶ 19, 20. But these criticisms place a near insurmountable burden on a pro se defendant's ability to contest the failure of their counsel to present critical DNA evidence at trial.

19

¶ 41     Townsell is, by all appearances, indigent, and he is in prison. It is unrealistic to expect that a person in his situation has the financial means or connections to retain a DNA expert, obtain access to the physical evidence for testing, and then present actual DNA evidence in support of a pro se petition.  The net effect of such reasoning is to deprive a defendant of an evidentiary hearing because of the failure to present the evidence that he claims trial counsel failed to procure in the first instance.  Such a result is contrary to the structure of Crim. P. 35(c), which contemplates the appointment of legal counsel for an indigent defendant so that such allegations can be developed factually and tested with the benefit of an actual evidentiary hearing.

¶ 42     Finally, I disagree with the majority's conclusion that Townsell "does not explain here how DNA testing of these items would have overcome the inculpatory DNA evidence that the prosecution had already offered at trial." *Supra* ¶ 19.  As previously mentioned, no eyewitness could identify the person who robbed the bank.  Given the discrepancy between Townsell's height and that of the robber depicted on the video, coupled with the differences in dominant hands between the robber and Townsell, there was evidence to

20

support the alternate suspect defense.  Moreover, while Townsell's DNA was on at least the mask and the pantyhose, there was no evidence that the pantyhose were used by the robber.  And if the mask was made from a stocking cap owned and previously worn by Townsell, one would expect his DNA to be present on it.

¶ 43    But those doubts were likely overcome by the prosecution's unrebutted DNA evidence.  *See, e.g., People v. Marks,* 2015 COA 173, ¶ 41 ("As the district court noted, jurors place great emphasis on DNA evidence — so much so that the evidence has long enjoyed a status of 'mythic infallibility' for juries." (quoting *Virgin Islands v. Byers,* 941 F. Supp. 513, 526 (D. Virgin Is. 1996))).  Given the enormous role that DNA evidence plays in a criminal trial, it was paramount that Townsell be in a position to effectively combat this evidence.

¶ 44    If Townsell's counsel had procured a DNA expert, the associated testing may have revealed that E.R.'s brother was the source of the other DNA on the mask.  Similarly, additional DNA testing may have revealed the presence of E.R.'s brother's DNA on other evidence seized by law enforcement.  Any such DNA evidence

21

could reasonably have led the jury to reach a different result at trial.

¶ 45    Of course, if Townsell had been appointed counsel, and an evidentiary hearing had been set, he would have been required to submit actual evidence to support his allegation that the DNA evidence would have been exculpatory.  Townsell's counsel would have also been afforded the opportunity to articulate and present evidence in support of any other meritorious claim at that same hearing.  But the summary denial of the petition precluded Townsell from ever being able to present this evidence or to supplement his petition.  And for the reasons previously explained, the summary denial impaired, if not eliminated, Townsell's right to pursue potentially meritorious postconviction claims in the future.

## IV.    Conclusion

¶ 46    Because I conclude that Townsell's petition alleged facts that would have justified appointing counsel on his behalf and delaying the determination of whether an evidentiary hearing would be appropriate until after the supplemental briefing process contemplated by Crim. P. 35(c) was completed, I respectfully dissent.

# Court of Appeals

**STATE OF COLORADO**
**2 East 14th Avenue**
**Denver, CO 80203**
**(720) 625-5150**

**PAULINE BROCK**
**CLERK OF THE COURT**

## NOTICE CONCERNING ISSUANCE OF THE MANDATE

Pursuant to C.A.R. 41(b), the mandate of the Court of Appeals may issue forty-three days after entry of the judgment.  In worker's compensation and unemployment insurance cases, the mandate of the Court of Appeals may issue thirty-one days after entry of the judgment.  Pursuant to C.A.R. 3.4(m), the mandate of the Court of Appeals may issue twenty-nine days after the entry of the judgment in appeals from proceedings in dependency or neglect.

Filing of a Petition for Rehearing, within the time permitted by C.A.R. 40, will stay the mandate until the court has ruled on the petition.  Filing a Petition for Writ of Certiorari with the Supreme Court, within the time permitted by C.A.R. 52(b), will also stay the mandate until the Supreme Court has ruled on the Petition.

BY THE COURT:    Gilbert M. Román,
                 Chief Judge

DATED:  January 6, 2022

***Notice to self-represented parties****:  You may be able to obtain help for your civil appeal from a volunteer lawyer through The Colorado Bar Association's (CBA) pro bono programs. If you are interested in learning more about the CBA's pro bono programs, please visit the CBA's website at www.cobar.org/appellate-pro-bono or contact the Court's self-represented litigant coordinator at 720-625-5107 or appeals.selfhelp@judicial.state.co.us.*