| | |
|---|---|
| Supreme Court, State of Colorado<br>2 East 14th Ave., Denver, CO 80203<br><br>Petition for Writ of Certiorari; Colorado Court of Appeals Case Number 21CA2068; Division III; Opinion by Judge Johnson; J. Jones, J., concurs; Schutz, J., dissents<br><br>Arapahoe County District Court;<br>Honorable Shay K. Whitaker;<br>Case Number 13CR2039 | DATE FILED<br>February 6, 2024 11:19 AM<br>FILING ID: A326E95314307<br>CASE NUMBER: 2023SC924 |
| Petitioner<br>JAMALE D. TOWNSELL,<br><br>v.<br><br>Respondent<br>THE PEOPLE OF THE STATE OF COLORADO. | |
| Attorney for Petitioner<br>Krista A. Schelhaas (Alternate Defense Counsel)<br>Schelhaas Law LLC<br>PO Box 621355<br>Littleton, CO 80162<br>(303) 803-4750<br>kschelhaas@comcast.net<br>Attorney Reg. No. 36616 | Case No. 23SC924 |
| PETITION FOR WRIT OF CERTIORARI | |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with all requirements of C.A.R.

32 and C.A.R. 53, including all formatting requirements set forth in these rules.

Specifically, the undersigned certifies that:

The petition complies with the applicable word limits set forth in C.A.R.

53(f)(1).

It contains 3,738 words.

I acknowledge that this petition may be stricken if it fails to comply with any

of the requirements of C.A.R. 32 and C.A. R. 53.

s/ Krista A. Schelhaas
Krista A. Schelhaas

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................iv

ADVISORY LISTING OF THE ISSUES ................................................................1

BASIS OF JURISDICTION ...................................................................................1

SIMILAR PENDING CASE UNDER CERTIORARI REVIEW ............................2

STATEMENT OF THE CASE AND FACTS ........................................................2

WHY THE WRIT SHOULD ISSUE......................................................................8

ARGUMENTS ......................................................................................................9

   I.    The Division Decided a Question of Substance in a Way Not in Accord
         With *Silva v. People*, 156 P.3d 1164, 1168 (Colo. 2007), Because it
         Failed to Appoint Counsel to Assist Mr. Townsell With Developing His
         Meritorious Postconviction Claims ........................................................9

   II.   The Division Decided a Question of Substance in a Way Not in Accord
         With Decisions of This Court Because It Denied Mr. Townsell a
         Hearing Even Though He Sufficiently Alleged Deficient Performance
         and The Record Does Not Refute His Claim of Prejudice ....................16

CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ardolino v. People*, 69 P.3d 73 (Colo. 2003)......................................................10, 18

*Duran v. Price*, 868 P.2d 375 (Colo. 1994)............................................................11

*Jones v. Williams*, 2019 CO 61, 443 P.3d 56..........................................................16

*Kazadi v. People*, 2012 CO 73, 291 P.3d 16 ...........................................................18

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................................. 15-16

*Massaro v. United States*, 538 U.S. 500 (2003) .......................................................18

*People v. Bergerud*, 223 P.3d 686 (Colo. 2010)......................................................16

*People v. Davis*, 2012 COA 14, 272 P.3d 1167.......................................................14

*People v. Hubbard*, 184 Colo. 243, 519 P.2d 945 (1974) ................................. 14-15

*People v. McGlaughlin*, 2018 COA 114, 428 P.3d 691 ................................... 17-18

*People v. Nozolino*, 2023 COA 39, 533 P.3d 966 ............................................ 11-12

*People v. Segura*, (Colo. App. No. 20CA1785, Sept. 15, 2022) (not published
pursuant to C.A.R. 35(e)) (*cert. granted* 22SC816, July 17, 2023) .........................2

*People v. Terry*, 2019 COA 9, 488 P.3d 459 .................................................... 11-12

*People v. Townsell*, (Colo. App. No. 21CA2068, Nov. 16, 2023) (not published
pursuant to C.A.R. 35(e))................................................................1, 7-8, 12-14, 17

# TABLE OF AUTHORITIES

**Cases**

*People v. Townsell*, (Colo. App. No. 14CA1225, Apr. 5, 2018) (not published pursuant to C.A.R. 35(e))......................................................................................6, 12

*Silva v. People*, 156 P.3d 1164 (Colo. 2007)....................................................11, 18

*Strickland v. Washington*, 466 U.S. 674 (1984) ......................................................18

**Constitutional Provisions, Rules, and Statutes**

Crim. P. 35(c)...............................................................................10, 13-14, 17-18

§ 18–1–410, C.R.S. ...............................................................................................10

§ 21-1-104(1)(b), C.R.S. .......................................................................................11

## ADVISORY LISTING OF THE ISSUES

I.   Whether the standard for appointment of counsel under Criminal Rule of Procedure 35(c) differs from the standard for granting a hearing.

II.  Whether an indigent pro se petitioner alleging ineffective assistance of counsel for failure to investigate DNA evidence must specify how exculpatory DNA evidence would undermine confidence in the conviction to sustain a Rule 35(c) motion.

III. Whether Mr. Townsell is entitled to postconviction counsel and a hearing to develop his claim that trial counsel rendered ineffective assistance of counsel by failing to investigate DNA evidence.

## BASIS OF JURISDICTION

The court of appeals issued its opinion on November 16, 2023.  *See People v. Townsell*, (Colo. App. No. 21CA2068, Nov. 16, 2023) (not published pursuant to C.A.R. 35(e)).  On December 13, 2023, this Court granted an extension of time until February 8, 2024, to file this petition.

1

## SIMILAR PENDING CASE UNDER CERTIORARI REVIEW

This Court issued a writ of certiorari in *People v. Segura*, (Colo. App. No.
20CA1785, Sept. 15, 2022) (not published pursuant to C.A.R. 35(e)) (*cert. granted*
22SC816, July 17, 2023), a case that addresses a different part of Crim. P. 35(c)
but that also addresses potential ambiguities in the Rule's procedures for
appointment of postconviction counsel: "Whether a postconviction court violates
Crim. P. 35(c)(3)(IV) and (V) by summarily denying some of the claims raised in a
pro se motion and limiting the scope of appointed counsel's representation to
claims that survive summary denial."

## STATEMENT OF THE CASE AND FACTS

On June 15, 2013, an armed and masked man sprinted into the Bank of the
West in Aurora and demanded money from the teller.  (EX 1; TR 3/12/14, pp
92:23–93:3; p 93:15-18; p 139:21-24).  He fled with $1,104 and a stolen getaway
car that was discarded several blocks from the bank.  (TR 3/12/14, p 96:18-21; TR
3/13/14, p 11:5-9; pp 22:20–23:5).  The robbery took twenty-eight seconds.  (EX
1).

No part of the robber was visible.  Every witness testified that the robber
was between 5'7" and 5'9".  (TR 3/12/14, p 56:11-13; p 86:1-2; p 102:18-19; p

2

175:12-15; p 176:17-20; p 177: 12-16).  Both the senior corporate security officer and the detective who viewed the videotaped surveillance used measurement standards inside the building to conclude that the robber was 5'7" or 5'8" tall.  (TR 3/12/14, p 86:1-2; p 176:11-20).

The robber was also left-handed.  The robber displayed such left-hand dominance that during those twenty-eight seconds, he entered the bank with the gun in his left hand, switched hands to utilize his left hand for opening the teller drawer, removing the money, and placing the money into his bag, and then returned the gun to his left hand as he exited the bank.  (EX 1; TR 3/12/14, p 84:11-13; p 110:15-20; TR 3/17/14, p 65:11-14).

Jamale Dean Townsell stands 6'2" tall, a remarkable **six inches taller** than the man who robbed the Bank of the West.  (TR 3/17/14, p 42:12-16).  It was proven at trial that Mr. Townsell is **right-handed**.  (TR 3/17/14, p 65:11-14).  How, then, did Mr. Townsell end up convicted of robbing the Bank of the West?  Mr. Townsell was likely convicted because his counsel failed to investigate the DNA evidence used against him.

The DNA evidence came from pantyhose, a red bandana, a shoe, and a knit cap that was altered into a homemade mask.  The mask, pantyhose, and bandana

3

were found in a laptop bag that contained the stolen money.  (TR 3/13/14, p 84:16-19, p 85:5-17, p 104:7-11, p 117:8-19; EXs 57-60 (PDF, pp 175-77)).  The bag also held a cell phone that was wrapped in duct tape, a t-shirt, and earbuds.  The earbuds were taped to the t-shirt and the duct tape on the cell phone appeared to have been torn from where it was once attached to the robber's arm.  (TR 3/13/14, pp 114:16-116:6; EXs 68, 69 (PDF, pp 185-86)).  Police found the bag using a GPS tracking device hidden in the money.

The laptop bag had been discarded on a street.  Just around the corner from the discarded laptop bag, police detained a nervous-appearing woman driving a car.  (TR 3/13/14, p 14:15-21).  That woman was Mr. Townsell's former wife.  A search of the car revealed, among other things, a gun, and the right shoe.  (TR 3/13/14, p 128:1-20).  Although Mr. Townsell and his former wife were separated, they remained connected through their infant daughter, who was in the car at the time of the arrest.  (TR 3/13/14, p 20:5-17, p 36:1-20).  Several of Mr. Townsell's personal items were also in the car.  (TR 3/14/14, p 175:8-9, 179:23-180:15; EX 93-97 (PDF, pp 215-19)).

Mr. Townsell's former wife's brother—a man who, at 5'8", matched the robber's physical description and lived close to the home of the getaway car

4

owner—was introduced by the defense as an alternate suspect.  (TR 3/17/14, p 42:7-11; pp 216:19-217:16; EX D).

The People's DNA expert tested only the pantyhose, the bandana, the shoes, and the mask.  Of these items, only the mask was obviously used in the robbery. The evidence established that the mask contained DNA from more than one person but that included Mr. Townsell.  A likely explanation is that the knit cap originally belonged to Mr. Townsell but was remade into a mask and used by the actual robber, thus accounting for two DNA profiles.

Prior to trial, the People provided defense counsel with an updated DNA report.  (TR 3/14/14, p 6:15-19).  In the report, the expert concluded that Mr. Townsell was the source of the DNA profiles developed from the pantyhose, red bandana, and right shoe.  (CF, p 554).  The expert also concluded that Mr. Townsell was the source of the partial DNA profile developed from the left shoe, and his DNA was a major component of the mixture found on the mask.  (CF, p 554).

Trial counsel objected and claimed that the report was a late disclosure.  He explained that his trial strategy was based on his erroneous belief that the only DNA match was to pantyhose found in the wife's car.  (TR 3/14/14, pp 7:16-8:5).

5

On direct appeal, a division of the court of appeals held that counsel was wrong; the information was in discovery all along. *People v. Townsell*, (Colo. App. No. 14CA1225, Apr. 5, 2018) (not published pursuant to C.A.R. 35(e)) (*Townsell I*), ¶¶ 23-24.

Even after counsel learned that the prosecution's expert determined that multiple items found near the stolen money contained Mr. Townsell's DNA—including the mask that was likely worn by the robber—counsel did not ask for a continuance or otherwise investigate this information. Nor did he pursue DNA testing on other items that almost certainly contained the robber's DNA.

Mr. Townsell was convicted of aggravated robbery of the teller, aggravated robbery of another bank employee, two counts of menacing, and theft. His aggravated robbery sentences were imposed consecutively, resulting in a 32-year prison sentence. His conviction was affirmed on direct appeal. *Townsell I.*

Using Form 4 and checking the box to request appointment of counsel, Mr. Townsell filed a timely pro se petition for postconviction relief pursuant to Crim. P. 35(c). (CF, p 1253). In it, he alleged that defense counsel was ineffective for failing to request a continuance, consult with a DNA expert, and request testing of the items that were closest to the robber's skin, such as the robber's t-shirt, the

6

phone that was taped to the shirt, and the earbuds.  The district court summarily denied the motion without appointing counsel.  (CF, p 1274).

A divided division of the court of appeals affirmed.  The majority assumed that Townsell's trial counsel performed deficiently.  But it determined that Mr. Townsell did not sufficiently allege prejudice because he did not state that a DNA expert would be willing to testify and would testify consistent with his allegations, or otherwise explain how testing could overcome the DNA evidence used at trial. *Opinion*, ¶¶ 19-20.

Judge Schutz dissented.  He referenced Crim. P. 35(c)'s low burden for appointment of counsel.  In his view, Mr. Townsell's allegations were sufficient to warrant appointment of counsel and a hearing.  Recognizing Mr. Townsell's pro se and incarcerated status, he explained,

> A fair reading of these allegations is that if Townsell's counsel had retained a DNA expert, that expert could have tested the same pieces of physical evidence analyzed by the prosecution's expert, as well as the other evidence that the prosecutor's expert apparently did not test, and that DNA evidence would have exonerated Townsell.  Given the facts disclosed at the trial, coupled with Townsell's alternate suspect theory, I think it is also a fair interpretation of the petition that Townsell was asserting that the DNA evidence would have supported his alternate suspect theory.

7

*Opinion*, ¶ 39.  Judge Schutz described the "near insurmountable burden on a pro

se defendant's ability to contest the failure of their counsel to present critical DNA

evidence at trial."  *Id.*, ¶ 40.

Mr. Townsell now asks this Court to issue a writ to review the opinion of the

court of appeals.

## WHY THE WRIT SHOULD ISSUE

This Court has never directly addressed the standard for appointment of

counsel under Crim. P. 35(c)(3)(V).  The Rule has been conflated by lower courts

so that the standards for appointment of counsel and for granting a hearing have

become one.  The language of the Rule, however, separates the two.  As Judge

Schutz explained in his dissent, "the structure of Crim. P. 35(c) [ ] contemplates

the appointment of legal counsel for an indigent defendant so that such allegations

can be developed factually and tested with the benefit of an actual evidentiary

hearing."  *Opinion*, ¶ 41.  The lower courts need guidance.

This case provides a good vehicle to resolve this issue.  Mr. Townsell is

indigent and has been incarcerated since his initial arrest in this case.  He has never

had the means to afford an attorney or an expert.  In his first pro se Crim. P. 35(c)

motion—the only opportunity Mr. Townsell had to raise ineffective assistance of

counsel claims—Mr. Townsell alleged that his court-appointed trial counsel failed to investigate critical DNA evidence.  Mr. Townsell requested postconviction counsel to develop his allegation that items closest to the robber's skin were not DNA tested despite the considerable evidence—including a six-inch height difference—demonstrating that Mr. Townsell was not the robber.  Judge Schutz recognized that this critical DNA evidence would likely exonerate Mr. Townsell. Given the height discrepancy and evidence of dominant hand in this case, it is clear the jury relied upon DNA in reaching the verdict.  But Mr. Townsell was deprived of his opportunity to challenge the DNA evidence because he could not afford an attorney and an expert to meaningfully investigate and challenge the evidence.

This Court should issue a writ to review the split opinion of the court of appeals and clarify the standard for appointment of postconviction counsel.

## ARGUMENTS

**I.  The Division Decided a Question of Substance in a Way Not in Accord With *Silva v. People*, 156 P.3d 1164, 1168 (Colo. 2007), Because it Failed to Appoint Counsel to Assist Mr. Townsell With Developing His Meritorious Postconviction Claims**

Colorado rules and statutes require that a petitioner filing a postconviction motion must be provided an opportunity to develop the record to establish

9

ineffective assistance of counsel claims. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (citing Crim. P. 35(c) and § 18–1–410, C.R.S.). That opportunity to develop the record is found in Crim. P. 35(c)(3)'s "procedures [that] shall apply to the filing and hearing of such motions." All timely motions that survive a minimum threshold are forwarded to the Office of the Public Defender (OPD) for assignment. The minimum threshold for appointment of counsel is met unless the motion: (1) "fails to state adequate factual or legal grounds for relief," (2) "states legal grounds for relief that are not meritorious," (3) "states factual grounds that, even if true, do not entitle the party to relief," or (4) "states factual grounds that, if true, entitle the party to relief, but the files and records of the case show to the satisfaction of the court that the factual allegations are untrue." Crim. P. 35(c)(3)(IV).

If the motion survives this test and the defendant requested counsel, "a complete copy of said motion [shall] be served on" the OPD. Crim. P. 35(c)(3)(V). The OPD has 49 days to "respond as to whether the [it] intends to

enter on behalf of the defendant pursuant to § 21-1-104(1)(b), 6 C.R.S." *Id.*[1]  The

response must "identify whether any conflict exists, request any additional time

needed to investigate, and add any claims the Public Defender finds to have

arguable merit." *Id.*

This Court has never interpreted the standard for appointment of counsel set

forth in the Rule.  However, this Court has indicated that claims that are "not

wholly unfounded" meet this threshold.  *Silva v. People*, 156 P.3d 1164, 1168

(Colo. 2007); *Duran v. Price*, 868 P.2d 375, 379 (Colo. 1994).  The language of

the Rule, while setting a low bar, is not crystal clear.

"Though the rule appears to outline a detailed approach to handling pro se

motions for postconviction relief," some divisions of the court of appeals have

"observe[d] gaps in the scheme that require the court to fill in[.]"  *People v. Terry*,

2019 COA 9, ¶ 13, 488 P.3d 459, 465.  Divisions have recognized that a motion

survives summary denial, and thus qualifies for appointment of counsel, if "it

contains at least one potentially meritorious claim."  *People v. Nozolino*, 2023

---

[1] Section 21-1-104(1)(b) requires the state public defender to "Prosecute any
appeals or other remedies before or after conviction that the state public defender
considers to be in the interest of justice[.]"

11

COA 39, ¶ 34, 533 P.3d 966, 970; *Terry*, ¶ 19, 488 P.3d at 465. Mr. Townsell's

division, however, required strict adherence to the pleading requirements by a pro

se petitioner, and a detailed argument about how he was prejudiced by his

counsel's failure to investigate DNA evidence.

Two different divisions of the court of appeals and the postconviction court

all agree that Mr. Townsell's trial attorney erred in his handling of the DNA

evidence. The division on direct appeal determined that "defense counsel failed to

seek a ruling concerning the alleged discovery violation," "did not

contemporaneously object to the challenged DNA evidence when it was offered,"

and misread the timely disclosed DNA report. *Townsell I*, ¶¶ 20, 24. The

postconviction court ruled that "even if trial counsel's performance was deficient

for failing to move to continue the trial date and investigate," the petition failed to

properly allege prejudice. CF, p 1279. And as Judge Schutz explained, "The

postconviction court and the majority also assume that the evidence supports the

conclusion that Townsell presented facts that, if proved, support a finding that his

counsel's failure to retain a DNA expert was below an objective standard of

reasonableness and therefore deficient. I agree with that conclusion." *Opinion*, ¶

37.

12

In other words, Mr. Townsell's claim has merit.  Yet he was denied his opportunity to develop that claim.  In a case where seven judges agree that counsel erred, and the non-DNA evidence seemingly disproves the prosecution's case, an incarcerated and indigent man has been deprived of his right to pursue meritorious postconviction claims.

Judge Schutz explained the insurmountable burden the majority placed on Mr. Townsell in this case: "Townsell is, by all appearances, indigent, and he is in prison.  It is unrealistic to expect that a person in his situation has the financial means or connections to retain a DNA expert, obtain access to the physical evidence for testing, and then present actual DNA evidence in support of a pro se petition." *Opinion*, ¶ 41.  Judge Schutz continued, "The net effect of such reasoning is to deprive a defendant of an evidentiary hearing because of the failure to present the evidence that he claims trial counsel failed to procure in the first instance." *Id.*  He concluded, "Such a result is contrary to the structure of Crim. P. 35(c), which contemplates the appointment of legal counsel for an indigent defendant so that such allegations can be developed factually and tested with the benefit of an actual evidentiary hearing." *Id.*

This Court has not directly addressed whether Crim. P. 35(c) requires a

13

different standard for appointment of counsel than for granting a hearing on the motion. The plain language of the Rule, however, indicates that the standard differs. This is because the Rule directs multiple procedural steps. The first step requires appointment of counsel upon receipt of a proper motion containing a meritorious claim. A later step, which occurs after supplemental pleadings by counsel and a response from the People, requires a "prompt hearing on the motion, unless, based on the pleadings, the court finds that it is appropriate to enter a ruling containing written findings of fact and conclusions of law." Crim. P. 35(c)(3)(V). "[T]he procedures mandated by Crim. P. 35(c)(3)(V) inure to the defendant's benefit." *People v. Davis*, 2012 COA 14, ¶ 14, 272 P.3d 1167, 1170. As Judge Schutz thoughtfully articulated, "the rule recognizes that a pro se incarcerated defendant may not be in a position to fully develop the factual and legal basis for their petition." *Opinion*, ¶ 29.

Case law, rooted in the constitutional right to effective assistance of counsel, also supports a different standard for appointment of counsel. This Court explained decades ago, "the assistance of counsel is *essential* in post-conviction proceedings, unless the asserted claim for relief is *wholly unfounded*." *People v. Hubbard*, 184 Colo. 243, 248, 519 P.2d 945, 948 (1974) (emphasis added). This

14

Court further acknowledged that, "as a practical matter, without the assistance of counsel, a convicted defendant would be hard-pressed to assemble into a single [postconviction] motion all of the legal arguments which might result in post-conviction relief." *Id.* This Court has also articulated the two-part process for appointment of counsel on postconviction motions. First, the trial court must appoint the Public Defender's Office when the "petition is not wholly unfounded." *Silva*, 156 P.3d at 1168. Next, court-appointed counsel must determine whether the petition has "arguable merit." *Id.* These procedures must occur before the court determines whether a hearing should be granted.

The United States Supreme Court also acknowledged that Colorado's postconviction rules require appointment of counsel "if the claims *have some merit to them* or the state habeas trial court deems the record worthy of further development." *Martinez v. Ryan*, 566 U.S. 1, 15 (2012) (citing Colorado's rule) (emphasis added). The Supreme Court stressed, "While confined in prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the record." *Id.* at 12. This is "of particular concern when the claim is one of ineffective assistance of counsel." *Id.* When a prisoner is not provided counsel during an initial-review collateral

15

proceeding, "[t]he prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law." *Id.*

A differing standard for appointment of counsel also gives credence to this Court's repeated mandate that "Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Jones v. Williams*, 2019 CO 61, ¶ 5, 443 P.3d 56, 58; *see People v. Bergerud*, 223 P.3d 686, 696-97 (Colo. 2010). As Judge Schutz explained, due to the "importance of the DNA issues in this case," Mr. Townsell deserves an opportunity to develop his claims with the assistance of an attorney.

This Court should issue a writ to review the opinion and clarify the threshold standard for appointment of counsel for a postconviction motion.

**II.  The Division Decided a Question of Substance in a Way Not in Accord With Decisions of This Court Because It Denied Mr. Townsell a Hearing Even Though He Sufficiently Alleged Deficient Performance and The Record Does Not Refute His Claim of Prejudice**

The availability of DNA evidence in this case is critical. In his pro se motion, Mr. Townsell alleged that counsel failed to request DNA testing of the

16

items closest to the robber's skin.  Mr. Townsell alleged, "had [counsel] done so, he would have discovered *substantial evidence of defendant's exclusion*."  CF, p 1261.  And reading the allegations broadly, as this Court's caselaw requires, Mr. Townsell fairly alleged that "if Townsell's counsel had retained a DNA expert, that expert could have tested the same pieces of physical evidence analyzed by the prosecution's expert, as well as the other evidence that the prosecutor's expert apparently did not test, and that DNA evidence would have exonerated Townsell." *Opinion*, ¶ 39.  As Judge Schutz explained, "it is also a fair interpretation of the petition that Townsell was asserting that the DNA evidence would have supported his alternate suspect theory." *Id.*  Yet the majority here required Mr. Townsell to state with specificity that an expert was available and willing to testify to this fact.  Particularly in the case of DNA evidence—technical evidence that can only be introduced at trial through an expert—the majority's holding is in direct contravention of this Court's precedent.

This Court "has repeatedly held that a postconviction court must hold an evidentiary hearing on a Crim. P. 35(c) motion 'unless the motion, the files, and the record clearly establish that the allegations in the motion lack merit and do not entitle the defendant to relief.'"  *People v. McGlaughlin*, 2018 COA 114, ¶ 24, 428

17

P.3d 691, 697 (quoting *Kazadi v. People*, 2012 CO 73, ¶ 17, 291 P.3d 16)).  A postconviction court is "required to hold further proceedings if the defendant's Crim. P. 35(c) motion has merit."  *Silva*, 156 P.3d at 1169.

Where a petitioner is "able to identify 'seemingly unusual or misguided action' by his counsel and 'plausible options,' for the defense of his client that counsel did not pursue" the petitioner must be afforded an opportunity to prove those claims at a hearing.  *Ardolino*, 69 P.3d at 79 (quoting *Massaro v. United States*, 538 U.S. 500 (2003) and *Strickland v. Washington*, 466 U.S. 674, 690–91 (1984)).  Mr. Townsell has done so here.

## CONCLUSION

Mr. Townsell requests that this Court issue a writ of certiorari to review the opinion.

Respectfully submitted,

s/ Krista A. Schelhaas
Krista A. Schelhaas, #36616

18

# CERTIFICATE OF SERVICE

I certify that on the 6th day of February 2024, a copy of the foregoing

PETITION FOR WRIT OF CERTIORARI was filed through the Colorado Courts

E-Filing System, with a copy checked to be sent to the Office of the Attorney

General, Criminal Division.

s/ Krista A. Schelhaas
Krista A. Schelhaas

APPENDIX

*People v. Townsell*, (Colo. App. No. 21CA2068, Nov. 16, 2023) (not published pursuant to C.A.R. 35(e))