| | |
|---|---|
| Supreme Court, State of Colorado<br>2 East 14th Ave., Denver, CO 80203<br><br>On Writ of Certiorari; Colorado Court of Appeals Case Number 21CA2068; Division III; Opinion by Judge Johnson; J. Jones, J., concurs; Schutz, J., dissents<br><br>Arapahoe County District Court;<br>Honorable Shay K. Whitaker;<br>Case Number 13CR2039 | DATE FILED<br>December 16, 2024 5:15 PM<br>FILING ID: DE06F29CC3064<br>CASE NUMBER: 2023SC924 |
| Petitioner<br>JAMALE D. TOWNSELL,<br><br>v.<br><br>Respondent<br>THE PEOPLE OF THE STATE OF COLORADO. | |
| Attorneys for Petitioner<br>Hollis A. Whitson, Reg. No. 32911 (ADC)<br>SAMLER AND WHITSON, P.C.<br>1600 Stout Street, Suite 1400<br>Denver CO 80202<br>(303) 670-0575<br>hollis@samlerandwhitson.com<br><br>Krista A. Schelhaas, Reg. No. 36616 (ADC)<br>Schelhaas Law LLC<br>PO Box 621355<br>Littleton, CO 80162<br>(303) 803-4750<br>kschelhaas@comcast.net | Case No. 23SC924 |
| OPENING BRIEF | |

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of C.A.R. 28 and C.A.R. 32, including all formatting requirements set forth in these rules. Specifically, the undersigned certifies that:

1.  The brief complies with the applicable word limits set forth in C.A.R. 28(g).  It contains 9,481 words.

2.  The brief complies with the standard of review requirements set forth in C.A.R. 28(a)(7)(A).  For each issue raised by the appellant, the brief contains under a separate heading before the discussion of the issue, a concise statement:  (1) of the applicable standard of appellate review with citation to authority; and (2) whether the issue was preserved, and, if preserved, the precise location in the record where the issue was raised and where the court ruled, not to an entire document.

I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of C.A.R. 28 and C.A.R. 32.

s/ Krista A. Schelhaas
Krista A. Schelhaas

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................v

STATEMENT OF THE ISSUES..........................................................................1

THE PROCEEDINGS ........................................................................................1

SUMMARY OF ARGUMENT ...........................................................................6

ARGUMENT ......................................................................................................8

    **I.**    **The standard for appointment of counsel under Rule 35(c)(3)(IV) differs from that for granting a hearing under Rule 35(c)(3)(V)** ...8

        A.    Standard of Review and Preservation..........................................8

        B.    Constitutional Framework ...........................................................9

        C.    Legal Framework .....................................................................12

                1.    Paragraph (IV) sets a low bar for appointment of counsel ..................................................................................14

                2.    A petitioner need not allege prejudice in the pro se petition ...........................................................................21

                3.    Because of its plain language and history, paragraph (V) serves different purposes than the court's initial screening of pro se petitions in paragraph (IV). .............................25

        D.    Petitions involving experts and DNA raise special concerns...28

        E.    Colorado is not an outlier among our sister states....................32

**II.    Mr. Townsell was entitled to counsel and a hearing**......................35

    A.    Standard of Review and Preservation.......................................35

    B.    Additional Facts ......................................................................35

    C.    Mr. Townsell's claims weren't wholly unfounded under
        paragraph (IV), so counsel should have been appointed ..........38

    D.    The cases cited by the majority are unpersuasive.....................42

    E.    Mr. Townsell's allegations were sufficient to entitle him to an
        evidentiary hearing...................................................................44

CONCLUSION.................................................................................................45

# TABLE OF AUTHORITIES

**Cases**

*Anders v. California,* 386 U.S. 738 (1967)...............................................................15

*Ardolino v. People*, 69 P.3d 73 (Colo. 2003)............................... 4, 10, 12, 22-23, 45

*Bagwell v. State*, 763 S.E.2d 630 (S.C. Ct. App. 2014)...........................................31

*Brine v. State,* 232 A.2d 88 (Me. 1967).................................................................15

*Brinklow v. Riveland*, 773 P.2d 517 (Colo. 1989) .....................................................19

*Charboneau v. State,* 102 P.3d 1108 (Idaho 2004)....................................................34

*Charlton v. State*, 987 S.W.2d 862 (1998)...............................................................33

*Commonwealth v. Kelsey,* 206 A.3d 1135 (Pa. 2019) ...............................................34

*Conwell v. Woodford*, 312 Fed.Appx. 58 (9th Cir. 2009) .........................................29

*Douglas v. California*, 372 U.S. 353 (1963).............................................................10

*Duran v. Price*, 868 P.2d 375 (Colo. 1994)..............................................................19

*Elmore v. Ozmint,* 661 F.3d 783 (4th Cir. 2011) .................................................29, 31

*Gideon v. Wainwright,* 372 U.S. 335 (1963) ...............................................................9

*Giles v. State*, 572 S.W.3d 137 (Mo. Ct. App. 2019) ...............................................32

*Griffin v. Illinois*, 351 U.S. 12 (1956)......................................................................10

*Hagos v. People*, 2012 CO 63, 288 P.3d 116 ..........................................................24

*Haines v. People*, 169 Colo. 136, 454 P.2d 595 (1969) ...........................................15

# TABLE OF AUTHORITIES

**Cases**

*Hayes v. State,* 969 S.W.2d 943 (Tenn. Crim. App. 1997)....................................33

*Hinton v. Alabama,* 571 U.S. 263 (2014) ...................................................... 28-29

*Hutchinson v. People*, 742 P.2d 875 (Colo. 1987) ................................................28

*Jones v. Williams*, 2019 CO 61, 443 P.3d 56........................................................20

*Kazadi v. People*, 2012 CO 73, 291 P.3d 16 .........................................................44

*Kimmelman v. Morrison,* 477 U.S. 365 (1986) ................................................28, 31

*Kostal v. People*, 167 Colo. 317, 447 P.2d 536 (1968) ....................................15, 19

*Martinez v. Ryan,* 566 U.S. 1 (2012) .......................................................................9

*McCoy v. Wisconsin Court of Appeals*, 486 U.S. 429 (1988) ................................16

*McEachern v. State*, 456 A.2d 886 (Me. 1983).....................................................33

*People v. Aguilar*, 2012 COA 181, 317 P.3d 1255........................................... 42-43

*People v. Bergerud*, 223 P.3d 686 (Colo. 2010)....................................................20

*People v. Breaman*, 939 P.2d 1348 (Colo. 1997) .............................................15, 17

*People v. Cali*, 2020 CO 20, 459 P.3d 516.............................................................35

*People v. Chambers*, 900 P.2d 1249 (Colo. App. 1994) ..........................................4

*People v. Clark,* 214 P.3d 531 (Colo. App. 2009)...................................................31

*People v. Corson*, 2016 CO 33, 379 P.3d 288.........................................................8

# TABLE OF AUTHORITIES

**Cases**

*People v. Davis*, 2012 COA 14, 272 P.3d 1167......................................................20

*People v. Duran*, 2015 COA 141, 382 P.3d 1237 ....................................................4

*People v. Hodges*, 912 N.E.2d 1204 (Ill. 2009)................................................ 34-35

*People v. Hubbard*, 184 Colo. 243, 519 P.2d 945 (1974) ......................................14

*People v. Hutton*, 183 Colo. 388, 517 P.2d 392 (1973)..........................................26

*People v. Lopez*, 2015 COA 45, 399 P.3d 129 ......................................................44

*People v. Lopez,* 2024 CO 50, 553 P.3d 203 ..........................................................24

*People v. Lyons*, 196 Colo. 384, 585 P.2d 916 (1978) ...........................................19

*People v. Marks*, 2015 COA 173, 374 P.3d 518.....................................................40

*People v. McDowell*, 219 P.3d 332 (Colo. App. 2009) ...........................................4

*People v. Segura*, 2024 CO 70, 558 P.3d 234 .................... 7-9, 11-12, 16-17, 35, 43

*People v. Smith*, 2024 CO 3, 541 P.3d 1191.......................................................7, 43

*People v. Townsell*, 14CA1225, Apr. 5, 2018 (not published pursuant to C.A.R. 35(e)) (*Townsell I*) .................................................................................... 3, 37-38

*People v. Townsell*, 21CA2068, Nov. 16, 2023 (not published pursuant to C.A.R. 35(e)) (*Townsell II*) .................................................................. 4-6, 21, 38, 41, 44

*People v. Trujillo*, 190 Colo. 497, 549 P.2d 1312 (1976).......................................26

*People v. Washington*, 2014 COA 41, 345 P.3d 950................................................4

# TABLE OF AUTHORITIES

**Cases**

*People v. Zuniga*, 80 P.3d 965 (Colo. App. 2003)............................................ 42-43

*Ramirez v. State*, 89 A.3d 836 (R.I. 2014)..............................................................32

*Roberts v. People*, 158 Colo. 76, 404 P.2d 848 (1965) ..........................................26

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000)............................................................24

*Ross v. Moffitt,* 417 U.S. 600 (1974) ......................................................................10

*Silva v. People*, 156 P.3d 1164 (Colo. 2007)...........................................4, 12, 16, 17

*State v. Hicks*, 536 N.W.2d 487 (Wis. Ct. App. 1995), a*ff'd on other grounds*, 549
N.W.2d 435 (Wis. 1996)..........................................................................................31

*Strickland v. Washington*, 466 U.S. 668 (1984) .................... 4, 11, 25, 28-29, 31, 41

*Villarreal v. People*, 2012 CO 64, 288 P.3d 125 .....................................................24

*Von Pickrell v. People*, 163 Colo. 591, 431 P.2d 1003 (1967).......................... 18-19

*Weaver v. Massachusetts*, 582 U.S. 286 (2017) .....................................................23

*White v. Denver Dist. Court*, 766 P.2d 632 (Colo. 1988)...................... 16, 18, 44-45

*Wiggins v. Smith,* 539 U.S. 510 (2003)...................................................................29

**Colorado Statutes and Rules**

§ 18-1-410, C.R.S. ...................................................................................9, 12, 17

§ 21-1-101, C.R.S. ...........................................................................................9

# TABLE OF AUTHORITIES

## Colorado Statutes and Rules

§ 21-1-104, C.R.S. ....................................................................15, 16, 26

§ 21-2-101, C.R.S. ................................................................................9

Crim. P. 35(c)................................................................... in passim

Crim. P. 35(c) (1999) .........................................................................26

Crim. P. 35(b) (1965) .........................................................................26

## Other States Statutes and Rules

725 Ill. Comp. Stat. 5/122-2.................................................................34

725 Ill. Comp. Stat. 5/122-2.1(a)(2) ...................................................34

Del. Super. Ct. Crim. R. 61................................................................32

Ky. R. Crim. P. 11.42........................................................................34

Me R. U. Crim. P. 70. ........................................................................33

Mo. Sup. Ct. R. 29.15(e)....................................................................32

N.M. R. Crim. P. 5-802(H)(2)(a) ......................................................32

Nev. Rev. Stat. 34.750(1)..............................................................20, 33

Ohio Rev. Code 120.16......................................................................34

Pa. R. Crim. P. 904 (C) .....................................................................32

# TABLE OF AUTHORITIES

**Other States Statutes and Rules**

R. I. Gen. Laws 1956, § 10-9.1-5................................................................32

S.D. Codified Laws § 21-27-4 ..................................................................33

Tenn. Code § 40-30-106(d)........................................................................32

Tenn. Code § 40-30-107 ............................................................................33

Utah R. Civ. Proc. 65C (h)(3) ....................................................................32

**Other Sources**

ABA *Standards for Criminal Justice: Defense Experts*, 4.3 (3d ed. 2007), available at: https://www.americanbar.org/groups/criminal_justice/resources/standards/dna-evidence/ ...............................................................................................30

ABA *Standards for Criminal Justice: Volume IV*, 22-4.2(a) (2d ed. 1986)............32

ABA *Standards for Criminal Justice* 22–3.4 (1980).........................................18, 45

Brandon L. Garrett, *Judging Innocence,* 108 Colum. L. Rev. 55 (2008)................30

## STATEMENT OF THE ISSUES

1.     Whether the standard for appointment of counsel under Criminal Rule of Procedure 35(c) differs from the standard for granting a hearing.

2.     Whether an indigent pro se petitioner alleging ineffective assistance of counsel for failure to investigate DNA evidence must specify how exculpatory DNA evidence would undermine confidence in the conviction to sustain a Rule 35(c) motion.

3.     Whether petitioner is entitled to postconviction counsel and a hearing to develop his claim that trial counsel rendered ineffective assistance of counsel by failing to investigate DNA evidence.

## THE PROCEEDINGS

This is a "who-done-it" about a masked bank robber. Police believed the robber was Jamale Townsell. This belief was based on limited DNA findings from items found near the stolen money and a car driven by his estranged wife (Ebony Ruffin), and circumstantial phone data evidence. Ms. Ruffin was involved—she was caught leaving the area with the money. The question was: who was the co-perpetrator?

Evidence showed Ms. Ruffin and Mr. Townsell called each other multiple times the morning of the robbery and that their phones were in the same sector

1

near the bank.[1] But Ms. Ruffin called other unknown numbers that morning,[2] the robber used a TracFone,[3] and Mr. Townsell was using his debit card to buy fuel at the time of the robbery.[4]

Mr. Townsell does not match the robber's description. The robber was left-handed,[5] but Mr. Townsell is right-handed.[6] The robber was 5'7" to 5'9",[7] but Mr. Townsell is 6'2".[8] The police had been alerted to investigate Ms. Ruffin's brother, who is 5'7" or 5'9".[9] All this made the DNA issues critical. DNA was the central theme of the prosecutor's closing rebuttal.[10]

Mr. Townsell was convicted of aggravated robbery, felony menacing, and theft, and sentenced to 32 years imprisonment. His convictions were affirmed on

---

[1] TR 3/14/14, pp 76:17-77:7, 80-86; EXs 111(b), 111(e).

[2] EX 103 (PDF, pp 15-37).

[3] TracFones are prepaid phones with no identifying information. TR 3/14/14, pp 96:21-97:11.

[4] TR 3/17/14, pp 209-11; EXs A, 111(j) (PDF, pp 1-7, 94).

[5] EX 1; TR 3/12/14, pp 84:11-85:3; 110:15-20.

[6] TR 3/17/14, pp 65:11-14, 207:16-208:7.

[7] One eyewitness thought the robber was 5'9". Other bank witnesses, a police officer, and the height chart at the bank door all indicated a height of 5'7" to 5'8". TR 3/12/14, pp 56:11-13, 85:22-86:2, 102:10-19, 176:11-177:14.

[8] TR 3/17/14, p 42:12-16.

[9] *Id.*, pp 173:21-174:4, 212:7-13, EX C.

[10] TR 3/18/14, pp 51:7-18 ("[T]he defendant's DNA did not commit this crime without him."), 52:9-10 (insisting DNA evidence was proof beyond a reasonable doubt).

2

appeal. *People v. Townsell*, 14CA1225 (Apr. 5, 2018) ("*Townsell I*").

Mr. Townsell filed a timely pro se petition for postconviction relief under Rule 35(c) and requested counsel. CF 1249-54. He added five single-spaced, typewritten pages to the court-required Form 4—two devoted to ineffective assistance of counsel ("IAC"). CF 1260-61. He explained that trial counsel mistakenly thought the State's DNA evidence was limited to one piece of evidence (pantyhose). Trial counsel "inexplicably failed to follow up with further investigation," did not "adequately investigate," and argued the State had committed a discovery violation even though "[t]he [e]vidence was in discovery all along," as "the court of appeals decision showed" and as "counsel admitted in a statement" on the record. *Id.* Counsel failed to seek a continuance to investigate the overlooked evidence. Mr. Townsell alleged had counsel not "inexplicably failed to follow up with further investigation…he would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence" and had counsel hired an expert, he could have countered and more effectively cross-examined the people's expert. CF 1261.

Calling the assertions "conclusory," the court summarily denied the petition without appointing counsel. CF 1278-79. The court found no

3

*Strickland*[11] prejudice—not because there *was* no prejudice, but because Mr. Townsell hadn't *articulated it* well enough. CF 1279. A divided division of the court of appeals affirmed. *People v. Townsell*, 21CA2068 (Nov. 16, 2023) ("*Townsell II*"). The majority equated the standards to appoint counsel with those for granting an evidentiary hearing. *Id.,* ¶ 22. Citing cases in which the petitioners had counsel and evidentiary hearings,[12] the majority faulted Mr. Townsell's prejudice allegations because the petition didn't state:

- whether a defense DNA expert "would even have been available and willing to testify," *id.*, ¶ 20;

- what a defense expert would have opined about the "evidence the jury heard about a mixed DNA profile on the mask," *id.*, ¶ 17;

- whether a defense DNA expert would testify that "other items recovered by the police" would not have contained Mr. Townsell's DNA, *id.*, ¶ 20; and

---

[11] *Strickland v. Washington*, 466 U.S. 668 (1984).

[12] Petitioners had counsel for at least one claim in *Silva v. People*, 156 P.3d 1164 (Colo. 2007); *Ardolino v. People*, 69 P.3d 73 (Colo. 2003); *People v. Duran*, 2015 COA 141; and *People v. McDowell*, 219 P.3d 332 (Colo. App. 2009); and had a hearing in *People v. Washington*, 2014 COA 41; *People v. Chambers*, 900 P.2d 1249 (Colo. App. 1994). These cases don't address the issue before this Court, which is when counsel should be appointed in the first place.

- how testing of the other items "would have overcome the inculpatory DNA evidence," *id.*, ¶ 19.

The majority ruled that without these particulars, the claim was "conclusory." *Id.*, ¶ 20.

Judge Schutz dissented. He agreed the pro se petition didn't detail what exculpatory evidence a defense expert could have provided. *Townsell II*, ¶ 24 (Schutz, J., dissenting) ("Dissent"). But that did not end the discussion for Judge Schutz. Counsel should have been appointed to investigate, assist "in developing and pursuing his petition," and file the supplemental briefing "contemplated by Crim. P. 35(c)." *Id.*, ¶¶ 24, 46. The determination of the appropriateness of an evidentiary hearing should have been delayed until after these steps, as the rule contemplates. *Id.*, ¶ 46.

Judge Schutz was guided by the rule's plain language requiring that the petition be served on the Office of the Public Defender ("OPD") unless one of four specific exclusionary criteria in Rule 35(c)(3)(IV) exists. *Id.*, ¶¶ 26-27. An incarcerated, pro se defendant like Mr. Townsell doesn't have to "offer specific evidence" in the initial petition. *Id.*, ¶ 31.

Judge Schutz opined that the majority's pleading requirements "place a near insurmountable burden" on the pro se petitioner in a DNA case by demanding that

an incarcerated, pro se defendant produce the very evidence "he claims counsel failed to procure in the first instance." *Id.*, ¶¶ 40, 41. This is "contrary to the structure of Crim. P. 35(c), which contemplates the appointment of legal counsel for an indigent defendant so that such allegations can be developed factually and tested with the benefit of an actual evidentiary hearing." *Id.*, ¶ 42. Judge Schutz found Mr. Townsell's allegations more than sufficient to appoint counsel. *Id.*, ¶¶ 39-44.

**SUMMARY OF ARGUMENT**

Mr. Townsell asks this Court to clarify, consistent with Judge Schutz's persuasive analysis, that there is a very low bar for appointment of counsel in Rule 35(c)(3)(IV) and that paragraph (IV) sets a different standard than that for granting an evidentiary hearing under paragraph (V). A pro se petition alleging IAC (particularly one involving expert witnesses) should pass muster under paragraph (IV) unless it is wholly unfounded and frivolous, meaning it completely lacks arguable merit. For these reasons, and those articulated in Judge Schutz's dissent, this Court should decide that counsel should virtually always be appointed for an indigent pro se petitioner bringing an IAC claim and certainly, here, should have been appointed.

A petitioner's pro se status often comes with obstacles, including

incarceration and educational or intellectual challenges. For this reason, under paragraph (IV), pro se petitions should not be dismissed without counsel just because they appear "bare and conclusory." That is an unfair, unforgiving pleading requirement for "incarcerated defendants who do not have the benefit of an attorney" and who lack resources and legal education.[13]

If the pro se petition substantially complies with Form 4 and identifies at least one of the grounds on the Form 4 checkbox list, the court should move on to paragraph (V). This clarification will ease the burdens on district courts, promote judicial economy, and ensure judicial review of claims counsel deems to have arguable merit. *See People v. Segura*, 2024 CO 70, ¶¶ 29-31; *People v. Smith*, 2024 CO 3. It has the advantage of animating the due process and equal protection concerns that underpin Colorado's choice to eschew a two-tier system of postconviction review where petitioners with counsel are almost always able to surmount paragraph (IV) review, but indigent petitioners can rarely do so.

Mr. Townsell's petition was more than sufficient to warrant referral to OPD. IAC claims are exactly the type of claims Rule 35(c) and the decisions

---

[13] *Dissent*, ¶ 25.

of this Court contemplate should be given a full airing. The presumption for

appointment of counsel has the most force when issues are complex, identity

was contested at trial, and trial counsel's performance surrounding DNA was

undeniably substandard. Because such claims depend on evidence outside the

trial record, they are the quintessential claim requiring a captain of the ship to

investigate, "take a closer look at the motion and determine which claims (if

any) to abandon, supplement, and add." *Segura*, ¶ 29.

Because Mr. Townsell's petition satisfied paragraph (IV)'s low bar, this

Court should reverse and remand to the district court with instructions that it

should refer the motion to OPD and proceed to Rule 35(c)(3)(V).

## ARGUMENT

### I.  The standard for appointment of counsel under Rule 35(c)(3)(IV) differs from that for granting a hearing under Rule 35(c)(3)(V).

### A.  Standard of Review and Preservation

This Court reviews de novo a lower court's construction of Rule 35.

*Segura*, ¶ 21. Mr. Townsell preserved his claims by timely filing his

postconviction motion and requesting counsel. CF 1249, 1253-54.

This Court employs the "same interpretive rules applicable to statutory

construction." *People v. Corson*, 2016 CO 33, ¶ 44. Interpretation begins with the

8

rule's plain language. *Segura*, ¶ 21.

### B.  Constitutional Framework

"The right to the effective assistance of counsel at trial is a bedrock principle in our justice system…the foundation for our adversary system." *Martinez v. Ryan,* 566 U.S. 1, 12 (2012) (quoting *Gideon v. Wainwright,* 372 U.S. 335, 344 (1963)). Without effective counsel, we can have no confidence that the system produced an accurate result or that, even if it did, the proceedings satisfied fundamental notions of fairness.

The General Assembly established OPD and the Office of Alternate Defense Counsel and declared that the legal services provided shall be "commensurate with those available to nonindigents" and in accordance with Colorado ethical rules and the American Bar Association's ("ABA") standards. §§ 21-1-101(a), 21-2-101, C.R.S. But that is not enough. We need mechanisms to ensure that, in a particular case and as a whole, our indigent defense system is doing its job.

That mechanism is judicial review of counsel's performance when a claim is raised that counsel's representation fell below the constitutional minimum. § 18-1-410(1), C.R.S. ("[E]very person convicted of a crime is entitled as a matter of right to make applications for postconviction review."). With very few exceptions, the postconviction stage is the first and only time an IAC claim can be raised and the

9

only avenue for appellate review of that claim. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

Without some provision for indigent prisoners to obtain appointed counsel, the Colorado scheme would be open to the same due process and equal protection concerns expressed in *Douglas v. California*, 372 U.S. 353, 356 (1963), because an indigent's petition would be "initially reviewed on the merits without the benefit of any organization or argument by counsel," while "persons of greater means…[would have] their arguments presented to the court in fully briefed form." *Ross v. Moffitt,* 417 U.S. 600, 608 (1974). In *Griffin v. Illinois*, the Court struck down a law that required an appellant to have a transcript but failed to provide one for indigent appellants. 351 U.S. 12, 18 (1956). The constitutional defect was that nonindigent appellants had counsel and a full transcript, while indigent appellants, proceeding pro se, were denied an adequate appellate review. *Id.* Colorado has set up an analogous system for postconviction IAC claims (a right ostensibly provided to all). It is the only procedure for raising such claims and provides the only appeal of right if those claims are summarily denied. Yet, if district courts employ a too-rigorous standard for appointment of counsel, there could be a vast disparity in the ability of indigents and nonindigents to enjoy that right.

The majority's view, that paragraph (IV) permits a merits review for

10

*Strickland* prejudice while the prisoner is pro se threatens these fundamental fairness principles and risks undermining the very reasons why Colorado has a postconviction review procedure in the first place. *See Segura*, ¶ 31 (Rule 35(c) is not intended to sacrifice claims that have legal merit "based on concerns over judicial economy and limited resources."). By design, the State, having created a right to present a postconviction petition to the district court for initial screening, must work to ensure that all petitioners (not just those with means to hire an attorney) have a full, fair, and equal opportunity to enjoy that right. Colorado does so with a low-bar review at paragraph (IV).

Decisions about *Strickland* prejudice are substantially intermingled with an assessment of how likely it is the defendant is guilty. *See Strickland*, 466 U.S. at 686, 693-94. Denial of counsel based on inadequate pro se *Strickland* allegations poses a great risk that the judge (consciously or unconsciously) will deny counsel based on the judge's assumption that the defendant is guilty anyway.

With a pro se applicant, there is great incentive to simply declare that *Strickland* prejudice was inadequately articulated, relieving the district court of the need to address the claim. Heavy caseloads incentivize dismissal of a prisoner's IAC claim on the easy-to-reach ground that the *Strickland* prejudice allegations are "bare and conclusory." This circular reasoning—that the indigent prisoner is not

11

entitled to counsel to articulate the claims because the claims are not well-articulated—is responsible for Mr. Townsell's current predicament.

This Court has already taken steps toward ensuring full and fair airing of constitutional claims in Colorado postconviction cases *after* counsel is appointed. *See Segura*; *Silva v. People*, 1556 P.3d 1164, 1168 (Colo. 2007). This court needs to clarify that Rule 35 was written to ensure procedural fairness in the preliminary stages of postconviction proceedings. Mr. Townsell urges this Court to rule that, at the appointment-of-counsel decision stage, the district court's focus should be on ensuring that IAC issues receive full and fair consideration (even if, or especially because, they may end up being dismissed without a hearing later in the process).

### C.  Legal Framework

A petitioner filing a postconviction motion must be provided an opportunity to develop the record to establish IAC claims. *See Ardolino*, 69 P.3d at 77 (citing Rule 35(c) and § 18-1-410). "Paragraphs (I) through (IX) of section (c)(3) set forth" that opportunity through the "procedures that govern the filing and resolution of pro se Rule 35(c) motions containing a request for postconviction counsel." *Segura*, ¶ 23.

Paragraph (IV) of Rule 35(c)(3) provides the threshold review that trial courts must undertake. "The court shall promptly review all [timely] motions that

12

substantially comply with Form 4." The court "should consider, among other things," whether the motion:

> (1) "fails to state adequate factual or legal grounds for relief,"
>
> (2) "states legal grounds for relief that are not meritorious,"
>
> (3) "states factual grounds that, even if true, do not entitle the party to relief," or
>
> (4) "states factual grounds that, if true, entitle the party to relief, but the files and records of the case show to the satisfaction of the court that the factual allegations are untrue."

*Id.* If the court determines that "the motion and the files and record of the case" do not meet this threshold standard, "the court shall enter written findings of fact and conclusions of law in denying the motion." *Id.*

Paragraph (V) provides the next steps. If the court does not deny the motion under Paragraph (IV), and the pro se petitioner has requested counsel,

> the court shall cause a complete copy of said motion to be served on the Public Defender. Within 49 days, the Public Defender shall respond as to whether the Public Defender's Office intends to enter on behalf of the defendant pursuant to § 21-1-104(1)(b), 6 C.R.S. In such response, the Public Defender shall identify whether any conflict exists, request any additional time needed to investigate, and add any claims the Public Defender finds to have arguable merit.

Crim. P. 35(c)(3)(V).

This Court granted certiorari to decide whether the standard for appointment

13

of counsel differs from the standard for holding an evidentiary hearing following receipt of counsel's supplement and briefing. How does a pro se petitioner raising an IAC claim meet the threshold requirement in paragraph (IV) without a transcript, the benefit of a law library, investigative tools, or the learned hand of counsel? Does it satisfy due process and equal protection principles to apply the dismissal provision in paragraph (IV) to pro se petitioners? This Court has not squarely addressed these questions.

This Court should conclude that, when evaluating a pro se petition and request for appointed counsel at the paragraph (IV) stage, the standard is less onerous than when the defendant is represented by counsel and the court is deciding whether to hold an evidentiary hearing.

### 1. Paragraph (IV) sets a low bar for appointment of counsel.

Fifty years ago, long before adoption of our modern Rule 35(c), this Court held "the assistance of counsel is *essential* in post-conviction proceedings, unless the asserted claim for relief is *wholly unfounded*." *People v. Hubbard*, 184 Colo. 243, 248, 519 P.2d 945, 948 (1974) (emphasis added). At that time, Rule 35(b) did not require dismissal of successive postconviction petitions. The issue was whether the court could dismiss Hubbard's *sixth* motion on res judicata grounds. The *Hubbard* Court ruled that, because defendants have the right to appointed counsel

14

on a first petition, it would not be unfair to require them to include all claims in that petition: "as a practical matter, without the assistance of counsel, a convicted defendant would be hard-pressed to assemble into a single Crim. P. 35(b) motion all of the legal arguments which might result in post-conviction relief." *Id.* *Hubbard* exemplifies the concern with procedural fairness in the first postconviction petition—including the provision of counsel to raise an IAC claim. This due process rationale persuaded other state courts. *See, e.g.*, *Brine v. State*, 232 A.2d 88, 89 (Me. 1967) (Successive petition bar could not be applied; the prior proceedings did not comport with due process because the pro se petitioner had been held to the same standards as if he had a lawyer.).

Neither *Hubbard* nor the two cases it cited defined "wholly unfounded." In *Haines v. People*, 169 Colo. 136, 454 P.2d 595 (1969), the petitioner had counsel and an evidentiary hearing. In *Kostal v. People*, 167 Colo. 317, 447 P.2d 536 (1968), the claim was successive. Neither case provides any standard for when counsel should be denied. Both were decided decades before adoption of today's rule.

In *People v. Breaman*, 939 P.2d 1348, 1351 n.2 (Colo. 1997), this Court equated section 21-1-104's "no arguable merit" standard and the "wholly frivolous" standard from *Anders v. California*, 386 U.S. 738, 744 (1967). *See*

15

*McCoy v. Wisconsin Court of Appeals*, 486 U.S. 429, 439 n.10 (1988) ("The terms 'wholly frivolous' and 'without merit' are often used interchangeably in the *Anders*, brief context…[and mean] the appeal lacks any basis in law or fact."); *cf. White v. Denver Dist. Ct.*, 766 P.2d 632, 637 n.8 (Colo. 1988) ("unmistakably frivolous allegations").

No case attempted to reconcile the old, pre-rule "wholly unfounded" language with the modern rule, until *Silva*. Without saying so directly, the *Silva* Court suggested the "wholly unfounded" language from its old cases applies to what is now the court's paragraph (IV) determination. 156 P.3d at 1168. Turning to the paragraph (V) determination, the *Silva* Court pointed out that, after the matter is referred, it is up to OPD to apply the "arguable merit" language by following the statutory and ethical duty to only prosecute claims that have arguable merit. *Id.* (citing paragraph (V) and section 21-1-104(2), C.R.S.). The *Silva* Court then held "the court and the state public defender's office must find that a defendant's Crim. P. 35(c) motion has arguable merit before the statutory right to post-conviction counsel is triggered." *Silva*, 156 P.3d at 1168.

Most recently, in *Segura*, this Court clarified that the terms "wholly unfounded" and lacking "arguable merit" are interchangeable. ¶¶ 25, 35. This Court also cited *Breaman*, where it equated "wholly frivolous" and "no arguable

16

merit." *Id.*, ¶ 34. Under *Silva*, *Segura*, and *Breaman*, a petition raising a claim of IAC should be summarily denied only if the district court, in its initial review, concludes the IAC claim, even with assistance of counsel, will remain "wholly unfounded," "wholly frivolous," or "lacking arguable merit."

With this background in mind, this Court must find that Paragraph (IV) sets a low bar.

Paragraph IV focuses on factual and legal "grounds." The "grounds" are spelled out with identical language in section 18-1-410 (1)(a)-(h); Rule 35(c)(2)(I)-(VII); and Form 4. One of these "grounds" must be alleged "in good faith":

- The conviction or sentence is unconstitutional or violates a statute;

- The statute of conviction is unconstitutional or the conduct constitutionally protected;

- The trial court lacked jurisdiction;

- Newly-discovered evidence;

- Any other proper grounds; or

- The sentence has been fully served or release unlawfully revoked.

This Court's Form 4 for pro se litigants says nothing about arguing legal grounds. It contains a checkbox list to identify which of the above ground(s) are

17

being raised. *See* Appendix A.

Under Paragraph (IV), the court reviews the petition to determine whether it will be summarily dismissed or referred for counsel, using a non-exclusive list of considerations:

- The petition fails to state adequate factual or legal grounds.

- The stated legal grounds are not meritorious.

- The stated factual grounds "do not entitle the party to relief."

- The stated factual grounds are not true.

There is no requirement that the statement be supported by case law. Nor is there a requirement that the petitioner explain how the claim will be proven. There certainly is no requirement to allege *Strickland* prejudice.

Since paragraph (IV) was adopted in its current form, this Court has not specified how to apply these four paragraph (IV) considerations, or what additional "things" can be considered. This Court has never required a petitioner to "set forth the evidentiary support for his allegations" but "instead, a defendant need only assert facts that if true would provide a basis for relief…" *White*, 766 P.2d at 635 (citing ABA *Standards for Criminal Justice* 22–3.4 (1980)). "[S]o long as [the factual allegations] are not completely incredible," the motion should not be dismissed. *Von Pickrell v. People*, 163 Colo. 591, 596, 431 P.2d 1003, 1005

(1967).[14]

Some observations are possible from older cases where this Court found the grounds to be "wholly unfounded" and the defendant was not entitled to counsel:

- Defendant's legal theory that because his sentences were concurrent, he was entitled to discharge on the longer sentence upon completion of the shorter sentence, was "wholly unfounded in law." *Brinklow v. Riveland*, 773 P.2d 517, 520 (Colo. 1989).

- Claim was fully resolved in a prior proceeding. *People v. Lyons*, 196 Colo. 384, 386, 585 P.2d 916, 918 (1978).

- Petitioner was wrong that his parole had expired before it was revoked. *Duran v. Price*, 868 P.2d 375, 379 (Colo. 1994).

- Petitioner's claim was successive. *Kostal*, 167 Colo. at 319.

The claims this Court found to be wholly unfounded in these cases bear no resemblance to Mr. Townsell's petition.

Because paragraph (IV) permits courts to consider other "things," this Court should provide guidance about what those "things" might be. Here, legitimate

---

[14] *Von Pickrell* exemplifies the very low bar for the "not completely incredible" standard. There, the claims survived dismissal when the petitioner alleged his attorneys and others coerced him and he was "in a state of tranquilization" when he pleaded guilty.

19

considerations would be that Mr. Townsell is incarcerated with a long sentence, the DNA issues were complex, he was proceeding pro se, and his attorney confessed to having made a mistake on a scientific issue central to the case. In general, the types of other considerations that would militate for appointment of counsel include incarceration, disabilities or illness, language barriers, education or intellectual difficulties, and whether referral to counsel is necessary to ensure a fair postconviction proceeding.[15] The court could simply determine that it needs counsel's briefing to sort out claims that do not appear patently frivolous. The bottom line is the court must send "a complete copy of said motion" to OPD unless the petition is wholly unfounded. Crim. P. 35(c)(3)(IV)-(V).

This Court should reinforce that courts must not judge a pro se litigant's papers too harshly. "Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Jones v. Williams*, 2019 CO 61, ¶ 5; *see People v. Bergerud*, 223 P.3d 686, 696-97 (Colo. 2010). These procedures "inure to the defendant's benefit." *People v. Davis*, 2012 COA 14, ¶ 14. As Judge Schutz

---

[15] Some states have codified such considerations. Nevada includes the severity of the sentence, whether the issues are difficult, and the petitioner's ability to comprehend the proceedings. Nev. Rev. Stat. 34.750(1).

articulated in his thoughtful dissent, "the rule recognizes that a pro se incarcerated defendant may not be in a position to fully develop the factual and legal basis for their petition." *Dissent*, ¶ 29.

### 2. A petitioner need not allege prejudice in the pro se petition.

This Court should make it clear that a pro se petition should not be dismissed at the paragraph (IV) stage on *Strickland* prejudice grounds. Nor should it be dismissed simply because the defendant does not include specific standards and legal terms of art from case authority, such as the prejudice component of a *Strickland* analysis. The pro se petition should not be dismissed simply because the petitioner has not yet sufficiently *alleged* prejudice or because the petition includes merely "conclusory allegations" about prejudice.

Focusing on the written allegations about prejudice distorts the question. The question is not whether the pro se allegations are sufficient to carry the day at the paragraph (V) stage (where OPD must determine the case has arguable merit and persuade the court that an evidentiary hearing is appropriate). The question is whether, at the paragraph (IV) stage, the court is certain that, even after counsel's investigation, analysis, record review, legal research, and writing, the petitioner's claim will still be wholly frivolous.

When judges are allowed to interpose their subjective beliefs about the

21

defendant's guilt, the focus is taken off the impact trial counsel's ineffectiveness had on the fundamental fairness of the trial. The too-early application of *Strickland* prejudice undermines procedural fairness in deciding the petitioner's one-and-only postconviction motion (and one-and-only opportunity to raise IAC and enjoy an appeal of right on that issue). Allowing counsel to be denied based on *Strickland* prejudice grounds elevates guilt-at-trial considerations at the expense of fairness-in-the-postconviction-proceeding concerns. Even if not explicitly contemplated by the *Strickland* rule or the language of Rule 35(c)(IV), the too-early application of *Strickland* at the paragraph (IV) stage can reasonably be seen as conditioning courts to believe that evidence of guilt largely dictates the outcome of the court's paragraph (IV) screening decision.

*Ardolino* is instructive. This Court required the petitioner to merely allege the acts or omissions, not the prejudice:

> If a criminal defendant has alleged acts or omissions by counsel that, if true, could undermine confidence in the defendant's conviction or sentence, and the motion, files, and record in the case do not clearly establish that those acts or omissions were reasonable strategic choices or otherwise within the range of reasonably effective assistance, the defendant must be given an opportunity to prove they were not.

*Ardolino*, 69 P.3d at 77. That standard requires the petitioner to "allege acts or omissions" that "*could* undermine confidence" in the conviction. *Id.* (emphasis

22

added). It does not require a petitioner to specify what the investigation will show and certainly does not require a pro se petitioner to set forth a detailed factual prejudice analysis.

In *Ardolino*, the defendant had counsel. The question was whether an evidentiary hearing was required. Mr. Townsell's petition was dismissed before he had a chance to get to that stage.

A pro se petitioner should not be expected to understand the nuances of *Strickland*'s prejudice standard. A pro se petitioner certainly would not apprehend the difference between *alleging* prejudice (in the petition) and *showing* prejudice (at the hearing with assistance of counsel).

Form 4 merely instructs petitioners to "list each and every fact you feel supports that claim." Appendix A, ¶ 8. It says nothing that would alert a pro se petitioner to allege facts to establish prejudice or to apply *Strickland* to the facts.

Even if petitioners could be instructed to include *Strickland* allegations, that would be impossible in all but the rarest of circumstances. *Strickland* prejudice is a nuanced, multilayered concept difficult for even a seasoned attorney to master. The Supreme Court has repeatedly recognized that "the concept of prejudice is defined in different ways depending on the context in which it appears." *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017). Whether the test involves actual or

23

presumed prejudice, for example, "turns on the magnitude of the deprivation of the right to effective assistance of counsel." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000). When the attorney's ineffectiveness is pervasive, prejudice is presumed, but when it is episodic, more is required. There are different standards for assessing the impact on the proceeding from an attorney's conflict of interest, depending on whether it is a multiple-party representation conflict, a successive representation conflict, or an attorney self-interest conflict; the test for an adverse impact on performance is not a *Strickland* prejudice test at all. *See People v. Lopez,* 2024 CO 50.

Pro se litigants deprived of the scrutinizing eye of appointed counsel have no realistic way to conduct necessary legal research and develop a prejudice argument, even if somehow they are aware of the technical legal requirement to allege it. For example, a pro se petitioner would probably not know that a direct appeal determination that instructional error did not constitute plain error does not control the *Strickland* prejudice determination. *See Villarreal v. People*, 2012 CO 64; *Hagos v. People*, 2012 CO 63. *Strickland* prejudice is an inscrutable concept, hard for lawyers and judges to grasp and far beyond the kin of pro se incarcerated petitioners.

The *Townsell II* majority underestimates the near impossibility of a pro se

24

petitioner identifying and assessing prejudice. As observed by Justice Marshall in *Strickland*, "seemingly impregnable cases can sometimes be dismantled by good defense counsel. On the basis of a cold record, it may be impossible for a reviewing court confidently to ascertain how the government's evidence and argument would have stood up against rebuttals and cross-examination by a shrewd, well-prepared lawyer." 466 U.S. at 710 (Marshall, J., dissenting). Indeed, the "evidence of injury to the defendant may be missing from the record precisely because of the incompetence of defense counsel." *Id.*

### 3.  Because of its plain language and history, paragraph (V) serves different purposes than the court's initial screening of pro se petitions in paragraph (IV).

Paragraph (V) directs that the Court "shall grant a prompt hearing on the motion unless, based on the pleadings, the court finds that it is appropriate to enter a ruling containing written findings of fact and conclusions of law." Crim. P. Rule 35(c)(3)(V). This directive comes after OPD has entered an appearance, requested any additional time needed to investigate, and added any claims it finds to have arguable merit. *Id.* It also prescribes a pleading schedule: "the court shall direct the prosecution to respond to the defendant's claims or request additional time to respond within 35 days and the defendant to reply to the prosecution's response within 21 days. The prosecution has no duty to respond until so directed by the

25

court." *Id.*

Paragraph (V) did not exist until 2004.

Before 1999, there was no language about appointment of counsel:

> Unless the motion and the files and record of the case show to
> the satisfaction of the court that the prisoner is not entitled to
> relief, the court shall cause notice thereof to be served on the
> prosecuting attorney, grant a prompt hearing thereon, determine
> the issues and make findings of fact and conclusions of law
> with respect thereto.

*Roberts v. People*, 158 Colo. 76, 79, 404 P.2d 848, 849 (1965) (quoting Crim. P.

35(b) (1965)). Over time, this Court restated this as a requirement for a hearing

"unless the motion, the files and record 'clearly establish that the allegations

presented in the defendant's motion are without merit and do not warrant post-

conviction relief.'" *People v. Trujillo*, 190 Colo. 497, 499, 549 P.2d 1312, 1313

(1976) (quoting *People v. Hutton*, 183 Colo. 388, 517 P.2d 392 (1973)).

In 1999, language was added referring the petition to OPD at the same time

it was sent to the prosecution: "If the petitioner has requested counsel and the court

has not summarily determined that the prisoner is not entitled to relief, then the

court shall also refer a copy of the motion to the public defender's office for

consideration pursuant to § 21-1-104(1)(b), 6 C.R.S." Crim. P. 35(c) (1999).

In 2004, the rule was restructured and for the first time, the referral to

26

counsel expressly preceded the prosecution's response and the court's decision

about whether to grant an evidentiary hearing. Now, the rule sets forth the

sequence this Court endorsed in *Segura*:

- Review for substantial compliance with Form 4;

- Referral to OPD for any motion that is not wholly unfounded;

- Opportunity for OPD to investigate and supplemental the motion;

- Responsive pleadings from the prosecution and OPD; and

- Judicial determination about which, if any, claims require an
  evidentiary hearing.

*See* Appendix B.

Viewed this way and honoring the rule's plain language, the differing

standards for appointment of counsel and for a hearing become clear. They were

separated into different steps with different requirements. Counsel is appointed if

the petition meets the baseline of substantial compliance with Form 4 requirements

and is not wholly unfounded/frivolous. The hearing decision comes after

investigation and full briefing.

Following the plain language of the rule allows avoidance of constitutional

concerns that are reflected when a "merits-first" procedure, complete with

sophisticated pleading requirements that require claims to be couched in legalese.

27

Screening pro se petitions with too heavy a hand defeats the goals underlying

provision of counsel for indigent litigants—fundamental fairness, confidence in the

outcome of the postconviction proceeding, and judicial economy.

### D.  Petitions involving experts and DNA raise special concerns.

Without the rich detail that appointed counsel would have provided, Mr.

Townsell alleged he did not match the robber's description and defense counsel

failed to investigate DNA. This fully stated a claim. Defense counsel's failure to

understand scientific reports or hire an expert when needed violates the most

fundamental of constitutional requirements for minimally adequate

representation—the constitutional command that defense strategy must be based on

reasonable investigation. *Kimmelman v. Morrison*, 477 U.S. 365 (1986). Trial

counsel "has a duty to make *reasonable* investigations," *Strickland,* 466 U.S. at

691 (emphasis added), and to familiarize themselves with discovery, *Kimmelman,*

at 384-86; *Hutchinson v. People*, 742 P.2d 875, 881 (Colo. 1987) ("[A] proper

investigation is essential for adequate representation."). Defense counsel's choices

are reasonable only if based on a reasonable investigation. *See Hinton v. Alabama,*

571 U.S. 263 (2014).

Many decisions find IAC when defense counsel mishandled experts or failed

to hire proper defense experts. *See, e.g., id.* at 263 (counsel failed to seek

28

additional funding for a ballistics expert); *Wiggins v. Smith*, 539 U.S. 510 (2003) (counsel failed to recognize the significance of records in their possession); *Elmore v. Ozmint*, 661 F.3d 783, 786 (4th Cir. 2011) (counsel "blind[ly] accept[ed] the State's forensic evidence" and failed to investigate); *Conwell v. Woodford*, 312 Fed.Appx. 58, 60 (9th Cir. 2009) (counsel's decision to rely "solely on cross-examination of the prosecution's expert forensic pathologist was not a reasonable strategic choice because it was not based on a thorough investigation of the available options").

While it is not "automatic" IAC when no expert is hired, "[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Hinton*, 571 U.S. at 273. This was one of those cases.

Without postconviction counsel's investigation, the court could not know why defense counsel neither had a DNA expert review the reports, test the evidence, nor provide trial testimony. We know that counsel's lack of awareness about state funding requirements has been called a "quintessential example of unreasonable performance under *Strickland.*" *Id.* at 274. The type of claim that Mr. Townsell raises cannot be "wholly frivolous."

The devastating impact of counsel's failure to hire an expert is apparent

29

from the files and record of this case and from Mr. Townsell's allegations. DNA often stands alone in its importance, as it did here. In ruling that there is a low bar for appointment of counsel, this Court must consider that many postconviction claims concern not only experts, but DNA experts. This places a special responsibility on the reviewing court to realize that the pro se petitioner has no effective or even competent way to present these issues from his or her prison cell.

Since the first highly publicized exoneration in England in 1986, where DNA evidence showed that a man who confessed to two rape-murders was not the perpetrator, DNA analysis has become an important tool not only to fight crime, but to exonerate the innocent. Brandon L. Garrett, *Judging Innocence,* 108 Colum. L. Rev. 55, 63 (2008). Since 2007, the ABA has recommended, "Expert assistance should be provided to an indigent defendant at government expense prior to and during trial if there is reason to believe that the prosecution will present DNA evidence or if expert assistance may lead to the discovery of relevant evidence." ABA *Standards for Criminal Justice: Defense Experts*, 4.3 (3d ed. 2007).[16]

In today's courtrooms, jurors expect to see scientific and DNA evidence, and

---

[16] Available at:
https://www.americanbar.org/groups/criminal_justice/resources/standards/dna-evidence/

when presented, that evidence is given great weight. *See People v. Clark*, 214 P.3d 531, 536 (Colo. App. 2009) ("DNA evidence has obvious value to the criminal justice system.").

Failing to obtain independent DNA testing and hire an expert in Mr. Townsell's case was deficient representation. *See, e.g.*, *Elmore*, 661 F.3d at 861-62 (counsels' failure to investigate or conduct independent analysis of forensic evidence was constitutionally deficient representation); *State v. Hicks*, 536 N.W.2d 487, 492 (Wis. Ct. App. 1995) (counsel had "no reasoned basis" for failing to seek DNA testing of evidence given its exculpatory potential on a "major issue"), a*ff'd on other grounds*, 549 N.W.2d 435 (Wis. 1996); *Bagwell v. State*, 763 S.E.2d 630, 632-34 (S.C. Ct. App. 2014) (where prosecution theorized defendant cut his face on shattered patio door, counsel's failure to test DNA on the glass was objectively unreasonable).

Counsel's function "is to make the adversarial testing process work in the particular case." *Kimmelman*, 477 U.S. at 384 (quoting *Strickland*, 466 U.S. at 690). In Mr. Townsell's case, that was impossible without counsel reaching out for assistance from a DNA expert. Mr. Townsell's allegations were certainly sufficient to satisfy the low bar for appointment of counsel to investigate and develop this claim.

31

### E.  Colorado is not an outlier among our sister states.

The plain language of the Colorado rule comes into sharper focus when this Court considers that other states use similar models.

There is not a uniform, one-size-fits-all approach. Some states provide appointed counsel for all postconviction petitioners (or those in serious felony cases) and leave it to appointed counsel to screen the case and move to withdraw from those it deems frivolous.[17] This is the ABA's recommended approach: "A rule or a routine practice of judicial evaluation of postconviction applications to determine the sufficiency of the allegations should be avoided." Standard 22-4.2(a), ABA *Standards for Criminal Justice: Volume IV*, Chapter 22: Postconviction Remedies (2d ed. 1986).

Other states forestall involvement of appointed counsel and allow the screening judge to enter a written dialogue with the petitioner about possible amendments to the petition.[18] At least one puts the lion's share of the burden on the

---

[17] *E.g.*, Del. Super. Ct. Crim. R. 61 (counsel *shall* be appointed on first postconviction motions for class A, B, or C felony convictions); Pa. R. Crim. P. 904 (C) (counsel shall be appointed on first postconviction petition); Mo. Sup. Ct. R. 29.15(e); *see Giles v. State*, 572 S.W.3d 137, 138 (Mo. Ct. App. 2019) (appointment of counsel for "indigent, pro se movants is mandatory."); R.I. Gen. Laws 1956, § 10-9.1-5; *see Ramirez v. State*, 89 A.3d 836, 839 (R.I. 2014).

[18] *E.g.*, Tenn. Code § 40-30-106(d); N.M. R. Crim. P., Rule 5-802(H)(2)(a); Utah R. Civ. Proc. 65C (h)(3).

court, providing counsel only after the State has filed an answer and the judge has

decided an evidentiary hearing is necessary.[19] Some expressly consider whether the

postconviction proceeding will be fair absent counsel.[20]

In systems that are most like Colorado's, the preliminary appointment-of-

counsel step is distinct from the more time-consuming tasks of deciding the merits

of the claims, evaluating the State's response, and setting an evidentiary hearing.

The relatively low bar for appointment of counsel expedites the case, relieves the

burden on the judge, and best uses the court's limited time and resources.[21] An

attorney with access to discovery frames the issues (or moves to withdraw where

---

**19** *E.g.*, Ky. R. Crim. P. 11.42; Ohio Rev. Code 120.16(A)(1) and (D).
**20** In South Dakota, counsel "shall" be appointed if "necessary to ensure a full, fair, and impartial proceeding…." S.D. Codified Laws § 21-27-4. Nevada judges consider things like "the severity of the consequences facing the petitioner," the difficulty of the issues, whether the petitioner "is unable to comprehend the proceedings," or whether discovery appears necessary. Nev. Rev. Stat. 34.750(1).
**21** Maine judges screen for very basic filing requirements, looking only at the petition and its attachments to see if it "affirmatively discloses" no ground on which relief "can be granted." Me R. U. Crim. P. 70. The question is whether the "petition, on its face, establishes subject matter jurisdiction and *could be construed* to state any ground upon which post-conviction relief might be granted." *McEachern v. State*, 456 A.2d 886, 889 (Me. 1983)(emphasis added). At the initial screening for appointment of counsel, Tennessee courts take the allegations as true, without regard to other matters contained in the record. *Hayes v. State*, 969 S.W.2d 943, 944 (Tenn. Crim. App. 1997). Only after the appointment of counsel and any supplemental briefing does the judge review the transcripts and record. Tenn. Code § 40-30-107; *Charlton v. State*, 987 S.W.2d 862, 865 (1998).

33

there is no arguable merit).[22] The attorney can explore the possibility of a negotiated resolution. The People can respond to a properly framed, winnowed set of claims in an amended petition, and the court is in a better position to rule efficiently and accurately.

The Idaho Supreme Court cautions trial courts to "keep in mind that petitions and affidavits filed by a *pro se* petitioner will often be conclusory and incomplete. Although facts sufficient to state a claim may not be alleged because they do not exist, they also may not be alleged because the *pro se* petitioner simply does not know what are the essential elements of a claim." *Charboneau v. State*, 102 P.3d 1108, 1111 (Idaho 2004). "[E]very inference must run in the petitioner's favor," because the pro se petitioner "cannot be expected to know how to properly allege the necessary facts." *Id.*, at 1113. Illinois is even more clear: "Argument and citations and discussion of authorities shall be omitted from the petition." 725 Ill. Comp. Stat. 5/122-2. In Illinois' first-stage review, the court may dismiss a petition that is "frivolous" or "patently without merit," 725 Ill. Comp. Stat. 5/122-2.1(a)(2), meaning "no arguable basis either in law or in fact…based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 912

---

[22] *E.g.*, *Commonwealth v. Kelsey*, 206 A.3d 1135, 1139 (Pa. 2019).

N.E.2d 1204, 1212 (Ill. 2009).

Viewed in a national context, Colorado is not an outlier. Colorado's choice to separate the appointment-of-counsel stage and to apply a different standard than for holding an evidentiary hearing minimizes the burden on judges, reduces the risk that a meritorious claim will evade review, protects due process concerns, and reduces delay by providing a more efficient, orderly process for ultimate resolution of claims. *See Segura*, ¶¶ 29-31.

## II.  Mr. Townsell was entitled to counsel and a hearing.

### A. Standard of Review and Preservation

This Court reviews de novo a lower court's summary denial of a postconviction motion. *People v. Cali*, 2020 CO 20, ¶ 14. Mr. Townsell preserved his claims by filing his timely postconviction motion and requesting counsel. CF 1249, 1253-54.

### B.  Additional Facts

From the trunk of Ms. Ruffin's car, police recovered a gun and a shoe. Nearby, police found a discarded bag containing the other shoe, a knit cap made into a mask, a sweatshirt, gloves, pantyhose, a bandana, and the bank's stolen

35

money with its GPS tracking device inside. *Townsell I*, ¶ 3.[23] The government

DNA tested the shoes, pantyhose, bandana, and mask. Of these items, only the

mask was obviously used in the robbery.

Because Ms. Ruffin and Mr. Townsell co-parent a child (who was in the car

when Ms. Ruffin was caught),[24] and his personal items—including his automobile

insurance card[25]—were also in the car, it is no surprise Mr. Townsell's DNA was

found.

Remarkably, the government did not test other key pieces of evidence,

including a duct-tape-wrapped TracFone, a t-shirt, and earbuds. The earbuds were

taped to the t-shirt. The duct tape appeared to have been attached to the robber's

arm.[26]

An August 2013 DNA analysis reported a match between Mr. Townsell's

profile and a sample taken from the pantyhose. CF 547-52. Defense counsel

apparently overlooked that the report also matched the pantyhose DNA to the

shoes and bandana. CF 551. The report also matched the pantyhose DNA to the

---

[23] TR 3/13/14, pp 84-85, 104:7-11, 117:8-19, 128:1-20; EXs 57-60 (PDF, pp 175-77).
[24] TR 3/13/14, pp 20:5-17, 36:1-20.
[25] TR 3/14/14, pp 175:8-9, 179:23-180:15; EX 93-97 (PDF, pp 215-19).
[26] TR 3/13/14, pp 114:16-116:6; EXs 68-69 (PDF, pp 185-86).

DNA mixture found on the mask. CF 551.

Just before trial, in February 2014, the People gave defense counsel an updated DNA report. CF 554. By the time of the pretrial hearing, defense counsel had not reviewed it.[27] The information was essentially the same as that previously provided.[28] By the fourth day of trial, defense counsel had read the report and objected, mistakenly believing it was new information about additional DNA matches. TR 3/14/14, pp 6-7. He explained his entire trial strategy was based on his erroneous belief that the pantyhose contained the only DNA match, and he could easily explain that.[29]

The *Townsell I* division held that counsel was wrong; the information was in discovery all along. ¶¶ 23-24.

The record shows that even though counsel had not read the "new" DNA report before trial, he never understood the earlier report. Counsel did not investigate this information. Nor did he pursue DNA testing on other items that

---

[27] TR 2/28/14, p 4:18-24.

[28] The *Townsell I* division explained that the February report merely confirmed the earlier report's findings. ¶ 24 n.1.

[29] Counsel explained there was no indication pantyhose were used in the robbery and it was not unusual for a husband's DNA to be on his wife's pantyhose. Counsel took no steps to object to the pantyhose on relevancy grounds. TR 3/14/14, pp 7:16-8:5.

37

almost certainly contained the robber's DNA. When his errors came to light at the pretrial conference, he neither asked for a continuance nor hired an expert. He didn't move for a mistrial. Tragically, counsel's investigation of the DNA evidence was woefully inadequate.

### C. Mr. Townsell's claims weren't wholly unfounded under paragraph (IV), so counsel should have been appointed.

Two divisions of the court of appeals and the postconviction court agree that Mr. Townsell's trial attorney botched the DNA issue. *Townsell I* determined "defense counsel failed to seek a ruling concerning the alleged discovery violation," "did not contemporaneously object to the challenged DNA evidence when it was offered," and misread the timely disclosed DNA report. *Townsell I*, ¶¶ 20, 24; *see* CF 1279 (assuming counsel performed deficiently). Judge Schutz explained, "The postconviction court and the majority also assume that the evidence supports the conclusion that Townsell presented facts that, if proved, support a finding that his counsel's failure to retain a DNA expert was below an objective standard of reasonableness and therefore deficient. I agree with that conclusion." *Dissent*, ¶ 37.

This Court should hold that a pro se defendant need not make allegations of *Strickland* prejudice. *Strickland* prejudice is a technical legal argument more

38

appropriately required at paragraph (V) after counsel has had the opportunity to

investigate, review the discovery and the record, conduct legal research, and brief

the issue.

Even if *Strickland* elements are required at the paragraph (IV) stage, Mr.

Townsell's language is more than sufficient. Mr. Townsell asserted in his pro se

motion that had trial counsel hired a DNA expert, it would have made a difference.

CF 1261. He was right. The People's expert did not test items that would have

been closest to the robber's skin. Neither the shirt "worn by the assailant"[30] nor the

earbuds attached to it were tested. Both would be a rich source of DNA:[31]



EX 69, p 186.

---

[30] TR 3/17/14, p 131:10-16.
[31] TR 3/13/14, pp 163:18-164:5.

A phone taped to the assailant's shirt was not tested:[32]



EX 68, p 185.

DNA was the only evidence used to identify Mr. Townsell as the robber. Mr. Townsell did not match the description given by any eyewitness. Nor did he match the characteristics viewable on the surveillance video. The difference between the robber's height (5'7" to 5'9") and Mr. Townsell's (6'2") is significant.

"[J]urors place great emphasis on DNA evidence—so much so that the evidence has long enjoyed a status of 'mythic infallibility' for juries." *People v. Marks*, 2015 COA 173, ¶ 41. DNA was the reason Mr. Townsell was convicted. The failure of counsel to properly investigate the DNA evidence likely affected the outcome of the trial. Had he been excluded as a contributor of DNA from items clearly associated with the robbery, that would have been highly exculpatory. *See Dissent*, ¶¶ 42-44.

---

[32] TR 3/17/14, p 131:20-25, 132:1-6.

There was an alternate suspect. The mask contained a mixture of DNA, which means more than one person's profile was present.[33] Had defense counsel read the discovery correctly and realized the mask held both Mr. Townsell's DNA and another person's DNA, that mask could have been further analyzed by a defense expert. This was critical because, as Judge Schutz opined, "if the mask was made from a stocking cap owned and previously worn by Townsell, one would expect his DNA to be present on it." *Dissent*, ¶ 42. After all, the items used in the robbery were found near or in Ms. Ruffin's car, a place where Mr. Townsell kept his personal items. Following up on the unknown DNA in the mixture was critical.

*Strickland* prejudice does not require counsel's deficient performance to have changed the result at trial. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

The postconviction court called the IAC claim bare and conclusory. CF 1279. It does not appear this Court has ever employed that standard. It is not in the rule. The "bare and conclusory" label is easy to attach but difficult to define. It

---

[33] TR 3/17/14, pp 107:11-13, 149:8-10.

should not be a mechanism to avoid appointment of counsel who could fill in the details.

Especially considering his pro se status, Mr. Townsell's claim was not "bare and conclusory." His claim about his counsel misreading the discovery, failing to investigate, and neglecting to seek a continuance or hire an expert is a specific claim supported by the record.

Against all odds, even in his pro se petition, Mr. Townsell alleged enough to have been provided counsel and allowed to move forward. This Court should find that, applying the standards in paragraph (IV), Mr. Townsell's pro se petition should be referred to OPD.

### D. **The cases cited by the majority are unpersuasive.**

The majority cites only two cases where the defendant did not have counsel: *People v. Aguilar*, 2012 COA 181, ¶¶ 10-12, and *People v. Zuniga*, 80 P.3d 965 (Colo. App. 2003) (cited at ¶¶ 20, 22).  Both are distinguishable. Neither is persuasive.

On direct appeal, the court rejected Aguilar's claim that the DNA testing was improper. *Aguilar*, ¶ 11. In his postconviction petition, Aguilar complained his counsel failed to hire an expert "to observe and rebut" the prosecutor's consumptive DNA testing. *Id.*, ¶ 10. The *Aguilar* division called "facially

speculative" his claim that a defense expert would have mattered. *Id.*, ¶ 12. But the division does not address the question here: whether counsel should have been appointed or whether there is a different standard for granting an evidentiary hearing.

*Zuniga* is also distinguishable. Most of Zuniga's IAC claims concerned law, not fact. 80 P.3d at 973. His only fact-based IAC claim (a failure-to-investigate claim) did not suggest what areas counsel didn't investigate. *Id*. Here, DNA was a central issue at trial, identity was disputed, and the files and record of the case did not disprove that favorable DNA results could have made a difference. *See Dissent*, ¶¶ 24-44.

Perhaps counsel should have been appointed in *Aguilar* and *Zuniga*. Shifting the screening function from the district court to OPD might have saved these courts some time. It does not mean frivolous claims will be presented to the court. Instead, OPD will screen for arguable merit, amend or supplement the petition, and remove any non-meritorious claims as the "captain of the ship." *Smith*, ¶ 30. Far from increasing the burdens on the district courts, it eases them. *See Segura*, ¶ 30.

43

### E. Mr. Townsell's allegations were sufficient to entitle him to an evidentiary hearing.

Under the rule's plain language, once the court finds the petitioner's claim is not wholly unfounded, it must defer its decision on whether an evidentiary hearing is required until after receipt of appointed counsel's supplement. In Mr. Townsell's case, though, his claims would also entitle him to a hearing, which makes his claim that counsel should be appointed even stronger.

Rule 35(c) *presumes* that a postconviction court will hold a hearing on allegations of IAC. *People v. Lopez*, 2015 COA 45, ¶ 71. "This presumption is only overcome if the motion, files, and record *clearly* show that defendant's claims lack merit." *Id.* (emphasis added); *see Kazadi v. People*, 2012 CO 73, ¶ 17. A postconviction court can rely on the record to deny a claim without a hearing only if the record refutes the asserted claim. *White*, 766 P.2d at 637.

Judge Schutz explained, "It is unrealistic to expect that a person in [Mr. Townsell's] position has the financial means or connections to retain a DNA expert, obtain access to the physical evidence for testing, and then present actual DNA evidence in support of a pro se petition." *Dissent*, ¶ 41. He continued, "The net effect of such reasoning is to deprive a defendant of an evidentiary hearing

44

because of the failure to present the evidence that he claims trial counsel failed to procure in the first instance." *Id.* The result is contrary to the rule's plain language. *Id.*

Mr. Townsell's claim was neither baseless nor refuted by the record. It "cannot be dismissed as 'unmistakably frivolous allegations' which would justify dismissal of his petition without an evidentiary hearing." *White*, 766 P.2d at 637 n.8 (quoting ABA *Standards for Criminal Justice* 22–4.2, 22–4.5(b) (1980)). He should not be deprived of a full and fair opportunity to present his claims with the guiding hand of counsel at an evidentiary hearing. *See Ardolino*, 69 P.3d at 79.

## CONCLUSION

Mr. Townsell requests that this Court reverse the postconviction court's order, appoint postconviction counsel, remand for an evidentiary hearing, and grant such other relief as this Court deems necessary.

Respectfully submitted,

s/ Hollis A. Whitson
Hollis A. Whitson, #32911

s/ Krista A. Schelhaas
Krista A. Schelhaas, #36616

45

## CERTIFICATE OF SERVICE

I certify that on the 16th day of December 2024, a copy of the foregoing

OPENING BRIEF was filed through the Colorado Courts E-Filing System, with a

copy checked to be sent to the Office of the Attorney General, Criminal Division.

s/ Krista A. Schelhaas
Krista A. Schelhaas
