The opinion summaries are not part of the Colorado
Supreme Court's opinion.  They have been prepared solely for
the reader's convenience.  As such, they may not be cited or
relied upon.  If there is any discrepancy between the language in
the summary and the opinion, the language in the opinion
controls.

DATE FILED
February 17, 2026
CASE NUMBER: 2023SC924

ADVANCE SHEET HEADNOTE

February 17, 2026

**2026 CO 11**

**No. 23SC924, *Townsell v. People*—Postconviction Appointment of Counsel—
Ineffective Assistance of Trial Counsel—DNA Evidence.**

In this case, the supreme court addresses the standard for the appointment

of postconviction counsel under both Crim. P. 35(c) and *Strickland v. Washington*

466 U.S. 668, 687 (1984).

The court concludes that the defendant's claim was wholly unfounded

because he did not properly allege facts demonstrating prejudice under *Strickland*.

Therefore, the trial court did not err in refusing to appoint postconviction counsel

to assist him. The court therefore affirms the judgment of the court of appeals.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

**2026 CO 11**

**Supreme Court Case No. 23SC924**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 21CA2068

**Petitioner:**

Jamale D. Townsell,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
February 17, 2026

**Attorneys for Petitioner:**
Samler and Whitson, P.C.
Hollis A. Whitson
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
John T. Lee, First Assistant Attorney General
Yaried Hailu, Assistant Attorney General Fellow
    *Denver, Colorado*

**Attorneys for Amicus Curiae Korey Wise Innocence Project:**
Wheeler Trigg O'Donnell LLP
Clarissa M. Collier
Nicole L. Jones
    *Denver, Colorado*

**Attorneys for Amicus Curiae Office of Alternate Defense Counsel:**
The Noble Law Firm, LLC
Antony Noble
Tara Jorfald
*Lakewood, Colorado*

Lynn Noesner
*Denver, Colorado*

**Amicus Curiae Ramsey Lama, Esq., pro se:**
*Cañon City, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court, in which **JUSTICE BOATRIGHT**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined. **JUSTICE GABRIEL**, joined by **CHIEF JUSTICE MÁRQUEZ**, concurred in part and dissented in part.

2

JUSTICE HOOD delivered the Opinion of the Court.

¶1    Jamale D. Townsell was convicted of various crimes for robbing a bank. Following an unsuccessful appeal, Townsell moved the district court for postconviction relief under Crim. P. 35(c), alleging ineffective assistance of trial counsel based on his attorney's alleged failure to properly investigate certain DNA evidence.    The postconviction court summarily denied the motion without appointing counsel, and the majority of a division of the court of appeals affirmed. Because we agree with the division majority that Townsell failed to adequately allege prejudice, we affirm the judgment of the court of appeals.

## I.  Facts and Procedural History

¶2    In June 2013, an armed and masked man robbed the Bank of the West in Aurora.  After jumping over the counter and pointing a handgun at one of two tellers, the man took over $1,000 in cash from the teller's drawer and stashed it in a bank bag, which also contained a Global Positioning System ("GPS") device.

¶3    According to eyewitnesses to the robbery, the suspect was around five feet eight inches tall and left-handed.  Security video footage also shows the suspect wearing a red bandana, a hat with eye and mouth holes cut into it so it could serve as a mask, and black shoes with white soles.  He also had a phone duct taped to his arm and earbuds taped to his T-shirt.

3

¶4    The GPS device led the police to a car belonging to E.R., Townsell's estranged wife.  Upon searching the car, police officers found a black shoe with a white sole and a gun.  Nearby, in the middle of the road, police found the bank bag that, among other things, contained the stolen money, a sweatshirt, a red bandana, the mask, pantyhose, gloves, and a shoe matching the one found in the car.  Officers also obtained Townsell's cell phone records, which showed Townsell's phone had called E.R.'s phone shortly before and shortly after the robbery.  And an expert testified at trial that Townsell's phone was near the bank when the robbery occurred.

¶5    Forensic analysts tested the shoes, pantyhose, bandana, and mask, and the results matched Townsell's DNA.  The results from the pantyhose, bandana, and right shoe showed a single-source profile; meaning, all of the DNA came from one person.  Townsell's genetic profile was a complete match to these single-source profiles.  Of the fifteen locations swabbed for potential DNA in the left shoe, thirteen matched Townsell's genetic profile, a result that, according to expert testimony at trial, was "more rare than 1 in 300 billion."  The mask's testing returned a mixed profile, with a major and minor contributor to the DNA makeup. The minor component left such little DNA it was "basically uninterpretable," but the major component was, once again, a match with Townsell's genetic profile.

4

The prosecution's expert testified that Townsell was the source of the DNA on each item.

¶6    The other items seized—namely, the shirt, phone, earbuds, gloves, and sweatshirt—weren't tested.

¶7    The prosecution charged Townsell with aggravated robbery and other offenses. During pretrial discovery, the prosecution disclosed a report detailing the DNA testing described above. Defense counsel later claimed he misunderstood the report and believed that the prosecution had tested only the pantyhose. About a month before trial, the prosecution sent defense counsel a second DNA report containing essentially the same information as the first. Defense counsel claimed he didn't read the second report until the fourth day of trial.

¶8    During the trial, defense counsel objected to the admission of any DNA evidence other than the pantyhose test results, arguing lack of notice. Defense counsel subsequently disclosed that his entire trial strategy was based on an erroneous belief that the pantyhose contained the only DNA match to Townsell, which he claimed he could "deal with." Because the court concluded that the prosecution had, in fact, properly disclosed the test results, the court overruled the objection and admitted the test results into evidence.

¶9     Although defense counsel argued to the jury that the investigating officers knew there may have been an alternate suspect, given the disparity between Townsell (who is six feet two inches tall and right-handed) and the description of the robber (again, approximately five feet eight inches tall and seemingly left-handed), he presented no testimony in support of this theory.  The jury found Townsell guilty as charged, and the court sentenced him to thirty-two years in the custody of the Department of Corrections.

¶10    On direct appeal, a division of the court of appeals affirmed Townsell's convictions and sentence.  *People v. Townsell*, No. 14CA1225, ¶ 1 (Apr. 5, 2018) ("*Townsell I*").

¶11    Townsell later moved, pro se, for postconviction relief under Crim. P. 35(c), alleging ineffective assistance of trial counsel.[1]  Townsell argued that "[r]easonable performance of counsel includes an adequate investigation of facts[,] . . . viable theories,    and    development    of    evidence,"    and    counsel's    complete

---

[1] To apply for postconviction relief, Townsell, like all pro se defendants seeking Crim. P. 35(c) relief, filled out Form 4.  "Form 4 is a standardized document that appears in the appendix to the Colorado Rules of Criminal Procedure."  *People v. Stanley*, 169 P.3d 258, 260 (Colo. App. 2007).  It requires defendants to check the applicable grounds for the motion from a list and to attach pages stating the grounds and facts supporting each claim.  It specifies that a defendant must include "each and every fact you feel supports that claim" and warns in all caps that "[i]f you do not raise all claims here, the court may not have to entertain later motions for similar relief."  Appendix to the Colo. Rules of Crim. Proc., Form 4, Petition for Postconviction Relief Pursuant to Crim. P. 35(c).

6

misunderstanding of the DNA report was "clear evidence he failed to properly investigate."  Therefore, counsel's choices at trial could not be considered reasonable because he was not "informed of all available options" given his failure to adequately address the DNA evidence.  This allegation of failure to investigate, Townsell contended, "necessitate[d] an evidentiary hearing."  Townsell argued that, once counsel realized he'd misinterpreted the DNA reports, he should have requested a continuance so Townsell could (1) hire an independent expert to test evidence the prosecution had neglected and (2) better defend against DNA results used by the prosecution.  He stated:

> [A]fter learning of new DNA [evidence] against defendant[,] defense counsel still proceeded to rush the trial in violation of defendant[']s right to due process.  Had defense counsel requested a continuance after learning of additional DNA evidence[,] th[e]n a proper defense could have changed the outcome of this case. . . .  With a continuance, counsel could have hired a DNA expert to counter the people[']s expe[r]t and could have had more effective cross-examination of the people's expert.

¶12    The postconviction court denied Townsell's motion on its face without referring it to the Office of the Public Defender ("OPD"), finding that Townsell had failed to allege prejudice, as required by *Strickland v. Washington,* 466 U.S. 668, 687 (1984), because he didn't "identify any facts to explain" what "substantial evidence" his counsel might have found with further DNA testing or "how that substantial evidence would have overcome the substantial DNA evidence the prosecution offered at trial."

7

¶13    Townsell appealed the postconviction court's order, and the majority of a division of the court of appeals affirmed, concluding that Townsell hadn't explained how additional DNA testing could have overcome the weight of the evidence used to convict him. *People v. Townsell*, No. 21CA2068, ¶¶ 19, 23 (Nov. 16, 2023) ("*Townsell II*"). On appeal, Townsell argued that additional DNA testing and a DNA expert's explanation would have revealed that untested items that were closer to the robber's skin (for example, the robber's shirt, the earbuds, and the phone taped to the shirt) would exculpate him because they wouldn't contain Townsell's DNA. *Id.* at ¶¶ 18–19. The division majority, however, concluded that this argument (1) overstated the evidence produced at trial for an alternate suspect;[2] (2) failed to explain how new DNA testing would overcome the evidence containing his DNA; and (3) failed to allege that a DNA expert would be available and able to testify consistently with his allegations. *Id.* at ¶¶ 18–20. Additionally, the division majority concluded there was no reason to believe any new DNA evidence would be more probative than the previously tested evidence. *Id.* at ¶ 17.

---

[2] After defense counsel attempted to state during closing arguments that there was an alternate suspect, the parties had a bench conference during which the court stated that "there was no testimony to support the alternate suspect theory" and "defense counsel was only allowed to argue that the police had 'notice' that there might be an alternate suspect given the disparity between the witnesses' descriptions of the robber's height and Townsell's height." *Townsell II*, ¶ 18.

8

¶14    Judge Schutz dissented based on his belief that Townsell had alleged sufficient facts to warrant forwarding Townsell's motion to the OPD.  *Id.* at ¶ 24 (Schutz, J., dissenting).  As Judge Schutz reasoned, a pro se incarcerated defendant "may not be in a position to fully develop the factual and legal basis for their petition"; therefore, they need only allege "viable facts that, if established at a hearing, would entitle them to relief."  *Id.* at ¶ 29.  Thus, Townsell's allegation that his counsel should have retained a DNA expert to uncover exculpatory evidence sufficed to warrant the appointment of postconviction counsel.  *Id.* at ¶ 24.  Judge Schutz inferred Townsell had asserted that additional DNA evidence would have bolstered Townsell's alternate suspect theory.  *Id.* at ¶ 39.

¶15    Townsell petitioned this court for certiorari review, which we granted.[3]

---

[3] We granted certiorari to review the following issues:

1. Whether the standard for appointment of counsel under Criminal Rule of Procedure 35(c) differs from the standard for granting a hearing.

2. Whether an indigent pro se petitioner alleging ineffective assistance of counsel for failure to investigate DNA evidence must specify how exculpatory DNA evidence would undermine confidence in the conviction to sustain a Rule 35(c) motion.

3. Whether petitioner is entitled to postconviction counsel and a hearing to develop his claim that trial counsel rendered ineffective assistance of counsel by failing to investigate DNA evidence.

## II. Analysis

¶16    After identifying the standard of review, we examine Crim. P. 35(c)'s standard for the appointment of counsel.  We next discuss how a postconviction defendant must plead an ineffective-assistance-of-counsel claim under Crim. P. 35(c) and *Strickland*.  Finally, we turn to the facts of this case and consider whether, given the standard for appointment of counsel and the two-pronged *Strickland* test, the postconviction court should have appointed counsel for Townsell.

### A.  Standard of Review

¶17    We review the division majority's interpretation of Crim. P. 35(c) de novo. *Hunsaker v. People,* 2021 CO 83, ¶ 16, 500 P.3d 1110, 1114.  In doing so, we use the same canons that guide our interpretation of statutes.  *People v. Bueno*, 2018 CO 4, ¶ 18, 409 P.3d 320, 325.  We begin with Crim. P. 35(c)'s plain language, reading it consistently with its plain and ordinary meaning.  *People v. Steen*, 2014 CO 9, ¶ 10, 318 P.3d 487, 490.  If the language is clear, we apply it as written.  *People v. Angel*, 2012 CO 34, ¶ 17, 277 P.3d 231, 235.  If, however,  the rule is unclear, "we must attempt to resolve any ambiguity so as to make our application of the rule consistent with the intent of the rule and fundamental purposes of the Colorado Rules of Criminal Procedure 'to provide for the just determination of criminal proceedings' and 'to secure simplicity in procedure, fairness in administration,

10

and the elimination of unjustifiable expense and delay.'"  *Id.* (quoting *Peterson v. People*, 113 P.3d 706, 708 (Colo. 2005).

## B.  The Standard for the Appointment of Counsel and for Granting a Hearing Under Crim. P. 35(c)

¶18   Both the United States Constitution and the Colorado Constitution guarantee a criminal defendant's right to *trial* counsel.  U.S. Const. amend. VI; Colo. Const. art. II, § 16.

¶19   Although there is no similar right to *postconviction* counsel, there is "a limited statutory right to postconviction counsel for meritorious Crim. P. 35(c) motions."  *Silva v. People*, 156 P.3d 1164, 1168 (Colo. 2007) (explaining that this statutory right arises from a longstanding interpretation of the statutes that created and now govern the OPD, and the legislature's subsequent implied ratification of the right); *see also Duran v. Price*, 868 P.2d 375, 379 (Colo. 1994).

¶20   Meritorious postconviction motions are those that aren't "wholly unfounded."  *Silva*, 156 P.3d at 1168.  A motion isn't wholly unfounded if it contains at least one claim with arguable merit.  *People v. Segura,* 2024 CO 70, ¶ 7, 558 P.3d 234, 237.

¶21   In determining whether a defendant's motion has met this standard, Crim. P. 35(c)(3)(IV) directs courts to

> consider, among other things, whether the motion is timely . . . , whether it fails to state adequate factual or legal grounds for relief, whether it states legal grounds for relief that are not meritorious,

11

whether it states factual grounds that, even if true, do not entitle the party to relief, and whether it states factual grounds that, if true, entitle the party to relief, but the files and records of the case show to the satisfaction of the court that the factual allegations are untrue.

¶22    If the court, based on those considerations, determines that the motion isn't wholly unfounded, and "[i]f the defendant has requested counsel be appointed in the motion, the court shall cause a complete copy of said motion to be served on the [OPD]." Crim. P. 35(c)(3)(V).

¶23    Based on this plain language, the court should appoint postconviction counsel if the defendant has requested counsel and has presented at least one claim in his postconviction motion that isn't "wholly unfounded." *See Segura*, ¶ 35, 558 P.3d at 242. This is a low bar, but a bar nonetheless. Although we broadly construe a pro se defendant's pleadings, understanding that a pro se litigant may be unable "to articulate their argument like a lawyer," *Jones v. Williams*, 2019 CO 61, ¶ 5, 443 P.3d 56, 58, the rule still requires the defendant to provide adequate factual or legal grounds, which if true, would entitle the defendant to relief.

¶24    Once appointed, the OPD typically will investigate the merits of the defendant's postconviction claims and decide if it will represent the defendant in the postconviction proceedings. Crim. P. 35(c)(3)(V). Under section 21-1-104(2), C.R.S. (2025), a public defender isn't required to pursue any remedies unless the public defender is "satisfied first that there is arguable merit to the proceeding."

12

¶25     After the OPD has entered an appearance in the case and both sides have filed their pleadings, "the court shall grant a prompt hearing on the motion unless, based on the pleadings, the court finds that it is appropriate to enter a ruling containing written findings of fact and conclusions of law."  Crim. P. 35(c)(3)(V). At this stage, the court should no longer accept the allegations as true but must instead determine if the defendant has sufficiently proven his claims by a preponderance of the evidence.  *See People v. Naranjo*, 840 P.2d 319, 325 (Colo. 1992).

¶26     The standards for appointing postconviction counsel and holding an evidentiary hearing on a postconviction motion differ.  The first—for appointment of counsel—requires the court to determine if the allegations, assuming they are true, have *arguable* merit.  The second—for holding a hearing—requires the court to conduct a hearing unless "the motion, files, and record in the case *clearly establish* that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief."  *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (emphasis added) ("Because relief for ineffective assistance of counsel requires a criminal defendant to prove both deficient representation and prejudice, denial of the motion without a hearing is justified if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the *Strickland* test."); *see also People v. McDowell,*

13

219 P.3d 332, 340 (Colo. App. 2009) (concluding that the postconviction court didn't err by denying the defendant's Crim. P. 35(c) motion alleging the ineffective assistance of counsel without a hearing because his claims were directly refuted by the trial record).  However, here, we need not address whether Townsell is entitled to a hearing because we conclude in Part E below that his claim was wholly unfounded.

## C.  Determining Arguable Merit: The Interplay of *Strickland* and the Appointment of Postconviction Counsel

¶27    Townsell argues that because his ineffective-assistance-of-counsel claim rests on potentially exculpatory but untested DNA evidence, he neither can, nor should he have to, explain how the DNA evidence in question would undermine a court's confidence in the trial's outcome in his request for postconviction counsel. We disagree.

¶28    Counsel is considered ineffective when their "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Ardolino,* 69 P.3d at 76.  To meet this standard, a defendant must show: (1) "counsel's performance was deficient"—meaning, "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense"—meaning, there is "a reasonable probability that, but for counsel's unprofessional errors, the result of

14

the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 694; *see also Ardolino*, 69 P.3d at 76.

¶29     Accordingly, to qualify for the appointment of postconviction counsel, a defendant's postconviction motion must provide allegations that, if true, would establish both prongs of the *Strickland* test. *Silva*, 156 P.3d at 1165. In doing so, the defendant should explain not only the deficiency that made his counsel ineffective but also how and why, based on that deficiency, there is a reasonable probability that the result of the proceeding would have been different. While a defendant need not use particular words, he must do more than make conclusory allegations. "A 'conclusory' allegation is one '[e]xpressing a factual inference without stating the underlying facts on which the inference is based.'" *Woodall v. Godfrey*, 2024 COA 42, ¶ 33, 553 P.3d 249, 260 (alteration in original) (quoting *Conclusory*, Black's Law Dictionary (11th ed. 2019)). If the defendant fails to do so, the court may determine the claim is wholly unfounded and that it need not appoint counsel. *See People v. Garcia,* 815 P.2d 937, 941 (Colo. 1991) *(*explaining that if the defendant fails to demonstrate prejudice, the postconviction court may deny his Crim. P. 35(c) claim on that basis alone).

## D.  DNA Evidence in *Strickland* Evaluations

¶30     Townsell urges us to be more lenient in fashioning a standard for appointment of counsel in postconviction cases such as his. While incarcerated,

15

he tells us, he could do little to demonstrate the prejudice caused by his trial counsel's failure to more critically evaluate the DNA evidence in his case. Townsell argues that the unusual nature of DNA evidence "places a special responsibility on the reviewing court" to appoint counsel to assist in developing claims premised on such evidence.[4]

¶31    However, Townsell points to no source of Colorado law, and we have found none, that would suggest that a defendant alleging the ineffective assistance of counsel based on counsel's failure to investigate DNA evidence should be entitled to a different standard than that applied to other types of evidence.  Therefore, when a postconviction defendant asserts that his trial counsel was ineffective based on a failure to investigate DNA evidence, he must still show prejudice under *Strickland*.  *See People v. Corson*, 2016 CO 33, ¶ 41, 379 P.3d 288, 296; *cf. People v. Thompson*, 2020 COA 117, ¶ 33, 485 P.3d 566, 572 ("Crim. P. 35(c)(2)(V) permits a motion based on newly discovered evidence, but that section does not address or authorize the discovery of such evidence — DNA or otherwise.").

---

[4] In 2023, the Colorado legislature enacted a statute titled, "Content of application for DNA testing," which allows a court to order DNA testing if "[i]t finds a reasonable probability that the petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution."  Ch. 15, sec. 3, § 18-1-413(1)(a), 2023 Colo. Sess. Laws 44, 45. Therefore, if a defendant wants DNA testing, there is an avenue at his disposal, even if he can't meet *Strickland* or doesn't assert an ineffective-assistance-of-counsel claim.

16

## E. Application

¶32    Townsell argues that his claim is not wholly unfounded and that the postconviction court and the division majority erred by requiring him to prove the merits of his ineffective-assistance-of-counsel claim—including, prejudice—to have counsel appointed.  He asserts this was error because he can't prove prejudice without the DNA testing his counsel's deficient performance precluded.

¶33    Townsell addressed the first prong of *Strickland* by alleging that his attorney failed to request a continuance to test all the seized items for potentially exculpatory DNA.  This sufficiently alleged deficient performance.

¶34    Townsell failed, however, to explain what additional DNA testing might reveal and specifically how it might have exculpated him.  In his postconviction motion, he merely asserted that, had his attorney conducted further investigation, "he would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence against Mr. Townsell."  That single sentence is the entirety of his argument as to prejudice.  And although, as we've explained, at this stage of postconviction proceedings, a defendant need not *prove* prejudice, he must provide more than a bare, conclusory assertion unsupported by any facts.  *People v. Mills*, 163 P.3d 1129, 1134 (Colo. 2007) ("The standard for making a successful ineffective assistance of counsel claim is very high, and it is a valid exercise of the court's duty to oversee the orderly administration of justice to require some factual

17

basis that the standard will be satisfied before appointing an attorney to investigate the claims." (citation omitted)).  A defendant must allege *some* factual or legal basis upon which the court can find prejudice.  *See White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988) (explaining that a defendant "need not set forth the evidentiary support for his allegations in his initial Crim. P. 35(c) motion; instead, a defendant need only assert facts that if true, would provide a basis for relief under Crim. P. 35").

¶35    Townsell needed to explain not only what he thought the missing DNA testing might reveal, but also how, with that evidence, there was a reasonable probability that the outcome of his trial would have been different.  In other words, Townsell needed to provide some basis, which if true, would explain how further investigation would have excluded him from the robbery given the strength of the evidence used to convict him—namely, his cell phone records and cell location, as well as the fact that his DNA was found on the shoes, pantyhose, bandana, and mask, all of which were found in or near the discarded bank bag.  But he didn't. Townsell failed to allege any facts upon which the court could find that the prejudice prong of his claim had arguable merit.  He simply said that further testing would exclude him. *See Townsell II*, ¶ 20.  His motion focused on the nature of defense counsel's mistake but failed to include the potential prejudice the mistake caused.

18

¶36    Although in his dissent, Judge Schutz inferred a connection between untested DNA evidence and an alternate suspect, in Townsell's Crim. P. 35(c) motion, Townsell only asserted that further DNA testing would prove his *exclusion* but never the *inclusion* of another suspect.  Townsell never alleged that there was an alternate suspect.

¶37    Although Townsell didn't need to use any magic words, he needed to provide *some* explanation of how further investigation would have excluded him or how it would have overcome the substantial evidence introduced at trial against him.   As it stands, his single, conclusory statement fails to satisfy Crim. P. 35(c)(3)(IV)'s low bar for alleging "adequate factual or legal grounds."  *See People v. Lopez*, 12 P.3d 869, 872 (Colo. App. 2000).   Therefore, these claims are wholly unfounded, and the postconviction court didn't err by denying Townsell's request for postconviction counsel.

### III.  Conclusion

¶38    We affirm the judgment of the court of appeals.

**JUSTICE GABRIEL**, joined by **CHIEF JUSTICE MÁRQUEZ**, concurred in part and dissented in part.

19

JUSTICE GABRIEL, joined by CHIEF JUSTICE MÁRQUEZ, concurring in part and dissenting in part.

¶39  I agree with the majority's recitation of the applicable standards for the appointment of counsel and for granting a hearing under Crim. P. 35(c).  Maj. op. ¶¶ 21–26.  I also agree with the majority that the law does not create special rules for ineffective assistance of counsel claims involving allegations concerning the alleged failure to investigate DNA evidence.  *Id.* at ¶ 31.  As in all ineffective assistance of counsel cases, to obtain relief on an ineffective assistance of counsel claim concerning the investigation of DNA evidence, a defendant generally must satisfy the two-prong test adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984).  That test requires a showing that (1) counsel's acts or omissions were outside the acceptable range of professionally competent assistance; and (2) but for counsel errors, there is a reasonable probability that the result of the proceeding would have been different.  *Id.*

¶40  I part company with the majority, however, on the question of whether Jamale D. Townsell made sufficient allegations in his petition to warrant the appointment of counsel and a hearing on his Crim. P. 35(c) petition.  Unlike the majority, I believe that he did.  Indeed, I cannot discern what more Townsell could have alleged without actually conducting the neglected DNA testing and asserting the results.  In my view, the majority's ruling imposes an impossible burden on

1

criminal defendants who are seeking postconviction relief—and particularly those who are proceeding pro se—and unnecessarily raises the standard for the appointment of counsel and the setting of a hearing on a Crim. P. 35(c) petition.

¶41    Accordingly, I respectfully concur in part in and dissent in part from the majority's opinion in this case.

## I.    Factual Background

¶42    I need not repeat the factual and procedural background set forth in the majority opinion.  Instead, I will generally limit my recitation of the facts to the relevant allegations contained in Townsell's Crim. P. 35(c) petition.

¶43    I do, however, note at the outset that substantial evidence in this case tended to suggest that an alternate suspect, namely, the brother of Townsell's estranged wife, committed the robbery at issue.  Most notably, witnesses described the robber as predominantly left-handed and five feet seven inches to five feet nine inches in height.  Townsell is right-handed and six feet two inches tall.  The brother, in contrast, matched the description of the robber.  Moreover, although certain items alleged to be associated with the robber were tested, many others, including a number of items that the robber wore closest to his body, were not.

¶44    Townsell's pro se Crim. P. 35(c) petition consisted of a fully completed Form 4 (four pages) plus an attachment (five single-spaced, typed pages) detailing at great length the grounds underlying his petition.

2

¶45    As pertinent here, Townsell alleged that four weeks before his scheduled trial, the prosecution disclosed to defense counsel additional DNA evidence that the prosecution planned to admit at trial.  Townsell alleged that at that time, his counsel expressed that he had no knowledge of additional DNA evidence, other than that which was found on a pair of pantyhose, and that counsel was unconcerned about the pantyhose because no one had identified them as having been used in the robbery.  According to Townsell, counsel expressed concern about the allegedly newly produced DNA evidence but proceeded to "rush the trial" in violation of Townsell's due process rights.

¶46    Townsell further alleged that defense counsel had erred in thinking that Townsell's DNA was found only on the pantyhose (evidence in the record demonstrated that counsel had been advised earlier that Townsell's DNA was found on other items).  And as a result of the fact that counsel was uninformed about the evidence in the case, Townsell asserted that counsel was unable to make a professionally reasonable decision as to whether to present mitigating evidence.

¶47    Specifically, Townsell alleged, "[C]ase law rejects the notion that a strategic decision can be reasonable, when this attorney has failed to investigate his options and make reasonable possible mitigating evidence regarding additional DNA evidence documentation, but [defense counsel] inexplicably failed to follow up with further investigation."

3

¶48    Townsell then expressly asserted that he was prejudiced by counsel's deficient conduct: "Had he [i.e., counsel] done so [i.e., investigate further the DNA evidence], he would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence against Mr. Townsell."

¶49    Finally, Townsell alleged, "With a continuance, counsel could have hired a DNA expert to counter the peoples expect [sic] and could have had more effective cross-examination of the people's expert."

¶50    Although Townsell is not an attorney, the import of his allegations was clear and unmistakable: his counsel "missed the DNA report" that had been provided and did not properly investigate the DNA evidence.  Had counsel done so, he would have discovered substantial evidence that tended to show that Townsell was not the robber (and, by necessary implication, that someone else was).

## II.  Analysis

¶51    I begin by briefly outlining the applicable standards governing the appointment of counsel and the setting of a hearing for purposes of Crim. P. 35(c). I then apply those principles to the facts presented.

### A.    Crim. P. 35(c)

¶52    Crim. P. 35(c)(3)(IV) and (V) set forth the procedures governing petitions for postconviction review, including referrals to the Office of the Public Defender and

4

the setting of hearings.  We succinctly summarized the import of these provisions

in *People v. Segura*, 2024 CO 70, ¶ 4, 558 P.3d 234, 236:

> Under paragraph (IV), if the court concludes that the motion, the record, and the file show that the defendant is not entitled to relief, it must deny the motion without forwarding a copy to the prosecution and the Office of the Public Defender ("OPD").  Crim. P. 35(c)(3)(IV).  But if the court does not so conclude, then paragraph (V) requires the court to forward a copy of the motion to the prosecution and, if the motion requests the appointment of counsel, then also to the OPD.  Crim. P.  35(c)(3)(V).  The OPD must then file a response within forty-nine days indicating whether it has a conflict of interest and, if not, whether it intends to enter its appearance and whether it needs more time to investigate the defendant's claims.  *Id.*  If the OPD enters its appearance, it must include in its response any additional claims that have arguable merit.  *Id.*  After the motion (as supplemented by the OPD) has been fully briefed, an evidentiary hearing must be held unless the court finds it appropriate to dispose of the motion without a hearing.  *Id.*

¶53    We further explained:

> Thus, upon its initial review of a Crim. P. 35(c) motion containing a request for postconviction counsel, the court must either deny the motion and thus all of the claims, or not deny the motion and thus none of the claims—there is no halfway option.  And if the court denies all of the claims, it must enter written findings of fact and conclusions of law without taking further action.  But if the court denies none of the claims, it must grant the request for postconviction counsel and forward a complete copy of the motion to the prosecution and the OPD.  The OPD must then decide which claims (if any) lack arguable merit and should be abandoned, which arguably meritorious claims (if any) should be supplemented, and which new claims (if any) have arguable merit and should be added.  The parties must thereafter brief any arguably meritorious claims, including those supplemented and added.

*Segura*, ¶ 26, 558 P.3d at 240 (footnotes omitted).

¶54    In addition to the foregoing, we have made clear that "[p]leadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Jones v. Williams*, 2019 CO 61, ¶ 5, 443 P.3d 56, 58.

## B.    Application

¶55    Applying the foregoing principles here, I would conclude that Townsell pleaded sufficient facts in his pro se Crim. P. 35(c) petition to mandate the appointment of counsel and the setting of a hearing on his petition.

¶56    As noted above, in a detailed petition, Townsell alleged that his counsel had "missed" the DNA report that he had been given and therefore did not conduct an appropriate investigation as to such evidence. To the contrary, according to Townsell, counsel believed that the only DNA evidence at issue in the case had been found on pantyhose that were not even involved in the robbery. Accordingly, counsel did not believe that DNA evidence would pose a problem at trial. And then, when counsel learned about what he believed to be new DNA evidence, he did not seek an opportunity to investigate that evidence. Instead, he proceeded to "rush the trial" without conducting a thorough investigation and, in Townsell's view, uninformed as to the evidence that was to be presented by the prosecution. This, in turn, rendered counsel unable to make reasoned strategic decisions as to potentially available mitigating DNA evidence.

6

¶57    Based on the foregoing, Townsell expressly asserted that he was prejudiced by counsel's deficient conduct.  Specifically, as noted above, Townsell alleged, "Had [counsel] done so [i.e., investigate further the DNA evidence], he would have discovered substantial evidence of defendant's exclusion despite the new DNA evidence against Mr. Townsell."  And Townsell further contended, "With a continuance, counsel could have hired a DNA expert to counter the peoples expect [sic] and could have had more effective cross-examination of the people's expert."

¶58    The sum and substance of Townsell's pro se allegations were that (1) counsel's performance in missing the DNA report and then not conducting a proper investigation concerning the DNA evidence in the case was deficient conduct under *Strickland*; and (2) but for counsel's unprofessional conduct, the result of the trial would probably have been different (i.e., Townsell was prejudiced under *Strickland*'s second prong) because had counsel performed properly, he would have discovered substantial evidence that tended to show that Townsell was not the robber (and that someone else was).

¶59    I believe that these are specific (and not conclusory) factual allegations as to both prongs of *Strickland*, and they were sufficient to establish a basis for referring the matter to the OPD.

¶60    Notwithstanding the foregoing, the majority concludes that Townsell did not adequately allege prejudice—even to warrant a referral to counsel.  Maj. op.

7

¶¶ 1, 34–37.  In the majority's view, a pro se defendant like Townsell in a case like this one must explain (1) what further DNA testing might reveal and how it might have exculpated him; (2) how, with that evidence, there was a reasonable probability that his trial's outcome would have been different (i.e., how further investigation would have excluded the defendant from the robbery, given the strength of the evidence used to convict him); and (3) how further DNA testing would have proved not only the defendant's exclusion but another suspect's inclusion.  *See id.* at ¶¶ 34–37.  In my view, however, no attorney, much less a pro se defendant, could have made such allegations without actually conducting the DNA testing that the defense believes would exonerate the defendant.

¶61    The obligation that the majority imposes on Townsell is contrary to the fact that Crim. P. 35(c)(3)(IV) and (V) establish a pleading standard.  A petitioner seeking postconviction relief need not plead all of their evidence.  Nor must they prove their case.  They need only plead sufficient facts that, if true, would entitle them to relief.  *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (observing that a Crim. P. 35(c) motion alleging ineffective assistance of counsel may be denied without a hearing "if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the *Strickland* test").  Moreover, as noted above, Crim. P. 35(c) makes clear that a hearing will occur if a petitioner sets forth a claim that has arguable merit.

8

¶62    Although the majority purports to acknowledge that at this stage of the proceedings, a defendant need not prove prejudice, Maj. op. ¶ 34, the majority's opinion requires the defendant to plead substantial specific evidence that would, in fact, allow the defendant not only to prove their case but also to undermine the prosecution's evidence at trial, notwithstanding the fact that such evidence generally will not be available to the defendant.

¶63    Alternatively, if the majority was, in fact, merely attempting to set forth minimum pleading requirements, then, although it claims otherwise, *see id.* at ¶ 37, its opinion simply quibbles with the words that Townsell, a pro se party, used to establish prejudice, thereby requiring him to assert a litany of "magic words" not mandated by Crim. P. 35(c).  By way of example, the majority faults Townsell for asserting only that further DNA testing would have excluded him and not that it would have included someone else.  *See id.* at ¶ 36.  And the majority further faults Townsell for not *expressly* alleging that there was an alternate suspect.  *See id.*  But as noted above, the import of Townsell's pro se allegations was clear and unmistakable: he was not the robber and, by necessary implication, someone else was.  In my view, the majority is, in fact, requiring a pro se petitioner to recite certain "magic words" to establish the requisite prejudice.

¶64    And the majority's imposition of such a requirement is particularly troubling here because Form 4, which pro se petitioners like Townsell are required

9

to use, nowhere requires the petitioner to identify how they were prejudiced. Thus, in this case, Townsell alleged *more* than was required of him.  (If pro se petitioners are going to be required to make substantial allegations of prejudice, as the majority seems to suggest, then I would respectfully encourage the court's Rules of Criminal Procedure Committee to consider revising Form 4 to give pro se petitioners more adequate notice of that requirement.)

¶65   Finally, the standard that the majority enforces today neglects our longstanding mandate that "[p]leadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Jones*, ¶ 5, 443 P.3d at 58.  Here, the majority not only holds Townsell to the standard of learned counsel but also appears to have imposed on him (and other similarly situated Crim. P. 35(c) petitioners) a burden that even lawyers would likely find insurmountable. Specifically, for the reasons noted above, under the majority's rule, it appears that petitioners like Townsell are required to plead their evidence, and if they do not do so, then they are subject to having their petitions summarily dismissed.  And this is so even though, particularly in cases like this one, most petitioners will never be able to plead their evidence absent the DNA investigation and testing that they claim did not occur but should have occurred.  I cannot agree that Crim. P. 35(c) sets so high a bar.

10

### III. Conclusion

¶66    For these reasons, although I agree with the majority's recitation of the applicable legal standard and with its view that the law does not establish unique rules for ineffective assistance of counsel cases involving allegations of a failure to investigate DNA evidence, I do not agree with the application of those principles to the facts of this case.  Instead, in my view, Townsell alleged sufficient facts to warrant the postconviction court's referring this matter to counsel for further review and the setting of a hearing.  His substantial pro se allegations were by no means conclusory.  Nor were his claims wholly unfounded.

¶67    Accordingly, I respectfully concur in part in and dissent in part from the majority's opinion in this case.