# Supreme Court of Colorado

**STATE OF COLORADO**
**2 EAST 14ᵀᴴ AVENUE**
**DENVER, COLORADO 80203**

DATE FILED
March 30, 2026
CASE NUMBER: 2023SC924

**CHERYL L. STEVENS**
**CLERK OF THE COURT**

<u>Townsell v. People</u>

Case No. 23SC924

## ORDER OF COURT

Upon consideration of the Petition for Rehearing filed in the above cause, and now being sufficiently advised in the premises,

The Opinion in the above referenced case announced on February 17, 2026, has been modified, and as Modified, said Petition for Rehearing shall be, and the same hereby is DENIED.

Attached are the marked pages showing the revisions – pages 3, 4, 13, 18, and 19.

BY THE COURT, EN BANC, March 30, 2026.
JUSTICE BLANCO does not participate.

JUSTICE HOOD delivered the Opinion of the Court.

¶1     Jamale D. Townsell was convicted of various crimes for robbing a bank. Following an unsuccessful appeal, Townsell moved the district court for postconviction relief under Crim. P. 35(c), alleging ineffective assistance of trial counsel based on his attorney's alleged failure to properly investigate certain DNA evidence.   The postconviction court summarily denied the motion without appointing counsel, and the majority of a division of the court of appeals affirmed. Because we agree with the division majority that Townsell failed to adequately allege prejudice, we affirm the judgment of the court of appeals.

## I.  Facts and Procedural History

¶2     In June 2013, an armed and masked man robbed the Bank of the West in Aurora.  After jumping over the counter and pointing a handgun at ~~one of two~~ a tellers~~s~~, the man took over $1,000 in cash from the teller's drawer and stashed it in a ~~bank~~ bag he had brought with him.  Unbeknownst to the robber, ~~, which also contained~~ a Global Positioning System ("GPS") device was hidden in the stolen cash.

¶3     According to eyewitnesses to the robbery, the suspect was around five feet eight inches tall and left-handed.  Security video footage also shows the suspect wearing a red bandana, a hat with eye ~~and mouth~~ holes cut into it so it could serve

3

as a mask, and black shoes with white soles.  He also had a phone duct taped to his arm and earbuds taped to his T-shirt**.**

¶4    The GPS device led the police to a car belonging to E.R., Townsell's estranged wife.  Upon searching the car, police officers found a black shoe with a white sole and a gun.  Nearby, in the middle of the road, police found ~~the bank~~a bag that, among other things, contained the stolen money, a sweatshirt, a red bandana, the mask, pantyhose, gloves, and a shoe matching the one found in the car.   Officers also obtained Townsell's cell phone records, which showed Townsell's phone had called E.R.'s phone shortly before and shortly after the robbery.  And an expert testified at trial that Townsell's phone was near the bank when the robbery occurred.

¶5    Forensic analysts tested the shoes, pantyhose, bandana, and mask, and the results matched Townsell's DNA.  The results from the pantyhose, bandana, and right shoe showed a single-source profile; meaning, all of the DNA came from one person.  Townsell's genetic profile was a complete match to these single-source profiles.  Of the fifteen locations swabbed for potential DNA in the left shoe, thirteen matched Townsell's genetic profile, a result that, according to expert testimony at trial, was "more rare than 1 in 300 billion."  The mask's testing returned a mixed profile, with a major and minor contributor to the DNA makeup. The minor component left such little DNA it was "basically uninterpretable," but

4

¶25 After the OPD has entered an appearance in the case and both sides have filed their pleadings, "the court shall grant a prompt hearing on the motion unless, based on the pleadings, the court finds that it is appropriate to enter a ruling containing written findings of fact and conclusions of law." Crim. P. 35(c)(3)(V). ~~At this stage~~If the court grants a hearing, the court should no longer accept the allegations as true but must instead determine if the defendant has sufficiently proven his claims by a preponderance of the evidence. *See People v. Naranjo*, 840 P.2d 319, 325 (Colo. 1992).

¶26 The standards for appointing postconviction counsel and holding an evidentiary hearing on a postconviction motion differ. The first—for appointment of counsel—requires the court to determine if the allegations, assuming they are true, have *arguable* merit. The second—for holding a hearing—requires the court to conduct a hearing unless "the motion, files, and record in the case *clearly establish* that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (emphasis added) ("Because relief for ineffective assistance of counsel requires a criminal defendant to prove both deficient representation and prejudice, denial of the motion without a hearing is justified if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the *Strickland* test."); *see also People v. McDowell*,

13

basis that the standard will be satisfied before appointing an attorney to investigate the claims." (citation omitted)).  A defendant must allege *some* factual or legal basis upon which the court can find prejudice.  *See White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988) (explaining that a defendant "need not set forth the evidentiary support for his allegations in his initial Crim. P. 35(c) motion; instead, a defendant need only assert facts that if true, would provide a basis for relief under Crim. P. 35").

¶35     Townsell needed to explain not only what he thought the missing DNA testing might reveal, but also how, with that evidence, there was a reasonable probability that the outcome of his trial would have been different.  In other words, Townsell needed to provide some basis, which if true, would explain how further investigation would have excluded him from the robbery given the strength of the evidence used to convict him—namely, his cell phone records and cell location, as well as the fact that his DNA was found on the shoes, pantyhose, bandana, and mask, all of which were found in or near the discarded ~~bank~~ bag.  But he didn't. Townsell failed to allege any facts upon which the court could find that the prejudice prong of his claim had arguable merit.  He simply said that further testing would exclude him. *See Townsell II*, ¶ 20.  His motion focused on the nature of defense counsel's mistake but failed to include the potential prejudice the mistake caused.

18

¶36    Although in his dissent, Judge Schutz inferred a connection between untested DNA evidence and an alternate suspect, in Townsell's Crim. P. 35(c) motion, Townsell only asserted that further DNA testing would prove his *exclusion* but never the *inclusion* of another suspect.  Townsell never alleged that there was an alternate suspect.

¶37    Although Townsell didn't need to use any magic words, he needed to provide *some* explanation of how further investigation would have excluded him or how it would have overcome the substantial evidence introduced at trial against him.  As it stands, his single, conclusory statement fails to satisfy Crim. P. 35(c)(3)(IV)'s low bar for alleging "adequate factual or legal grounds."  *See People v. Lopez*, 12 P.3d 869, 871–72 (Colo. App. 2000).  Therefore, these claims are wholly unfounded, and the postconviction court didn't err by denying Townsell's request for postconviction counsel.

### III.  Conclusion

¶38    We affirm the judgment of the court of appeals.

**JUSTICE GABRIEL**, joined by **CHIEF JUSTICE MÁRQUEZ**, concurred in part and dissented in part.

19